```
 1                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
 2                         ATLANTA DIVISION

 3   UNITED STATES OF AMERICA,      :
                                    :
 4   vs.                            :   DOCKET NUMBER
                                    :   1:17-CR-229-AT-CMS
 5   JARED WHEAT, JOHN BRANDON      :
     SCHOPP, AND HI-TECH            :
 6   PHARMACEUTICALS, INC.,         :
                                    :   ATLANTA, GEORGIA
 7           DEFENDANTS.            :   OCTOBER 4, 2017

 8

 9

10    TRANSCRIPT OF AUDIOTAPED INITIAL APPEARANCE, ARRAIGNMENT WITH

11        PLEA OF NOT GUILTY, AND BOND HEARING PROCEEDINGS

12          BEFORE THE HONORABLE ALAN J. BAVERMAN

13              UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22    MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED
                    TRANSCRIPT PRODUCED BY:
23
     OFFICIAL COURT REPORTER:      SHANNON R. WELCH, RMR, CRR
24                                 2394 UNITED STATES COURTHOUSE
                                   75 TED TURNER DRIVE, SOUTHWEST
25                                 ATLANTA, GEORGIA  30303
                                   (404) 215-1383
```

1          **A P P E A R A N C E S   O F   C O U N S E L**

2

3     **FOR THE GOVERNMENT:**

4

5          STEVEN D. GRIMBERG
           KELLY K. CONNORS
6          UNITED STATES ATTORNEY'S OFFICE

7

8     **FOR THE DEFENDANT JARED WHEAT:**

9

10         BRUCE HOWARD MORRIS
           FINESTONE MORRIS & WHITE

11

12
      **FOR THE DEFENDANTS JOHN BRANDON SCHOPP AND HI-TECH**
13    **PHARMACEUTICALS, INC.**

14
           ARTHUR W. LEACH
15         LAW OFFICE OF ARTHUR W. LEACH

16

17

18

19

20

21

22

23

24

25

                    UNITED STATES DISTRICT COURT
                    OFFICIAL CERTIFIED TRANSCRIPT

```
 1                    P R O C E E D I N G S
 2    (Atlanta, Fulton County, Georgia; October 4, 2017.)
 3               COURTROOM DEPUTY CLERK:  All rise.  The United States
 4    District Court for the Northern District of Georgia is now in
 5    session.  Judge Baverman presiding.
 6               THE COURT:  Afternoon, everyone.  Please be seated.
 7               MR. GRIMBERG:  Afternoon, Your Honor.
 8               THE COURT:  All right.  This is the case of United
 9    States of America vs. Jared Wheat, John Brandon Schopp, and
10    Hi-Tech Pharmaceuticals, Inc.  It is Case Number 1:17-CR-229.
11    It is a first superseding criminal indictment.
12               Mr. Grimberg is here representing the United States,
13    along with Ms. Connors.  I have Mr. Morris here representing
14    Mr. Wheat.  I have Mr. Leach representing Mr. Schopp, and I
15    have Mr. Leach representing Hi-Tech.
16               MR. LEACH:  Yes, sir.
17               THE COURT:  All right.  So the gentlemen and the
18    corporation are here because on September the 28th the grand
19    jury returned a first superseding indictment against the three
20    defendants.  The three defendants are first charged in Count 1
21    with conspiracy to commit wire fraud.  In Counts 2 and 3, the
22    defendants are charged with the substantive offense of wire
23    fraud.  And Count 4, Mr. Wheat and Hi-Tech are charged with the
24    money laundering conspiracy.  And in Counts 5 through 9,
25    Mr. Wheat and Hi-Tech are charged with the substantive offense
```

1    of money laundering.  Count 10 charges a conspiracy between

2    Mr. Wheat and Hi-Tech to introduce misbranded drugs into

3    interstate commerce.  And then there is -- Count 11 charges

4    Mr. Wheat and Hi-Tech with introduction into interstate

5    commerce of a misbranded drug.  Count 12 charges a conspiracy

6    under 846 between Mr. Wheat and Hi-Tech to manufacture and

7    distribute controlled substances.  Count 13 through 15 charges

8    Mr. Wheat and Hi-Tech with distributing -- manufacturing and

9    distributing controlled substances.  Count 16 through 18

10   charges Mr. Wheat and Hi-Tech with introducing misbranded drugs

11   into interstate commerce.  And then there is a forfeiture

12   provision.

