# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

JARED WHEAT, JOHN
BRANDON SCHOPP, and HI-
TECH PHARMACEUTICALS,
INC.,

      Defendants.

No. 1:17-CR-0229-AT-CMS

**DEFENDANTS JARED WHEAT AND HI-TECH PHARMACEUTICALS,
INC.'S MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO
THE SECOND (DMAA) SEARCH WARRANT EXECUTED AT HI-TECH'S
PREMISES AND MEMORANDUM OF LAW IN SUPPORT**

COME NOW Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc.

("Hi-Tech"), by and through their undersigned counsel, and pursuant to Fed.  R.

Crim. P. 41(h), file this motion to suppress evidence seized pursuant to the second

of two warrants executed on October 4, 2017, at Hi-Tech's facilities. This second

warrant was specifically directed at products containing DMAA, and followed the

execution of an earlier search warrant at the same location.[1] This second warrant for DMAA containing products violated the Fourth Amendment to the Constitution and accordingly all evidence seized in and derived from this search should be suppressed and returned to Defendants. In support of this request, Defendants respectfully show this Court the following:

## I.   INTRODUCTION

On the morning of October 4, 2017, at least 41 federal agents began executing multiple search warrants at six locations belonging to Hi-Tech. Defendants Jared Wheat and John Brandon Schopp were arrested early that same morning based on charges contained in an eighteen-count indictment. Doc. 7. At 1:30 p.m. that afternoon, at an initial appearance before Magistrate Judge Alan J. Baverman, Hi-Tech and Mr. Wheat were coerced into agreeing to a condition of pretrial release that prohibited Hi-Tech and Mr. Wheat from manufacturing and marketing all products containing DMAA.[2] Immediately following that hearing,

---

[1] The initial search warrant is the subject of Defendants' simultaneously filed "Motion to Suppress Evidence Seized Pursuant to the Initial Search Warrants Executed at Hi-Tech's Premises," Doc. 51.

[2] The circumstances under which this agreement was entered into are the subject matter of Defendants' previously filed "Motion to Amend Conditions of Pretrial Release," Doc. 45.

the Government presented the court with a second search warrant [3] for Hi-Tech's premises, which the Government allegedly obtained in an "abundance of caution," since it knew the first warrant could not pass constitutional muster. EXHIBIT B at ¶ 20. The warrant was directed at all products containing DMAA, as well as related documents and manufacturing and marketing materials. Magistrate Judge Baverman authorized this warrant at 2:35 p.m. that same day.  The DMAA warrant was executed and the agents eventually left Hi-Tech with nearly $19 million of DMAA containing products. Doc. 45-2 at 6. The amount of materials seized from Hi-Tech pursuant to this warrant would have required at least five tractor-trailers to remove from the premises. *Id.* at 5.

The DMAA warrant at issue was authorized on the basis of an application that was supported by the affidavit of Gerald Dunham (the "Dunham affidavit"), a Special Agent with the United States Food and Drug Administration's Office of Criminal Investigations ("FDA-OCI"). EXHIBIT B at 3. As will be set out below in detail, Agent Dunham's affidavit contained material misrepresentations and omissions that, collectively, are fatal to the purported showing of probable cause.

---

[3]   A copy of the warrant (the "second warrant" or the "DMAA warrant") is attached to this motion as EXHIBIT A. A copy of the application and affidavit upon which the warrant was authorized is attached as EXHIBIT B.

This warrant and the ensuing search and seizures should be viewed in the context of two sets of facts:  (1) the litigation between the Government and Hi-Tech regarding a November 2013 seizure of DMAA containing products, which is still ongoing; and (2) the pattern of overreaching by the Government in the earliest stages of this criminal action, much of which is focused on DMAA, *even though there are no charges in the indictment that relate to DMAA in any way*.

