**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

_____

UNITED STATES OF AMERICA,
    v.

JARED WHEAT, JOHN
BRANDON SCHOPP, and
HI-TECH PHARMACEUTICALS, Inc.
_____

)
)
)
)
)
)
)
)
)
)

No. 1:17-CR-0229-AT-CMS

**DEFENDANTS JARED WHEAT AND HI-TECH PHARMACEUTICALS,
INC.'S REPLY IN SUPPORT OF THEIR MOTION TO SUPPRESS
EVIDENCE SEIZED PURSUANT TO THE INITIAL SEARCH
WARRANTS EXECUTED AT HI-TECH'S PREMISES**

COME NOW Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc.

("Hi-Tech"), by and through their undersigned counsel, and file this Reply to the

Government's Response ("Resp."), Doc. 82, to Defendants' motion to suppress

evidence seized pursuant to the initial search warrants ("Motion"), Doc. 51.

**ARGUMENT AND CITATION OF AUTHORITIES**

**A. The Initial Search Warrant Was Facially Overbroad and Includes
Items and Documents with No Nexus to the Asserted Probable Cause.**

Despite its bluster, the Government's response ignores the facts that show the

initial search warrant is an overbroad, general warrant that lacks a sufficient nexus

between the items to be seized and the probable cause provided in the affidavit. *See*

Motion at 8-15. Hi-Tech manufactures and sells more than 200 different

supplements – including several products advertised as "prohormones" – in retail stores and online. Doc. 44 at 3. Yet the Kriplean affidavit describes only two purchases of Hi-Tech's products (in August 2016 and September 2017) in which the Government claims it identified five "prohormone" products that allegedly contained anabolic steroids. Doc. 51-2 at ¶¶ 20-25. The Government, however, did not limit the initial warrant to only items relevant to the five products. Nor did it limit the warrant to the class of "prohormones" that Agent Kriplean claims "often" contain anabolic steroids. *Id.* at ¶ 20. To the contrary, the warrant broadly allowed the Government to seize all "[e]vidence, fruits, and instrumentalities of violations of federal law, including 21 U.S.C. § 331 and 21 U.S.C. § 841(a)(1)." Doc. 51-1 at 4.

The scope of the warrant exceeds any conceivable nexus to the asserted probable cause. As a result, agents were able to "rummage through all [of Hi-Tech's] files" and inventory and seize everything that, in the agents' judgment (whether informed or not) could possibly relate to a "federal crime." *In re Grand Jury Proceedings*, 716 F.2d 493, 498 (8th Cir. 1983). That is precisely the type of overbroad, general warrant that the Fourth Amendment prohibits. *See id.*

Further, even though the Kriplean affidavit describes purchases in August 2016 and September 2017 and states that Hi-Tech's website was continuing to sell "prohormones" in August 2017, the warrant contains no temporal limitation

whatsoever. Agents thus seized documents from as far back as 2008 – nearly a decade before the allegedly illegal conduct in the affidavit. *See* Doc. 51-4 at ¶ 6. That fact alone renders the warrant overbroad. *See, e.g.*, *United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006) ("Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad.") (internal citation omitted)); *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (warrant overbroad, in part, because the "government did not limit the scope of the seizure to a time frame within which the suspected criminal activity took place"); *In re Grand Jury*, 716 F.2d at 497 (similar); *United States v. Abrams*, 615 F.2d 541, 545 (1st Cir. 1980) (similar).