13          Has everyone received a copy of the first superseding

14   indictment?

15          MR. LEACH:  Yes, Your Honor.

16          MR. GRIMBERG:  Yes, sir.

17          MR. MORRIS:  Yes, sir.

18          THE COURT:  All right.  So Mr. Wheat and Mr. Schopp,

19   because you are charged with these offenses in this case, you

20   have certain constitutional and statutory rights.  First, you

21   have the right to remain absolutely silent.  What that means is

22   that no one associated with the Government or law enforcement

23   can force you or can compel you to make any statements or

24   answer any questions or say anything at all on any topic

25   whatsoever but particularly with regard to the allegations

1    contained against you in this first superseding indictment.

2         If you say anything, if you make any statements, if

3    you answer any questions, what you say, what you answer can and

4    will be used against you as evidence in all further court

5    proceedings.  So my advice to you is very simple.  Don't say

6    anything.  Don't make any statements and don't answer any

7    questions unless and until a lawyer represents your legal

8    interests and your legal interests only.

9         Do you understand that?

10             **(No audible response.)**

11        THE COURT:  All right.  And Mr. Wheat and Mr. Schopp

12   and also Hi-Tech have a right to be represented by a lawyer.

13   You have a right to be represented by a lawyer at all court

14   proceedings involved in this case including today.

15        And, Mr. Wheat and Mr. Schopp, you also have a right

16   to be represented by a lawyer before and during the making of

17   any statement or the answering of any questions.

18        Mr. Wheat and Mr. Schopp, if you can -- and

19   Hi-Tech -- well, particularly Mr. Wheat and Mr. Schopp only, if

20   you can afford to hire a lawyer, you may do so.  But if you're

21   financially unable to hire a lawyer, I will appoint a lawyer to

22   represent you at no cost or expense to you.  Under those

23   circumstances, the Court pays for the lawyer.  But the lawyer's

24   obligation is to represent you and to defend you.

25        Do you understand that?

1              **(No audible response.)**

2              THE COURT:  And, of course, Hi-Tech must be

3    represented by a lawyer.

4              All right.  So my understanding, however, is that all

5    the lawyers here today are retained by the respective clients;

6    correct?

7              MR. LEACH:  Yes, sir.

8              MR. MORRIS:  Yes, sir.

9              THE COURT:  All right.  So we're here first to

10   arraign you.  Does anybody want me to read the indictment in

11   open court?

12             MR. LEACH:  We will waive that, Your Honor.

13             MR. MORRIS:  So will we, Your Honor.

14             THE COURT:  And is everybody ready to enter not

15   guilty pleas to the allegations against them in the indictment?

16             MR. LEACH:  Yes, sir.

17             MR. MORRIS:  Yes, sir.

18             THE COURT:  Mr. Grimberg?

19             MR. GRIMBERG:  Thank you, Your Honor.

20             Mr. Wheat, I'm showing you two plea with counsel

21   forms, one on behalf of you individually and another on behalf

22   of defendant Hi-Tech Pharmaceuticals.  It indicates that you

23   have received a copy of the indictment and having been

24   arraigned plead not guilty to Counts 1 through 18 both on

25   behalf of yourself as well as the company.

```
1              Is that your intention?

2              DEFENDANT WHEAT:  Yes, sir.

3              MR. GRIMBERG:  All right.  And on the right-hand side

4    of each document is a signature above your printed name.  Is

5    that your signature?

6              DEFENDANT WHEAT:  It is.

7              THE COURT:  All right.  And, Mr. Morris, is that your

8    signature on the plea with counsel form on behalf of Mr. Wheat

9    individually?

10             MR. MORRIS:  Yes, sir.

11             MR. GRIMBERG:  And, Mr. Leach, is that your signature

12   as the attorney on behalf of the company?

13             MR. LEACH:  Yes, sir.

14             MR. GRIMBERG:  Mr. Schopp, I'm showing you a plea

15   with counsel form.  It indicates that you have received a copy

16   of the indictment and having been arraigned plead not guilty to

17   Counts 1, 2, and 3.

18             Is that your intention?

19             DEFENDANT SCHOPP:  Yes, sir.

20             MR. GRIMBERG:  And, Mr. Schopp, there is a signature

21   above your printed name.  Is that your signature?

22             DEFENDANT SCHOPP:  Yes, sir.

23             MR. GRIMBERG:  And, Mr. Leach, is that your signature

24   as Mr. Schopp's attorney?

25             MR. LEACH:  Yes, sir.
```

1        MR. GRIMBERG:  May I tender it?

2        THE COURT:  You may.

3            **(There was a brief pause in the proceedings.)**

4        THE COURT:  Is this a medium or a long case?

5        MR. GRIMBERG:  Medium.

6        THE COURT:  Okay.  And there are no pending -- no

7   open pending cases?