As set out in Defendants' previously filed motions, the Government has engaged in a pattern of overreaching, which, to date, includes: (1) seizing all the funds from Defendants' operating accounts pursuant to two woefully inadequate warrant applications; [4] (2) seizing all of the contents of two Hi-Tech-related email accounts, including attorney-client communications; [5] and (3) coercing Mr. Wheat and Hi-Tech to agree to cease manufacturing and selling DMAA containing products as a condition of Mr. Wheat's pretrial release, even though the indictment in this case does not involve DMAA in any way. [6]

In the instant motion, Defendants will show the Government's pattern of overreaching and violating Defendants' constitutional rights extends to the second

---

[4] *See* Defendants' "Emergency Motion for Release of Improperly Seized Funds," Doc. 36.

[5] *See* Defendants' "Motion to Suppress Evidence Seized Pursuant to the Search Warrants for Emails and Electronically Stored Information," Doc. 44.

[6] *See* Defendants' "Motion to Amend Conditions of Pretrial Release," Doc. 45.

search conducted on October 4, 2017, and that evidence seized pursuant to the second warrant should be suppressed. Because Defendants allege material misrepresentations and omissions in the search warrant affidavit, Defendants respectfully submit this Court should conduct a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978), as to this second warrant. Upon a finding that Hi-Tech's DMAA containing products and related materials were unlawfully seized, those materials must be returned to Hi-Tech pursuant to Fed. R. Crim. P. 41(g).

## II.   STATEMENT OF FACTS

In order to avoid duplication, Defendants respectfully refer the Court to the Defendants' previously filed motion to amend conditions of pretrial release, Doc. 45 at 6-16, which provides a summary of Hi-Tech's dietary supplement business and the lengthy history of the high-profile litigation between Hi-Tech and the Government that preceded the instant indictment. Notably, that history includes an *in rem* seizure action relating to a seizure of Hi-Tech's DMAA containing products in November 2013 that was merged with Hi-Tech's lawsuit under the Administrative Procedure Act, which alleged that the Government violated the APA and Hi-Tech's due process rights under the Fifth Amendment when it unlawfully attempted to *de facto* ban DMAA from the marketplace via a campaign of intimidation against DMAA marketers based on the erroneous belief that

DMAA was neither safe nor naturally derived.[7] United States District Judge Willis B. Hunt, Jr., presided over that litigation, and his summary judgment decision is currently on appeal to the Eleventh Circuit.[8] Since the case was an *in rem* seizure action, the reach of Judge Hunt's ruling in that case, Case No. 1:13-cv-3675, Doc. 140, was limited to the forfeiture of the specific products seized in November 2013. The facts that relate specifically to the second search warrant will be set out herein.

As the indictment makes clear, this criminal action has *nothing to do with DMAA*. *See* Doc. 7. The charges are limited to accusations that Hi-Tech, Mr. Wheat, and Mr. Schopp: (1) forged documents known as "Certificates of Free Sale" and other audit reports; (2) marketed a *misbranded* drug (allegedly containing a cholesterol medication); (3) manufactured and distributed a *misbranded* controlled substance (allegedly an anabolic steroid); and (4) various related wire fraud, money laundering and forfeiture counts. *Id.* None of these charges is related in any way to DMAA. In fact, *DMAA is not mentioned in the indictment. Id.*

---

[7]  *United States v. Undetermined Quantities of all Articles of Finished and In-Process Foods, et al.*, No. 1:13-cv-3675 (N.D. Ga.) ("*in rem* seizure action").

[8]  *Sub nom. United States v. Hi-Tech Pharmaceuticals, Inc., et al.,* Eleventh Circuit Case No. 17-13376.

As explained in Defendants' simultaneously filed motion to suppress relating to the initial search warrants the Government executed on October 4, 2017, Doc. 51, the Government initially applied for and was granted a warrant on September 28, 2017, which was executed early the morning of October 4, 2017 (the "initial search warrant"). The application for the initial search warrant was supported by the affidavit of FDA-OCI Special Agent Brian C. Kriplean (the "Kriplean affidavit"). The focus of that initial warrant was to seize evidence that allegedly related to the claim that Hi-Tech was "manufacturing, marketing and distributing *misbranded* foods and/or drugs, some of which contain Schedule III controlled substances, namely, anabolic steroids." Doc. 51-2 at ¶¶ 3, 11, 46 (emphasis added).[9] As explained in Defendants' motion to suppress the initial search warrant, the Kriplean affidavit described the types of evidence that the Government claimed established probable cause related to its investigation that Hi-Tech was marketing *misbranded* "prohormones" that contained Schedule III anabolic steroids. *Id.* at ¶¶ 28-45. The affidavit was limited to five specific Hi-Tech

---

[9] The pages in both search warrant applications are unnumbered. These citations are found in the Kriplean affidavit by counting the unnumbered pages beginning with the page headed, "AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT," and are located at pages 3 (¶ 3), 6 (¶ 11), and 28 (¶ 46).

products and made no mention of either DMAA or Hi-Tech's on-going litigation with the Government regarding DMAA.