In response to Defendants' overbreadth arguments, the Government repeats a single refrain: Hi-Tech is engaged in "expansive" illegality or "wide-scale" fraud, which the Government claims makes *all* of Hi-Tech's records and property subject to seizure under the "all records" exception. Resp. at 11, 13-14. However, there is *nothing* in the Kriplean affidavit that suggests that "fraud" or some other illegality "pervaded every aspect" of Hi-Tech's business. *Voss v. Bergsgaard*, 774 F.2d 402, 406 (10th Cir. 1985). The "all records" exception does not apply. *Id.*

Indeed, courts routinely refuse to allow broad "all records" seizures absent probable cause of a "pervasive fraud" or scheme that infects a substantial portion, if

3

not all, of the company's business. In *Voss*, the Tenth Circuit rejected the all records exception because the affidavit showed that, "[e]ven if the allegedly fraudulent activity constitutes a large portion, or even the bulk, of [the company's] activities, there is no [probable cause] justification for seizing records and documents relating to its legitimate activities." *Id.* Similarly, *United States v. Roche*, 614 F.2d 6 (1st Cir. 1980), held that, even though the supporting affidavit indicated that the insurance-company defendant was involved in expansive auto-insurance fraud, the warrant impermissibly allowed seizure of documents associated with other potentially legitimate aspects of the company's business. As the court explained, the "government could have limited the objects of search and seizure to documents and records pertaining to automobile insurance, but declined to do so. This impermissibly broadened the scope of the search beyond the foundation of probable cause in the affidavit." *Id.* at 7; *see In re Grand Jury*, 716 F.2d at 497.

Hi-Tech manufactures, sells, and distributes millions of dollars of lawful dietary supplements (from protein powders to weight-loss aids) in retailers like GNC, Vitamin Shoppe, Kroger, and Meijer Drugs. Doc. 36-5 at ¶¶ 4-8. Hi-Tech also manufactures millions of dollars of supplements for third parties. *Id.* The Kriplean affidavit discusses a total of five of Hi-Tech's more than 200 products; it comes nowhere near providing probable cause to believe that fraud or illegality pervades

"every aspect" of Hi-Tech's business. At most, the Kriplean affidavit suggests that *some* of a Hi-Tech's products (so-called "prohormones") were misbranded.[1] The Government cannot save its facially overbroad search warrant with late-breaking allegations of a "pervasive fraud" that are nowhere in the supporting affidavit.

**B. The Government Cannot Save an Unparticularized Warrant by Referencing Two Broad Statutes and an Exhaustive List of Items.**

Additionally, the initial warrant lacked "particularity" with respect to the "items and things to be seized." Motion at 15-19. The Government first argues that because the warrant limited the seizure to only "property, information, and data that constituted evidence of violations of Title 21, United States Code Sections 331(a) & (k) (FDCA provisions) and 841(a) (CSA provisions)" the "information to be seized was particularly identified" by the warrant. Resp. at 16. The Government further argues that the warrant's eight-page laundry list of potential "evidence, fruits, and

---

[1] This case, therefore, is unlike the cases relied on by the Government, where the government was permitted to seize the records of a business formed for the very purpose of carrying out a fraud. For example, *United States v. Majors*, 196 F.3d 1206 (11th Cir. 1999), relied on by the Government, Resp. at 14, involved an affidavit that alleged a pervasive fraud spanning more than two decades. *Id.* at 1209. The affidavit "alleg[ed] that, over a twenty-year period . . . [the defendants] conspired to defraud investors by selling millions of dollars of worthless securities, bogus licenses and phoney distributorships" through shell corporations. *Id.* The Kriplean affidavit contains no such allegations.

instrumentalities of those FDCA or CSA violations" was "sufficient" to "enable[] the executing agents to ascertain and identify the things to be seized." *Id.* at 16-17.

The Government is wrong on both counts. An unparticularized, general search warrant cannot be converted into a particular one by adorning it with a generic reference to two expansive federal statutes. In *United States v. Clark*, 31 F.3d 831 (9th Cir. 1994), the court rejected the Government's exact argument. The court found a warrant lacked the requisite particularity when the warrant "authorized a search for 'narcotic controlled substances, drug paraphernalia, marijuana cultivation equipment, instructions, notes, cultivation magazines, currency, documents, and records and *fruits and instrumentalities of [a] violation of Title 21, U.S.C. § 841(a)(1).*'" *Id.* at 836 (emphasis in original). The warrant here contains nearly identical language, authorizing the seizure of "[e]vidence, fruits, and instrumentalities of violations of federal law, including . . . 21 U.S.C. § 841(a)(1)." Doc. 51-1 at 1. Just as the Government does here, it argued in *Clarke* that the warrant's statutory reference cured any particularity problems. 31 F.3d at 834-36.