8        MR. GRIMBERG:  Correct.  I believe Judge Anand is

9   likely recused.

10        THE COURT:  All right.  So, first, I have Mr. Wheat's

11   plea with counsel that indicates he has received a copy of the

12   first superseding indictment.  He's waived formal reading of

13   the indictment, and he is pleading not guilty to Counts 1

14   through 18.

15        He signed his form.  He has authorized Mr. Morris to

16   sign as his lawyer.  I will enter a plea of not guilty on the

17   minutes of the Court.

18        Next, I have the plea with counsel of Mr. Schopp.  It

19   indicates that he has received a copy of the indictment, that

20   he has waived formal reading of the indictment.  He is pleading

21   not guilty to Counts 1, 2, and 3 of the indictment.

22        He has signed this form and authorized Mr. Leach to

23   sign as his lawyer.  I will enter his plea of not guilty on the

24   minutes of the Court.

25        And, finally, I have the plea of not guilty of

 1    Hi-Tech Pharmaceuticals, which is signed by Mr. Wheat.

 2    Mr. Wheat has signed on behalf of the corporation.  And

 3    Mr. Leach has signed as counsel for Hi-Tech.

 4            Hi-Tech has received a copy of the indictment, waived

 5    formal reading of it, and is pleading not guilty to Counts 1

 6    through 18 of the first superseding indictment.  I will enter

 7    Hi-Tech's not guilty plea on the minutes of the Court.

 8            The next medium case is assigned to Judge Totenberg

 9    for trial and Judge Salinas for pretrial matters.

10            Is Rule 16 being requested today on behalf of the

11    defendants?

12            MR. LEACH:  Yes, sir, on behalf on Mr. Schopp.

13            MR. MORRIS:  I'm sorry.  What was the question?

14            THE COURT:  Is Rule 16 being requested today on

15    behalf of the defendants?

16            MR. MORRIS:  Yes, sir.

17            MR. LEACH:  And yes as for the company.

18            THE COURT:  And is it being produced today?

19            MR. GRIMBERG:  Yes, Your Honor.  I presume the

20    motions to unseal search warrants that we submitted to chambers

21    will be signed today?

22            THE COURT:  I signed those already.

23            MR. GRIMBERG:  Okay.  In that case, we have some

24    discovery to turn over today.  I indicated to counsel that

25    there is additional discovery that is voluminous, particularly

1    the returns on e-mail search warrants that were executed.

2           And for that, I have requested a hard drive or thumb

3    drive to supply them with copies of that.  And I will work with

4    counsel on that and also request reciprocal discovery.

5           THE COURT:  So noted.

6           All right.  So this is Mr. Wheat's and Mr. Schopp's

7    initial appearance.  So each are entitled to consideration for

8    whether or not they should be detained or released on bond.

9           What is the Government's position as to each of the

10   individual defendants?

11          MR. GRIMBERG:  As to the individual defendants, we

12   are not seeking detention.  With regard to Jared Wheat in terms

13   of a financial condition, we had come in prepared to ask for a

14   100,000-dollar surety bond.

15          Mr. Morris has indicated that his client may be

16   willing to put up his marital home as a surety in lieu of that.

17   And he has represented to me that the equity in that home far

18   exceeds $100,000.

19          Assuming that that is true and that his wife who I

20   believe is on the title is willing to sign it over, we have no

21   objection to that.

22          THE COURT:  Okay.

23          MR. GRIMBERG:  There's also nonfinancial conditions.

24   I don't know if you wanted to explore those now.

25          With regard to all three defendants, we do request

1  that they be prohibited from manufacturing and selling

2  misbranded drugs and adulterated foods.

3          We can provide you, Your Honor, with the specific

4  language for that to be inclusive of all the iterations of what

5  that may entail.  But I do want to note that the adulterated

6  foods would include products containing DMAA.