Following execution of the initial search warrant on the morning of October 4, 2017, and immediately following the bond hearing in which the Government obtained Mr. Wheat and Hi-Tech's "agreement" to a prohibition on Hi-Tech's manufacture and sale of DMAA containing products, Doc. 22-1, the Government presented an application for a second search of all six of Hi-Tech's premises, this time targeting Hi-Tech's DMAA containing products. EXHIBIT B. The application for this warrant was supported by the Dunham affidavit. *Id.* Unlike the affidavit of Agent Kriplean that accompanied the first search warrant, which solely focused on allegedly *misbranded* dietary supplements and the purported distribution of anabolic steroids, the Dunham affidavit focused on the alleged "purchasing, receiving, . . . manufacturing, marketing and distributing" of *adulterated* foods. *Id.* at ¶ 21 (emphasis added).

The Dunham affidavit referenced and attached the initial search warrant and the Kriplean affidavit. *Id.* at ¶ 14. It further explained that:

> [W]hile executing the search and seizure warrants at the Subject Locations, FDA-OCI Special Agents observed in plain view products labeled to contain DMAA (also known as '1,3 Dimethylamylamine') or its chemical equivalent, as well as bulk containers of raw product labeled as containing DMAA or its chemical equivalent . . . .

8

*Id.* at ¶ 15.

The Dunham affidavit failed to state where in any of the six separate locations the Government agents found DMAA containing products "in plain view," yet asked for authorization to search all six locations as if Hi-Tech was a "stash house," not a dietary supplement company.

The Dunham affidavit further stated that the initial search warrant, which authorized the seizure of any "adulterated foods," in addition to "misbranded" ones, applied to the DMAA that the Government agents found in "plain view." *Id.* at ¶¶ 15-16 (all of the "[c]urrent DMAA Products" located at Hi-Tech's facilities were "considered to be adulterated under the [Food Drug & Cosmetic Act]."). Based on this application, the magistrate judge authorized a search warrant targeted at DMAA. EXHIBIT A at 1.

There are multiple material misrepresentations in the Dunham affidavit. In support of its assertion that the initial search warrant properly authorized the seizure of any "*adulterated* foods," the Government failed to inform the magistrate judge that the initial search warrant allowed the seizure of supposedly *adulterated*

products even though the Kriplean affidavit alleged probable cause only as to *misbranded* products.[10]

Agent Dunham's affidavit also referred to Judge Hunt's summary judgment decision and order in the *in rem* seizure action. EXHIBIT B at ¶¶ 17-18. Construing that order, Agent Dunham represented that, "[t]he Court's reasoning in the Civil Seizure Action, *i.e.*, that DMAA is an unsafe food additive, thus rendering food containing DMAA adulterated, also applies to the . . . DMAA Products observed by FDA-OCI at [Hi-Tech's premises]." *Id.* at ¶ 19. That assertion contains several material omissions that render it both legally and factually incorrect. As noted in the discussion of this litigation in Defendants' motion to amend conditions of pretrial release, Doc. 45 at 10 & 15, the *in rem* seizure action could only apply to the *res*, *i.e.,* to the goods seized in November 2013, and the District Court's ruling specifically stated it was limited to only "Defendants['] undetermined quantities of all articles of finished and in-process

---

[10] The distinction between misbranded products and adulterated products is legally significant. Misbranded products and adulterated products are distinctly different and consequently are addressed in different subsections of the relevant statutes. *Misbranded* products are products that say they are one thing, but are actually another, or contain substances not disclosed on the label. *See* 21 U.S.C. § 343. *Adulterated* products are those that contain, for example, an unsafe food additive (which the Government incorrectly alleges DMAA is). *See* 21 U.S.C. § 342(a)(2)(C)(i).

foods, raw ingredients (bulk powders, bulk capsules) containing DMAA . . . .as listed in the complaint. . . ." *In rem* seizure action, Doc. 140 at 13.