The court disagreed. Rather than define the scope of the warrant with sufficient particularity, the warrant's generic reference to "*fruits and instrumentalities of [a] violation of Title 21, U.S.C. § 841(a)(1)*" expanded the warrant beyond any reasonable constitutional limits. *Id.* (emphasis original). This

6

language provided no guidance to the executing officers: "Anything, of any nature or description, that could potentially be deemed to be a fruit or instrumentality of the alleged crime would qualify." *Id.*

Similarly, in *United States v. Leary*, 846 F.2d 592 (10th Cir. 1988), the Tenth Circuit invalidated a warrant that permitted the seizure of any:

> [C]orrespondence, telex messages, contracts, invoices, purchase orders or other records and communications relating to the purchase, sale and illegal exportation in violation of the Arms Export Control Act, 22 U.S.C. § 2778, and the Export Administration Act of 1979, 50 U.S.C. § 2410.

*Id.* at 602. Again, the government argued that because the warrant was limited to those items relating to "the purchase, sale and illegal exportation of materials in violation of the" two federal statutes, the warrant provided agents with adequate guidance. *Id.* The reviewing court disagreed. Without a reasonably detailed explanation as to how an agent could identify what constituted evidence of a violation, the alleged limitation "provided no limitation at all." *Id.*

Numerous other courts have reached similar results. *See, e.g.*, *United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013) (warrant authorizing seizure of items related to violations of "NYS Penal Law and or Federal Statutes" insufficiently particular); *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir. 1982) (invalidating warrant authorizing seizure of a long list of "fruits and instrumentalities of violations

of [26] U.S.C. § 7201"); *Voss*, 774 F.2d at 405 (similar); *Roche*, 614 F.2d at 8 (similar); *United States v. Wey*, 256 F. Supp. 3d 355, 387 (S.D.N.Y. 2017).

Here, the initial search warrant permitted the Government to seize any "[e]vidence, fruits, and instrumentalities of violations" of two broad statutes, 21 U.S.C. § 331 and 21 U.S.C. § 841(a). Even worse, the initial warrant permitted the Government to seize any "evidence, fruits, and instrumentalities of violations of federal law, including 21 U.S.C. § 331 and 21 U.S.C. § 841(a)(1)." In other words, despite the Government's claim that Defendants have "wholly ignore[d]" the purportedly limiting language of the initial warrant, Resp. at 11, it is the Government that "wholly ignore[s]" what the initial warrant actually permits: the search and seizure of *anything* potentially related to *any* violation of *any* "federal law."

Even assuming (wrongly) that the warrant was limited to only evidence and fruits of violations of 21 U.S.C. § 331 and 21 U.S.C. § 841(a)(1), those statutes prohibit a broad range of conduct – from refusing to permit FDA inspections, 21 U.S.C. § 331(f), to selling devices that can print tradenames for counterfeit drugs, *id.* § 331(i)(1)(2), to the manufacture or distribution of an array of controlled substances, 21 U.S.C. § 841(a)(1). The allegedly limiting language in the initial warrant thus provides "no limitation at all." *Leary*, 846 F.2d at 602. The instant warrant gave agents carte blanche to seize anything they wanted, irrespective of

8

whether the item related to the allegations purportedly supporting the search.