7          THE COURT:  Okay.  And what about Mr. Schopp?

8          MR. GRIMBERG:  Financially, we concur with pretrial's

9  recommendation of a 20,000-dollar surety bond.

10          MR. LEACH:  Let me mention one thing to you.

11              **(A discussion ensued off the record.)**

12          MR. GRIMBERG:  Mr. Leach has indicated that he too

13  has a home with equity that exceeds that amount, and we have no

14  objection to that either.

15          THE COURT:  Okay.  Mr. Morris?

16          MR. MORRIS:  May it please the Court.  Mr. Wheat is

17  agreeable to the terms that we have discussed with the

18  Government.  He has lived in the home that his wife owns.  It

19  has a 600,000-dollar mortgage.  We have the most recent tax

20  slip -- tax bill we could find, which was 2015, which shows a

21  value of $1.3 million.  The recent one I believe shows

22  1.8 million.  We just couldn't locate that slip at the moment.

23          She owns it.  She will sign on that bond as will he.

24  He will agree on behalf of himself and as a representative of

25  Hi-Tech not to manufacture and distribute adulterated and

1   misbranded foods and drugs as stated by the Government.  We can

2   specify those to the Court for clarity.

3           THE COURT:  And is Ms. Wheat on her way, by any

4   chance of luck?

5           MR. MORRIS:  I beg your pardon?

6           THE COURT:  Is Ms. Wheat on her way, by any chance of

7   luck?

8           MR. MORRIS:  She is not.  We can certainly have her

9   here within 24 hours if the Court would allow that.

10          Judge, with the greatest of respect to the

11  presentence report -- the pre --

12          THE COURT:  Pretrial services.

13          MR. MORRIS:  Thank you.  Pretrial services -- the

14  manufacture of these goods has been the subject of civil

15  litigation for months and months, if not years, and we have

16  been interacting with the Government about what can and can't

17  be done and what the FDA says you can and can't do.

18          He is not a threat to flee, nor is he a threat to the

19  community.  We will abide by whatever conditions Your Honor

20  puts on the bond.  And we will avoid running afoul of

21  manufacturing or distributing anything that would concern the

22  Government pending the finality of litigation in court orders

23  that would say otherwise.  And we would bring that to the

24  Court's attention before we did anything.

25          THE COURT:  Do you have that language with you,

1   Mr. Grimberg?

2          MR. GRIMBERG:  Yes.  I could -- do you want me just

3   to state it into the record or --

4          THE COURT:  Read it into the record.  Either give it

5   or e-mail it to Ms. Enix.

6          MR. GRIMBERG:  It might be easier to e-mail it if

7   that is okay.

8          THE COURT:  Perfect.

9          MR. LEACH:  Judge, just one additional detail that

10  Mr. Morris didn't know about and that I gathered before I came

11  to the courthouse.  That is, the outstanding mortgage on the

12  property is approximately $95,000.  So there's lots of equity

13  there.  And I have got the Bank of America document to show the

14  Court.

15         THE COURT:  Well, does the Government object to it

16  being a 100,000-dollar bond secured by the property?

17         MR. GRIMBERG:  Well, you know --

18         THE COURT:  Or is what the Government seeking the

19  equity in the property?

20         MR. GRIMBERG:  The entirety of the equity in the

21  property.

22         THE COURT:  Mr. Morris, do you have a problem with

23  that?

24         MR. MORRIS:  I'm not sure I understand that.  If the

25  Government was okay with a 100,000-dollar security bond, a home

1  with over a million dollars' worth of equity I think would

2  satisfy the $100,000 that they initially were going to request.

3       I think that is sufficient, Judge, if the Court would

4  allow that.

5       MR. GRIMBERG:  There is a difference between a surety

6  bond and the risk that comes with taking property as

7  collateral.  And so in lieu of that, given the risk associated

8  with that -- I mean, we can go back to the 100,000-dollar

9  surety bond.

10       But if the request is that as an alternative that the

11  property be placed as collateral, we ask that it be the equity

12  in that property.

13       THE COURT:  I mean, here is the problem.  Well, it is

14  not the problem.  When a defendant posts real property as

15  security for a bond and if he fails to appear, the property has

16  to be sold anyway.  The only difference being that the -- if

17  the property is sold then -- and it is some amount, you know,

18  greater than $100,000 -- if it is that -- it has to be some

19  dollar amount, then the Government gets that.  Otherwise, the

20  property still gets sold and the balance comes back.