Moreover, during both the related Administrative Procedure Act action[11] and the *in rem* seizure action, the Government consistently informed the Court and Hi-Tech that there was "no reasonable expectation that FDA will administratively detain Hi-Tech's products containing DMAA again while the issue of whether those products are adulterated is litigated in the Northern District of Georgia." APA action,   Doc. 8 at 9-10; *see also in rem* seizure action, Doc. 43-1 at 25 (wherein the Government specifically denied that: (1) the seizure action would have any effect on the "manufacturing, marketing, or selling" of Hi-Tech's DMAA containing products; (2) Hi-Tech would be forced to recall any products based on the outcome of the *in rem* seizure action; and (3) that the "FDA [was] "requiring" [Hi-Tech] to cease manufacturing products and 'seeking to order' it to recall products.").

The Dunham affidavit also failed to inform the magistrate judge that the materials the Government sought to seize in the DMAA warrant were those same

---

[11] *See* Doc. 45 at 10-11 (describing the prior litigation history). This case was originally filed in the United States District Court for the District of Columbia. *Hi-Tech Pharmaceuticals, Inc. v. Hamburg*, 1:13-cv-1747 (D.D.C.) (the "APA action"). It was later transferred to this District Court, where it was consolidated with the *in rem* seizure action before Judge Hunt.

products that it consistently maintained it would not "administratively detain" until the *in rem* seizure action was litigated to its conclusion.

The Dunham affidavit further failed to inform the magistrate judge that the indictment did not allege that any crimes were committed related to DMAA or even mention DMAA at all. Indeed, there is no indication that the Government is even investigating Hi-Tech's possession of DMAA as a crime.

Furthermore, the wording of the initial search warrant and the Kriplean affidavit submitted in support of that warrant make clear that the Government crafted these documents in such way as to grant a "hook" for the Government to "catch" Hi-Tech's DMAA containing products. This provided the pretext the Government desired to seize the DMAA products when they stumbled upon it in "plain-view." And, of course, there were DMAA products in plain view – by agreement, the pallets of DMAA involved in the *in rem* seizure action have been held in Hi-Tech's warehouse in plain view behind yellow crime scene tape since the FDA detained them in 2013, with the full knowledge of DOJ and FDA attorneys and FDA agents. *See* Fourth Declaration of Michelle Harris, attached to this motion as EXHIBIT C at ¶ 4.

The Government seized an enormous amount of Hi-Tech's DMAA containing products pursuant to the DMAA warrant.[12]  The wholesale value of the DMAA that was seized is approximately $10,640,553.81 and the retail value is approximately $18,915,705.00. EXHIBIT C at ¶ 5. Moreover, supposedly misbranded products actually named in the indictment, such as red yeast rice, were left behind in Hi-Tech's warehouses, while all of Hi-Tech's DMAA, which was not referenced in the indictment, was removed by the Government via multiple trucks (except for the DMAA related to the *in rem* action). *Id.* at ¶ 6. Considering that the Government has yet to bring a single criminal charge related to DMAA, and that the warrants are defective for the reasons stated herein, the full impact of the Government's overreach here is clear. The Government wants to put Hi-Tech out of business, regardless of the constitutional barriers to doing so.

### III.   ARGUMENT AND CITATION OF AUTHORITIES

### A.  THE FOURTH AMENEDMENT IS NOT A MERE FORMALITY.

Chief among the requirements of the Fourth Amendment, and directly relevant here, are: (1) "[A]n otherwise unobjectionable description of the objects to

---

[12] Mr. Wheat and Hi-Tech have standing to bring this motion under Rule 41(h). Hi-Tech, of which Mr. Wheat is the Chief Executive Officer and 95% shareholder, is the lawful owner of the DMAA seized pursuant to the warrant at issue in this motion. EXHIBIT C at ¶ 7. All of the DMAA containing products seized by the Government is the rightful property of Hi-Tech. *Id.*

be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based," *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (citing 2 W. LaFave, Search and Seizure § 4.6(a) (5th ed. 2012));[13] and (2) a warrant is suspect where it contains a "false statement" that "knowingly and intentionally or with reckless disregard for the truth" was included in an affidavit that was "necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56. These requirements are not mere "formalities." *McDonald v. United States*, 335 U.S. 451, 455 (1948).