And that is exactly what happened. Federal agents seized thousands of pages of documents (including tax returns and related documents), terabytes of electronic data, and more than $2 million of products unrelated to any allegations in the Kriplean affidavit. *See* Doc. 51-3 (TABLE TWO); Declaration of Jared Wheat, attached as EXHIBIT G, at ¶¶ 5-11. Indeed, agents even seized more than $1 million of three different products that the FDA's Forensic Chemistry Center had previously determined did not contain any identifiable steroids or other prohibited substances. Doc. 72 at 11. Agents likewise seized numerous other items with no conceivable relevance to the affidavit's allegations (e.g., business cards, correspondence with the FDA, employee lists, brochures describing Hi-Tech's ongoing fight with the FDA regarding DMAA, product flavor codes). Doc. 51-4 at ¶ 7; EXHIBIT G at ¶ 11.

### C. This Court Should Conduct an Evidentiary Hearing to Determine the Scope of the Seizure of Privileged Documents and Whether the Government Employed Adequate Measures to Protect Defendants' Attorney-Client Privilege.

Defendants argued that because of the invalid search warrant, the agents seized large quantities of attorney-client privileged documents; that the purposeful intrusion justified invalidation of the warrants; and that an evidentiary hearing was necessary to determine the particulars of the intrusion. Motion at 19-24. In response,

without providing any factual showing by affidavit or otherwise, the Government asserts that it "made a good faith effort to segregate potentially privileged documents prior to review by the prosecution team," Resp. at 22, and that if a violation occurred, complete suppression is not the proper remedy. *Id.* at 22-23.

The scope of the remedy for such an intrusion logically turns on the particulars of the intrusion, its willfulness, and the content of the material invaded. *Compare* cases cited in Motion at 20-21 *with* cases cited in Resp. at 22-23. The question of remedy is for this Court to determine in light of the actual facts of what occurred.

Despite numerous requests, the Government has – in the past four months since the search – still provided no information about the procedures it purportedly employed to protect Defendants' privileged materials.[2] The Government has yet to provide any reason for this delay. The information is nothing more than historical facts as to what arrangements were made prior to the searches, what was seized, and what happened to the privileged documents. Defendants thus renew their request for an evidentiary hearing to determine what privileged documents were seized, as well as the other information relating to the Government's procedures. Motion at 24.

---

[2] The current status of these requests is that the Government has agreed to produce "information about the government's filter review process" by February 1, 2018. Doc. 76-1 at 2

**D. The Government's Actions Preclude Reliance on the Good Faith Exception Under *Leon*.**

The Government argues that, even if the initial search warrants were invalid, the good faith exception in *United States v. Leon*, 468 U.S. 897, 922 (1984), applies to avoid suppression. Resp. at 23.

But the *Leon* good faith exception is not absolute. Courts will not apply the exception in four circumstances set out in the decision. *Id.* at 922. After the court determines the applicability of any of the four exceptions, regardless of its determination in the first step, the court "must make an inquiry as to whether [the officers] reasonably relied upon the search warrant." *United States v. Martin*, 297 F.3d 1308, 1318 (11th Cir. 2002). The Government bears the burden of demonstrating the applicability of the *Leon* good faith exception. *United States v. Travers*, 233 F.3d 1327, 1331 n. 2 (11th Cir. 2000). The question to be determined is whether, in light of the totality of the circumstances, the officers' actions were objectively reasonable. *Martin*, 297 F.3d at 1318 (citing *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990)). In making this determination, the court can look beyond the four corners of the affidavit and search warrant. *Martin*, 297 F.3d at 1318; *see United States v. Accardo*, 749 F.2d 1477, 1481 (11th Cir. 1987) (remanding where trial court failed to hold evidentiary hearing on *Leon* to consider

11

the officers' conduct and "all circumstances").