21       MR. MORRIS:  With the greatest of respect, Judge, I

22  don't represent Ms. Wheat.  But I can't ignore her.  I don't

23  want her to lose the equity in her home beyond the $100,000.

24       THE COURT:  Well, there is more of a -- there are

25  additional steps that have to take place to sell property as

1   opposed to forfeiting a bond.  So I would -- what I'll do is

2   I'll assign -- I'll make it a 250,000-dollar bond secured by

3   the real estate.

4           MR. MORRIS:  Well, let me ask this question, Judge,

5   without knowing if we can certainly do it.  Would the Court and

6   the Government prefer the posting of $100,000?

7           THE COURT:  It doesn't matter to me.

8           MR. MORRIS:  Would that be acceptable to the Court?

9           THE COURT:  It is certainly acceptable to me as long

10  as the -- you know --

11          MR. MORRIS:  Would that be acceptable?

12          MR. GRIMBERG:  That is acceptable.

13          DEFENDANT WHEAT:  Do I go to a bondsman?

14          MR. MORRIS:  No.  No.  You bring a check for

15  $100,000.

16          THE COURT:  No.  No.  Wait a minute.  Let's just make

17  sure that we are --

18          MR. MORRIS:  I was talking about posting $100,000

19  with the Court.

20          THE COURT:  I don't have a problem with that.

21          MR. MORRIS:  That is what I was asking.

22          MR. GRIMBERG:  That is fine.  For Mr. Wheat?

23          MR. MORRIS:  Yes.  Thank you.

24          THE COURT:  Well, let me finish with Mr. Morris

25  first.

```
 1              MR. MORRIS:  Thank you.  We'll do that, Your Honor.

 2              THE COURT:  When is that going to get accomplished?

 3              MR. MORRIS:  Within 24 hours.

 4              THE COURT:  Any objection to him being released

 5    subject to that?

 6              MR. GRIMBERG:  No.

 7              MR. MORRIS:  Thank you.

 8              THE COURT:  Okay.

 9              MR. LEACH:  I think there is a good argument to make

10    here that we're in a different situation and that a signature

11    bond would be appropriate.  But I'm -- I'm not going to get

12    greedy.  We're okay with posting the house.  We would hope that

13    it would be consistent with the recommendation of the pretrial

14    services, which is for a 20,000-dollar surety.

15              I mean, if the Government says they want to double it

16    to 40, we could argue over that.  But we're not going to.

17    There is sufficient equity.  He is not going anywhere.

18              So I don't know what the Government's position is on

19    that.  But that is -- that is how we feel about it, Judge.

20              THE COURT:  Mr. Grimberg, what do you have to say

21    about Mr. Schopp?

22              MR. GRIMBERG:  Again, Your Honor, it is -- you know,

23    we -- our recommendation was a 20,000-dollar surety bond.  If

24    he wants to substitute that for the property, we would request

25    that it be the entirety of the equity because of the
```

1    uncertainty that goes with taking property as collateral as

2    well as the costs involved in going through the foreclosure

3    process.  This is a property that from what I understand is

4    entirely owned by Mr. Schopp so that there's nobody else's

5    interest at stake here.

6              THE COURT:  Well, I think Mr. Schopp is in a

7    different situation than Mr. Wheat given the allegations

8    against him and the background.  So I'll make the

9    20,000-dollar -- I'll follow the recommendation of pretrial and

10   make it a 20,000-dollar bond secured by the -- by his interest

11   in the real property.

12             I guess that is the Boulder Drive address?

13             MR. LEACH:  That is correct, Judge.  We would just

14   ask for until tomorrow afternoon at 5:00, if not sooner, to

15   come back with the necessary paperwork.

16             THE COURT:  3:00 tomorrow.

17             MR. LEACH:  3:00, yes, sir.

18             THE COURT:  And then I have to issue an order as to

19   Hi-Tech based on the language.  It is not really a bond because

20   the corporation was not seized.  But I can issue an order with

21   everybody's consent that Hi-Tech agrees not to do X pending

22   resolution of the charges against Hi-Tech.

23             MR. GRIMBERG:  And that language -- we're asking that

24   it be applied to all three defendants.