### B. THE INITIAL SEARCH WARRANT DOES NOT MEET THE FOURTH AMENDMENT'S REQUIREMENTS.

As set out in Defendants' motion to suppress relating to seizures pursuant to the initial search warrants, Doc. 51 at 8-10, that warrant was overbroad and any seizure of Hi-Tech's DMAA containing products pursuant to it should be suppressed and returned to Hi-Tech. The initial warrant permitted the Government

---

[13] The "overbreadth" prohibition is the corollary to the Fourth Amendment's "particularity" requirement, which holds that "a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011); *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006) (the Fourth Amendment's "[s]pecificity [requirement] has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based.").

to seize "adulterated foods and/or drugs" even though the Kriplean affidavit on which it was authorized contained no allegations related to the *adulteration* of any products by Defendants. *Compare* Doc. 51-1 *with* Doc. 51-2.  Instead, the Kriplean affidavit (which the Dunham affidavit incorporated and relied upon as supposedly authorizing a search for *adulterated* products, *see* Exhibit B, Dunham affidavit, at ¶¶ 15-16) specifically delineated the crimes suspected as involving the *misbranding* of foods and/or drugs alleged to contain anabolic steroids. Kriplean affidavit, Doc. 51-2 at ¶¶ 3, 46.

Clearly, the Kriplean affidavit failed to demonstrate probable cause to support the seizure of any allegedly *adulterated* products, including DMAA, and any seizure of DMAA containing products and related materials and paraphernalia under the initial search warrant would be prohibited by the Fourth Amendment. *See Galpin*, 720 F.3d at 446 (a warrant violates the Fourth Amendment when it is "broader than can be justified by the probable cause upon which the warrant is based").

### C.  THE AFFIDAVIT FOR THE DMAA WARRANT CONTAINED FALSE, RECKLESS AND MATERIALLY MISLEADING STATEMENTS AND OMISSIONS.

The DMAA warrant was authorized by the magistrate judge on the basis of an application and affidavit sworn to by Agent Dunham. EXHIBIT A at ¶ 1. The

Dunham affidavit contains false and misleading assertions that Agent Dunham knew, or recklessly failed to know, were false when he made them before the magistrate judge. These are not mere surface blemishes or technical oversights. Additionally, had the magistrate judge known the full truth about the ongoing contentious civil litigation between Hi-Tech and the FDA, most notably the repeated representations by the Government that it would not seek to take further action concerning Hi-Tech's DMAA during the pendency of the *in rem* litigation concerning DMAA seized from Hi-Tech in November 2013, he would not have authorized the DMAA warrant.

Agent Dunham's material misrepresentations and omissions constituted a violation of Defendants' Fourth Amendment rights, which must be remedied by suppression of the fruits of the search. When an affidavit contains such significant, deliberately false and misleading representations and omissions, Defendants respectfully submit that this Court is required to hold a hearing pursuant to *Franks,* 438 U.S. at 155-56, to determine whether sufficient, accurate evidence existed outside of the misrepresentations and omissions to support the issuance of the search warrant. *See United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006).

The Supreme Court in *Franks* announced the standard for determining whether a defendant is entitled to a hearing:

> We hold that where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

438 U.S. at 155-56.

In the Eleventh Circuit, a defendant may challenge an affidavit in support of a search warrant if he makes a "substantial preliminary showing" that: "(1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause." *Arbolaez*, 450 F.3d at 1293 (citing *Franks*, 438 U.S. at 155-56). While the Eleventh Circuit has noted that the "substantiality requirement" for false statements is "not lightly met," there is no doubt that here, the Defendants' challenges to the Dunham affidavit are "'supported by more than a mere desire to cross-examine.'" *Id*. at 1294 (quoting *Williams v. Brown*, 609 F.2d 216, 219 (5th Cir. 1979)).