Here, two of the exceptions to the application of *Leon*'s good faith exception are applicable. As detailed below, Agent Kriplean misled the issuing magistrate as to the chemical analysis performed by FDA chemists on the five substances purchased undercover, which formed the linchpin of the Government's probable cause. *Leon*, 468 U.S. at 922. Second, in light of the warrant's overarching failure to particularize the things to be seized, as detailed above and demonstrated by the scope of the items and documents actually seized, *see* Doc. 51-3 at 7-38, "the executing officers cannot [have] reasonably presume[d] it to be valid." *Id.*

In addition, as to the second step under *Martin* in determining objective reasonableness, even though the Government has yet to respond to numerous discovery-related requests, materials already provided to Defendants demonstrate significant evidence of bad faith. This belies the Government's ability to meet its burden of proving the applicability of *Leon*'s good faith exception under the totality of circumstances. Consistent with *Martin* and *Accardo*, *supra*, this Court should hold an evidentiary hearing in which the Government is offered the opportunity to submit evidence that its officers' actions were objectively reasonable, and Defendants can offer evidence of officers' actions that rebuts the Government's *Leon* exception claim.

By way of illustration, based on the discovery provided to date, Defendants anticipate being able to prove the following:

1. In his affidavit, Agent Kriplean misled the issuing magistrate as to two material facts. The affidavit represented that nine Hi-Tech products purchased undercover were tested by the FDA's Forensic Chemistry Center, which reported that "the products contained Schedule III anabolic steroids." Doc. 51-2 at 21-24. As set out in the Expert Declaration of Steven J. Bannister, Ph.D., attached to this Reply as EXHIBIT H, his review of the FDA's chemical analysis reveals two significant problems, even before Defendants are able to conduct their independent analysis: [3]

a. First, in conducting the testing requested by Agent Kriplean, for an as-yet-unknown reason, the FDA lab performed only single stage mass spectrometry, as opposed to tandem or double mass spectrometry. As Dr. Bannister states, "the combination of low specificity chromatography and single stage mass spectrometry could mistake a non-controlled substance for a controlled substance." *Id.* at ¶ 20. In other words, the decision to not perform the proper two stage test on the products in question could have misled the issuing magistrate as to the legality of the products.

b. Second, when he transmitted the products to the FDA lab for testing, Agent Kriplean specifically requested that no quantification of the steroids be performed: "Based on this information and communication with SA Brian C. Kriplean on January 18, 2017, no quantification of these steroids was performed." EXHIBIT J at LR-000003 & LR-000005.[4] According to Dr. Bannister, the failure to quantify the amount

---

[3] Dr. Bannister's CV is attached to this Reply as EXHIBIT I.  A copy of the FDA Forensic Chemistry Center report is attached to this Reply as EXHIBIT J.

[4] Notably, this failure to quantify the suspected steroids contrasts with the procedure performed by the Government in a 2013 Hi-Tech case. EXHIBIT H at ¶ 27; *see also* EXHIBIT J at LR-000001.

of suspect steroids was contrary to the purported purpose of the testing, to determine the presence of "active pharmaceutical ingredients." EXHIBIT H at ¶ 24. Without knowing the quantity of a substance in a product, the substance "could be present in the product in only millionths or billionths of a gram, *i.e.*, trace amounts so insignificant that they could not be considered biologically active." *Id.* at ¶ 26. In other words, the specific request by Agent Kriplian not to quantify the substance could likewise have misled the issuing magistrate as to the legality of the products in question.[5]

2.  During the searches pursuant to this search warrant, the Government seized thousands of bottles of eight Hi-Tech products, valued at approximately $2 million. None of these products was listed in the search warrant, the application, or referenced in the indictment in this case. Further, *nine months prior to the search*, the FDA lab had tested three of the eight products and determined they did not contain any Schedule III prohibited substances. Yet, when the officers executed the instant warrant, they nonetheless seized all of these products. *See* Doc. 72 at 3-7.

3. The seizure of the large quantity of attorney-client privileged documents, as discussed *supra* § I-C, is likewise evidence of the officers' objective lack of good faith, as is the Government's failure to propose to the issuing magistrate procedures to protect these materials that the Government had actual knowledge would be found in the search.