25             THE COURT:  Correct.  But for the individual

```
1    defendants, it is a condition of release.  The corporation is

2    not being released from custody.  It is an order that Mr. Leach

3    and Mr. Wheat are agreeing to bind the corporation under;

4    correct?

5              MR. LEACH:  If I could have a moment.

6              THE COURT:  You may.

7              (There was a brief pause in the proceedings.)

8              MR. LEACH:  Judge, with regard to one term that has

9    to do with DMAA, there has been civil litigation with FDA on

10   the DMAA issue.  That is presently before the Eleventh Circuit.

11   And we are agreeable to what is in essence an injunction here.

12   It is an order against us saying not to go forward with those

13   substances.  We don't object to everything.

14             With regard to DMAA, if it is revisited by the

15   Eleventh Circuit and found that Judge Hunt's order is

16   erroneous, we would be in agreement provided that we could come

17   back before the Court in that event and modify the conditions.

18             MR. GRIMBERG:  Well, certainly they can seek to

19   modify the conditions at any time, including if the Eleventh

20   Circuit were to overturn it.  Our position would not change.

21   It is not entirely contingent on Judge Hunt's order.  But

22   certainly we can revisit it should that happen.

23             MR. LEACH:  An important point here, Judge, is DMAA

24   is not in this indictment.  This is a substance outside of the

25   indictment.  So we are agreeable under these circumstances to
```

1    entering into it because I'm sure the Government's perspective

2    would be that Judge Hunt's order is the law of the land as we

3    stand today.

4           But if the Eleventh Circuit reverses that and finds

5    in our favor or simply vacates and sends back with direction, I

6    think it would be appropriate for us to revisit it at that time

7    since it is not charged.

8           THE COURT:  Well, I think Mr. Grimberg is right.  You

9    can revisit conditions of release or with regard to Hi-Tech

10   which wouldn't affect -- I don't want to call it an injunction

11   because I'm a magistrate judge and I'm not authorized to issue

12   injunctions.  Just call it a court order.  You would be

13   authorized to come back and apply to me.  I mean, I guess in

14   part it depends on if Judge Hunt is reversed what the nature of

15   the reversal is --

16          MR. LEACH:  Exactly.

17          THE COURT:  -- particularly since that case involves

18   partially an injunction, I guess.  And, you know, if they --

19          MR. LEACH:  It really does not, Judge.  But I'm

20   totally with you in terms of what happens at the Eleventh

21   Circuit is what will dictate what we do.

22          THE COURT:  Correct.

23          MR. LEACH:  Thank you.

24          THE COURT:  Okay.  All right.  So we -- did y'all

25   send the language to --

```
 1              MR. GRIMBERG:  No.  Can I do it when I get back to
 2      the office?
 3              THE COURT:  Yes, except I need to -- in order to
 4      release the defendants, I need that language --
 5              MR. GRIMBERG:  Okay.
 6              THE COURT:  -- to put it in the bond.
 7              MR. GRIMBERG:  Okay.
 8              THE COURT:  Can Ms. Connors send it?  She looks like
 9      she is doing it right now.
10              MR. GRIMBERG:  I'll do it, Judge.
11                   (There was a brief pause in the proceedings.)
12              THE COURT:  And what are we doing about the no
13      contact provisions since Mr. Wheat and Mr. Schopp apparently
14      work together?
15              MR. LEACH:  And he's had -- Mr. Schopp has had the
16      same job for over nine years, I think, coming up on ten years.
17      What I would ask to probably confront this before -- what I
18      would ask is that they just not talk about the case is what I
19      would ask the Court to include in the bond order.
20              THE COURT:  Mr. Grimberg?
21              MR. GRIMBERG:  That is fine.
22              MR. MORRIS:  Outside the presence of their attorneys?
23              THE COURT:  Correct.
24                   (There was a brief pause in the proceedings.)
25              MR. GRIMBERG:  Before I hit send, let me read this
```

1    into the record, Judge.

2                THE COURT:  Okay.

3                MR. GRIMBERG:  I just said, collectively the

4    defendants are prohibited from directly or indirectly through

5    third parties manufacturing, distributing, or selling

6    adulterated foods or misbranded drugs, including but not

7    limited to products containing DMAA or its chemical equivalent.

8    This includes but is not limited to purchasing or receiving

9    DMAA ingredients and manufacturing, processing, packaging,

10   marketing, or distributing food or dietary supplement products

11   containing DMAA or its chemical equivalent.