The Dunham affidavit's misstatements and omissions regarding the *in rem* seizure action in this District Court are at the heart of the material information that was hidden from the magistrate judge at the time of the warrant application. *Id.*

17

The misrepresentations in the affidavit are two-fold: (1) by attaching and incorporating the Kriplean affidavit, Agent Dunham's affidavit repeats the misstatements contained in the first warrant affidavit, specifically whether there was probable cause to search for *adulterated* goods even though no criminal activity was alleged as to *adulterated* goods, only *misbranded* goods, EXHIBIT B at ¶¶ 14-16; and (2) the Dunham affidavit misconstrued Judge Hunt's decision in the *in rem* seizure action by expanding that decision's scope to apply to all "of Hi-Tech's products containing DMAA," *id.* at ¶ 19.

First, it is beyond doubt that the Kriplean affidavit failed to provide probable cause to support the seizure of any allegedly *adulterated* products, including DMAA. Indeed, the application for the initial search warrant and the warrant itself could be seen as a ploy on the part of the Government to allow it to come back to the Court and seek a second, DMAA specific warrant, which is exactly what it did. Due to its years-long civil litigation with Hi-Tech regarding DMAA – which  the Government failed to inform the Court of during either of the search warrant applications – the  Government knew it would find DMAA at Hi-Tech because the FDA had "seized" all of Hi-Tech's DMAA containing products in November 2013 and left the pallets in plain view behind yellow tape. *See* Doc. 45-2 at ¶ 9. By disingenuously planting the seed that it was permitted to seize *adulterated* goods

pursuant to the initial search warrant, despite the absence of any probable cause relating to adulterated goods, it appears that the Government hoped to cloak any subsequent seizure in the garb of the plain-view doctrine or make any subsequent DMAA focused warrant application a seeming natural out-growth of the initial search warrant (which was authorized by a different magistrate judge), which is clearly not the case here.

Second, Agent Dunham failed to inform the magistrate judge that Judge Hunt's judgment in the *in rem* seizure action was, by its own terms, limited to the items seized in November 2013. *In rem* seizure action, Doc. 140 at 13; Doc. 141. It was not an injunction, despite DOJ's attempts to turn it into one. *See* Doc. 45 at 14-15. It was not a sweeping nationwide decision regarding DMAA generally that could be applied to the DMAA containing products that the Government observed during execution of the initial search warrant, just as it was not a decision that can be applied to any other DMAA containing products produced by other dietary supplement makers. As such, the Government deliberately misled the magistrate judge when it construed Judge Hunt's Order in the Dunham affidavit.

Furthermore, the Dunham affidavit's other material omissions regarding the on-going *in rem* civil ligation with Hi-Tech are noteworthy:

- Agent Dunham failed to inform the magistrate judge that during the parties' briefing regarding Hi-Tech's motion to stay pending appeal, the DOJ and the FDA specifically attempted to expand the scope of that matter into a wide-ranging injunction that would have completely barred Hi-Tech and Jared Wheat from selling DMAA, but Judge Hunt completely ignored the request and did not modify the scope of his prior holdings regarding DMAA.[14]

- Paragraph 17 of the Dunham affidavit omitted the fact that Hi-Tech brought a proceeding pursuant to the APA specifically challenging the FDA's attempts to unlawfully ban DMAA as "adulterated," in violation of the Due Process Clause.

- Agent Dunham failed to reveal that, due to scientific misconduct by the Government's experts in the *in rem* seizure action (who are central to the current and incorrect contention that DMAA containing products are adulterated), the Government abandoned all of its experts but one by the time the summary judgment briefing was concluded. *See* Doc. 45 at 12-13.