4. The inventory of seized items here, Doc. 51-6, utterly fails to comply with Fed. R. Crim. Pro. 41(f)(1) (A) - (B). The single inventory includes items seized pursuant to both this initial warrant and the subsequently authorized

---

[5] Based on the currently available discovery, Defendants are noting facts that may mature into a *Franks v. Delaware*, 438 U.S. 154 (1978), claim upon gaining access to additional evidence that the Government is required to furnish pursuant to Fed. R. Crim. Pro. 16, or as may be uncovered in an evidentiary hearing on this or other motions. Defendants therefore specifically reserve the right to amend this motion should evidence of deliberate misrepresentations or omissions relating to this search warrant be uncovered.

DMAA warrant. *Compare id.* at 1 *with id.* at 25. The inventory obfuscates the time of seizure, adding further complication to what was seized pursuant to each warrant. *See*, *e.g., id.* at 2 (from 7:30 am to 11:30 pm).

5. While prior to the search the investigating agents purchased a total of nine Hi-Tech products and submitted them for testing to determine if they contained illegal substances, the officers thereafter seized millions of dollars of inventory  and hundreds of *other* products that were not set out in the affidavit or specifically authorized by the warrant. *Query*: If the Government was in fact operating in an objectively reasonable fashion in obtaining and executing this search warrant, why did the agents fail to employ the same tactic of buying suspected Hi-Tech products (all easily available online and at numerous retail outlets), having them tested for illegal or misbranded substances, and then presenting that information in their search warrant application?

In short, even at this stage of discovery, there are substantial indications that the Government cannot meet its burden to prove that *Leon*'s good faith exception is applicable to this case. As a consequence, Defendants respectfully submit that this Court should conduct an evidentiary hearing pursuant to *Martin*, 297 F.3d at 1318, and *Accardo*, 749 F.2d at 148, to make this determination.

WHEREFORE, Defendants respectfully pray that this Court enter an Order invalidating the initial search warrant and suppressing the fruits of the searches and seizures conducted pursuant to that warrant. Defendants also request that this Court conduct an evidentiary hearing regarding the seizure of privileged documents, as well as an evidentiary hearing as to the applicability of *Leon*'s good faith exception, and for such other and further relief as this Court may deem just and proper.

This 26th day of January, 2018.

                                 Respectfully submitted,

*/s/ Bruce H. Morris*  
Bruce H. Morris  
Georgia Bar No. 523575  
Finestone Morris & White  
3340 Peachtree Road NW  
Atlanta, Georgia 30326  
404-262-2500  
BMorris@FMattorneys.com  
  *Counsel for Defendant*  
  *Jared Wheat*

*/s/ Arthur W. Leach*  
Arthur W. Leach  
Georgia Bar No. 442025  
The Law Office of Arthur W. Leach  
5780 Windward Parkway, Suite 225  
Alpharetta, Georgia 30005  
404-786-6443  
Art@ArthurWLeach.com  
  *Counsel for Defendant*  
  *Hi-Tech Pharmaceuticals, Inc.*

*/s/ James K. Jenkins*  
James K. Jenkins  
Georgia Bar No. 390650  
Maloy Jenkins Parker  
1506 Brandt Court  
Boulder, Colorado 80303  
303-443-9048  
jenkins@mjplawyers.com  
  *Counsel for Defendant*  
  *Jared Wheat*

 */s/ Jack Wenik*  
Jack Wenik  
Epstein Becker & Green, P.C.  
One Gateway Center, 13th Floor  
Newark, New Jersey 07102  
973-639-5221  
jwenik@ ebglaw.com  
Admitted Pro Hac Vice  
  *Counsel for Defendant*  
  *Hi-Tech Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing "Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc.'s Reply in Support of their Motion to Suppress Evidence Seized Pursuant to the Initial Search Warrants Executed at Hi-Tech's Premises" through this District's ECF system, which will automatically serve all counsel of record.

This 26th day of January 2018.


/s/ Arthur W. Leach
Arthur W. Leach
*Counsel for Defendant*
*Hi-Tech Pharmaceuticals, Inc.*