12               THE COURT:  Gentlemen, are you all right with that?

13               MR. LEACH:  Yes, sir.

14               MR. MORRIS:  Yes, sir.

15               **(There was a brief pause in the proceedings.)**

16               THE COURT:  Do Mr. Wheat and Mr. Schopp have

17   passports?

18               MR. LEACH:  Yes.

19               MR. MORRIS:  Yes, sir.

20               THE COURT:  All right.  They need to turn in the

21   passports also by 3:00 tomorrow --

22               MR. LEACH:  Yes, Your Honor.

23               THE COURT:  -- to pretrial services.

24               **(There was a brief pause in the proceedings.)**

25               THE COURT:  Hey, Bruce -- Mr. Morris, do you want to

 1    come get this?

 2              MR. MORRIS:  Yes, sir.

 3              MR. GRIMBERG:  Judge, just nothing for you to decide

 4    today.  But just wanted to get on the record Mr. Leach and I

 5    have had a conversation about it.  We need to explore an issue

 6    regarding his ability to provide conflict-free representation

 7    of Mr. Schopp given clients he has represented in the past.

 8              We are going to try to work through that issue

 9    outside of court.  But I just wanted to note that for the

10    record if necessary we may -- I guess that would go to Judge

11    Salinas; is that right?

12              THE COURT:  Yes.  I mean, unless it is something that

13    absolutely positively needs to be done in the next couple of

14    days and I'm still on duty.  But --

15              MR. GRIMBERG:  Well, I'm not going to give him

16    discovery just yet.

17              MR. LEACH:  I'm fine with him keeping the discovery.

18    I don't think there is an issue.  But I'm happy that he puts

19    that on the record, and we will continue to discuss it with the

20    Government.

21              THE COURT:  Okay.

22              **(There was a brief pause in the proceedings.)**

23              THE COURT:  Okay.  Mr. Leach?

24              MR. LEACH:  Thank you.

25              THE COURT:  Then I'll take your language,

1   Mr. Grimberg, and just enter it and put an order together for

2   Hi-Tech when I get off the bench.

3                 **(There was a brief pause in the proceedings.)**

4         THE COURT:  Gentlemen, I have signed the bonds and

5   the conditions of release.  I need you to pay attention for one

6   moment while I tell you what those conditions are.

7         While you are on release in this case, you cannot

8   violate the laws of any governmental units.  That is federal,

9   state, or local law.  Must cooperate in collection in the DNA

10  sample if that is authorized by federal law.  Must advise the

11  court or pretrial services' office in writing before making any

12  change of residence or telephone number.  Must appear in court

13  as required and, if convicted, must surrender as directed.

14        To that end, each of you is going to post a secured

15  bond.  Mr. Wheat, it is $100,000 in cash.  That is to be

16  deposited into the registry of the court by 3:00 tomorrow,

17  October the 5th and, Mr. Schopp, by posting 20,000 -- posting

18  your home and it is a 20,000-dollar bond.  And you need to do

19  that by 3:00 tomorrow as well.

20        And if you fail to appear or to surrender, then

21  the -- gentlemen, then the amount posted for the bond will be

22  forfeited to the United States.  But that will be the least of

23  the problems that you will face.

24        While you are out -- and everything I say here today

25  is applicable to both of you -- you will be supervised by the

1    United States Pretrial Services Office.  Once you get out of

2    custody, you need to report to pretrial services before you

3    leave the courthouse.  You need to abide by all of their

4    instructions and report as directed.

5            You must maintain or actively seek lawful, verifiable

6    employment; must surrender your passports to pretrial services

7    by 3:00 P.M. on October the 5th, 2017.  And you cannot possess

8    or apply for a passport or other international travel document.

9    That includes a visa or passport card and a passport book in

10   your name, in another name, or on behalf of a third party,

11   including minor children, while this case is pending.

12           Again, you can't change your address or telephone

13   number without written pre-approval by pretrial services.

14   Don't have any contact, direct or indirect, with anybody who is

15   a victim or witness in this case.  That includes all

16   co-defendants and unindicted co-conspirators.  You may only

17   discuss this case with any co-defendant in the presence of

18   counsel in this case.