It was the Government's obligation to "ascertain and present to the judge all relevant facts." *United States v. Westover*, 812 F. Supp. 38, 40 (D. Vt. 1993). Here, the false and omitted information in the Dunham affidavit "went to the heart of the

---

[14] *See in rem* seizure action, Doc. 145 at 10 (DOJ/FDA request for injunction regarding DMAA); Doc. 147 at 3-8 (Defendant's reply explaining the *in rem* nature of the *in rem* seizure action precluded issuance of an injunction); and Doc. 148 (order denying Hi-Tech's motion to stay without addressing Government request for injunction).

probable cause for the search" regarding DMAA. *United States v. McMurtrey*, 704 F.3d 502, 512 (7th Cir. 2013).

Once the false and misleading allegations are stripped from consideration, what remains simply does not demonstrate that probable cause existed to search and seize DMAA related products. *See Arbolaez*, 450 F.3d at 1293. The "Statement of Probable Cause" section of the Dunham affidavit is only seven paragraphs long. EXHIBIT B at ¶¶ 14-20. The first two paragraphs (¶¶ 14-15) recount the issuance of the initial search warrant and its execution; they do not set forth any basis to conclude probable cause existed to seize Hi-Tech's allegedly *adulterated* DMAA containing products. *Id.* Similarly, the next paragraph, paragraph 16, as explained above, stated that the initial search warrant "authorized the seizure of *adulterated* foods and/or drugs, and that "[t]he Current DMAA Products are considered to be adulterated under the FDCA." *Id.* Although Attachment B to the initial search warrant did include both "misbranded and adulterated foods and/or drugs," the Kriplean affidavit on which it was authorized only set forth probable cause to seize *misbranded* goods. The mismatch between the initial warrant and the Kriplean affidavit is without a doubt material as an affidavit in support of a warrant should "establish a connection between the defendant and the property to be searched and a link between the property and any

21

criminal activity." *United States v. Mathis*, 767 F.3d 1264, 1274-75 (11th Cir. 2014) (per curiam); *cf. United States v. Brouillette*, 478 F.2d 1171, (5th Cir. 1973) (holding that a search warrant affidavit failed to allege a federal crime and therefore probable cause was lacking for the issuance of the warrant). The final four  paragraphs (¶¶ 17-20) of the "Statement of Probable Cause" section of the Dunham affidavit are, as explained above, nothing more than an inaccurate and omission-laden description of the *in rem* seizure action before Judge Hunt.

When the seven inaccurate paragraphs in the Dunham affidavit are stripped away from the probable cause showing, it is clear that the affidavit lacks any probable cause whatsoever to seize DMAA containing products or related "paraphernalia," as the statements and omissions in these paragraphs were "essential to the finding of probable cause." *Arbolaez*, 450 F.3d at 1293; *see also United States v. Barsoum*, 763 F.3d 1321, 1328-29 (11th Cir. 2014). Additionally, had the magistrate judge known the full truth about the ongoing, contentious civil litigation between Hi-Tech, Mr. Wheat, and the Government – including the scientific fraud and dishonesty of the Government's experts, who accepted millions of dollars to engineer their findings and who are central to the FDA's contention that DMAA is adulterated – he would not have issued the DMAA warrant, as these were neither insignificant nor immaterial omissions. *See United States v. Novaton*,

271 F.3d 968, 987 (11th Cir. 2001); *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990); *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980) (holding that a warrant violates the Fourth Amendment when it contains omissions "made intentionally or with a reckless disregard for the accuracy of the affidavit").

Defendants have made a "substantial preliminary showing" that: "(1) [the Government and Agent Dunham] deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause." *Arbolaez*, 450 F.3d at 1293 (citing *Franks*, 438 U.S. at 155-56); *United States v. Westover*, 812 F. Supp. 38, 40 (D. Vt. 1992) (granting *Franks* hearing where affidavit submitted in support of search warrant contained allegedly deliberately misleading statement and material omissions, without which there was insufficient facts to independently justify a finding of probable cause for issuance of the warrant); *McMurtrey*, 704 F.3d at 510 (*Franks* hearing was warranted where the affidavit in support of the search warrant conflicted with the affidavit and account of another law enforcement official); *United States v. Johns*, 851 F.2d 1131, 1134 (9th Cir. 1988) (remanding for a *Franks* hearing where the defendant alleged that portions of the affidavit in support of the search warrant could not have been true); *United States v. Garcia-Zambrano*, 06-CR-00172, 2007 WL 108396, at *2 (D.