19           You cannot possess a firearm, destructive device,

20   other dangerous weapon, or ammunition in your home, your

21   vehicle, your place of employment, or upon your person.  Don't

22   drink alcohol to excess.  Obviously, you cannot unlawfully

23   possess or use any narcotic drug or other controlled substance

24   unless lawfully prescribed by a licensed medical practitioner.

25           You must report any contact with law enforcement

other than law enforcement contact authorized by your lawyer

within 72 hours of that contact.  You need to report that to

pretrial services.  Obviously you need to tell your lawyers if

you're having contact with law enforcement as well.  Contact

means basically arrests, questioning, traffic stop, and the

like.

Your travel is restricted to the Northern District of

Georgia unless your pretrial services officer has given you

pre-approval in advance of the travel.  You must satisfy the

economic terms of the appearance bond by 3:00 tomorrow.

And you also are agreeing that you are prohibited

from directly or indirectly through third parties

manufacturing, distributing, or selling adulterated foods or

misbranded drugs, including but not limited to products

containing DMAA or its chemical equivalent.  This includes but

is not limited to the purchasing or receiving DMAA ingredients

and manufacturing, processing, packaging, marketing, or

distributing food or dietary supplement products containing

DMAA or its chemical equivalent.

Gentlemen, do you understand the conditions of

release?

DEFENDANT WHEAT:  Yes, sir.

DEFENDANT SCHOPP:  Yes, sir.

THE COURT:  All right.  These are the penalties and

sanctions if you violate any condition of release.  A violation

1    of any condition will result in the immediate issuance of a

2    warrant for your arrest.  Your release will be revoked.  You

3    will be detained.  If your violation concerns the failure to

4    appear or surrender, your bond will be forfeited.

5             And in any event, any violation could result in your

6    prosecution for contempt of court.  And that could result in a

7    term of imprisonment, a fine, or both.

8             While on release if you commit a federal felony

9    offense, if you get a sentence in the underlying case, your

10   sentence can be enhanced by up to ten years.  And if you commit

11   a federal misdemeanor offense, then your underlying sentence in

12   this case can be enhanced by up to one year.

13            It is also a crime punishable by up to ten years of

14   imprisonment and a 250,000-dollar fine or both to obstruct a

15   criminal investigation, to tamper with a witness, victim, or

16   informant, or intimidate or attempt to intimidate a witness,

17   victim, juror, informant, or officer of the court.  That goes

18   back directly to the no contact provisions.

19            And if after your release you not only fail to appear

20   as required or to surrender for service of any sentence imposed

21   as directed, you can be prosecuted for bail jumping or failing

22   to surrender.  And if convicted, you can be sent to the

23   penitentiary for up to ten years, fined $250,000, or both.

24            And all of the penalties that I have talked about

25   with you which are penalties and sanctions to violating

1   conditions of release would run over and above whatever

2   sentence, if any, you receive in the underlying case.

3           Do you, gentlemen, understand that?

4           DEFENDANT WHEAT:  Yes, sir.

5           DEFENDANT SCHOPP:  Yes, sir.

6           THE COURT:  Okay.  If you have any questions, talk to

7   your lawyers.  I will issue an order in a little while as to

8   Hi-Tech with that condition.

9           All right.  Anything else that we have to talk about

10  in either Mr. Wheat's case, Mr. Schopp's case, or Hi-Tech's

11  case?

12          MR. GRIMBERG:  Not for the Government, Your Honor.

13          MR. MORRIS:  No, sir.

14          MR. LEACH:  No, sir.  No, Your Honor.  Thank you.

15          THE COURT:  Then we are in recess.  Good luck,

16  gentlemen.

17          MR. MORRIS:  Thank you, Your Honor.

18          COURTROOM DEPUTY CLERK:  All rise.

19              **(The audiotaped proceedings were thereby**

20              **concluded at 2:34 P.M.)**

21

22

23

24

25

                        C E R T I F I C A T E


UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA


     I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of
the United States District Court, for the Northern District of
Georgia, Atlanta Division, do hereby certify that the foregoing
27 pages constitute a true transcript of the audiotaped
proceedings had before the said Court, held in the City of
Atlanta, Georgia, in the matter therein stated.

     In testimony whereof, I hereunto set my hand on this, the
19th day of October, 2017.




                         _____
                         SHANNON R. WELCH, RMR, CRR
                         OFFICIAL COURT REPORTER
                         UNITED STATES DISTRICT COURT