Colo. Jan. 10, 2007) (granting *Franks* hearing where the affidavit in support of the search warrant was inconsistent with an investigative report created by the affiant). Defendants respectfully submit that this Court should conduct an evidentiary hearing pursuant to *Franks*, and upon sufficient cause being shown, grant Defendants' motion to suppress.

### D. HI-TECH'S DMAA WAS UNLAWFULLY SEIZED AND MUST BE RETURNED PURSUANT TO FED. R. CRIM. P. 41(g).

Rule 41(g), Fed. R. Crim. P. provides, in pertinent part, that "[a] person aggrieved by an unlawful search and seizure of property or the deprivation of may move for the property's return."

As set forth in this motion, Hi-Tech and Mr. Wheat were subjected to an unlawful search and seizures pursuant to the second DMAA warrant. The seizures included nearly $19 million of Hi-Tech's products. As set forth in Defendants' previously filed motion relating to the DMAA ban as a condition of Mr. Wheat's pretrial release, depriving Hi-Tech of these products, as well as the ability to continue to manufacture and market DMAA containing products is endangering Hi-Tech's ability to continue in business and, ultimately, to defend against these serious criminal charges. Doc. 45 at 38-39; Doc. 45-2 at ¶ 8.

## CONCLUSION

The DMAA warrant, and the initial search warrant on which it relied, were issued on the basis of affidavits that utterly failed to set out probable cause to seize allegedly *adulterated* products, which the Government contends DMAA containing products are. Moreover, the DMAA warrant was authorized on the basis of an affidavit that contained false, reckless and materially misleading statements and omissions more than sufficient to require an evidentiary hearing under *Franks v. Delaware*. Based on a finding that the search and seizures herein were in violation of the Fourth Amendment, Defendants' wrongly seized property should be promptly returned pursuant to Fed. R. Crim. P. 41(g).

WHEREFORE Defendants respectfully request that this Court: (1) conduct an evidentiary hearing pursuant to *Franks v. Delaware* into the accuracy of the affidavit upon which the DMAA warrant was issued; (2) upon good cause shown at that hearing, enter an Order suppressing all evidence seized in or as a result of the seizures pursuant to the DMAA warrant; (3) issue an Order returning Defendants' property pursuant to Fed. R. Crim. P. 41(g); and (4) for such other and further relief as this Court may deem just and proper.

This 22nd day of November, 2017.

Respectfully submitted,

/s/ Bruce H. Morris
Bruce H. Morris
Georgia Bar No. 523575
Finestone Morris & White
3340 Peachtree Road NW
Atlanta, Georgia 30326
404-262-2500
BMorris@FMattorneys.com
   *Counsel for Defendant*
   *Jared Wheat*

/s/ Arthur W. Leach
Arthur W. Leach
Georgia Bar No. 442025
The Law Office of Arthur W. Leach
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
404-786-6443
Art@ArthurWLeach.com
   *Counsel for Defendant*
   *Hi-Tech Pharmaceuticals, Inc.*

/s/ James K. Jenkins
James K. Jenkins
Georgia Bar No. 390650
Maloy Jenkins Parker
1506 Brandt Court
Boulder, Colorado 80303
303-443-9048
jenkins@mjplawyers.com
   *Counsel for Defendant*

/s/ Jack Wenik
Jack Wenik
Epstein Becker & Green, P.C.
One Gateway Center, 13th Floor
Newark, New Jersey 07102
973-639-5221
jwenik@ ebglaw.com
Admitted Pro Hac Vice
   *Counsel for Defendant*
   *Jared Wheat*
   *Hi-Tech Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing "Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc.'s Motion to Suppress Evidence Seized Pursuant to Second DMAA Search Warrant Executed at for Hi Tech's Premises and Memorandum of Law in Support" through this District's ECF system, which will automatically serve all counsel of record.

This 22nd day of November 2017.


/s/ Arthur W. Leach

Arthur W. Leach
   *Counsel for Defendant*
   *Hi-Tech Pharmaceuticals, Inc.*