IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| *v.* | Criminal Action No. |
| JARED WHEAT, | 1:17-CR-0229-AT-CMS |
| JOHN BRANDON SCHOPP, AND | |
| HI-TECH PHARMACEUTICALS, INC. | |

**Government's Reply in Support of Motion To Disqualify Bruce S. Harvey**

The United States of America, by Byung J. Pak, United States Attorney, and Nathan P. Kitchens, Cassandra J. Schansman, and Kelly K. Connors, Assistant United States Attorneys for the Northern District of Georgia, hereby files this reply in support of the motion to disqualify Bruce S. Harvey as counsel for defendant Jared Wheat.

Eleventh Circuit precedent precludes Mr. Harvey from representing Wheat due to an actual conflict of interest arising from his prior representation of C.S., who has been repeatedly identified as a likely government witness and subject of the government's investigation. Mr. Harvey concedes, as he must, that his prior representation of C.S. was "obviously substantially related" to the prosecution of Wheat and that he "received relevant confidential information" through his prior representation, (Doc. 120 at 19), but he contends that this prior representation

poses no conflict to representing Wheat because he has not shared any of C.S.'s confidences with Wheat. (*Id.* at 16, 20). This contention only highlights the very risk of divided loyalties that requires his disqualification: by protecting C.S.'s confidences and upholding his duty of confidentiality to his prior client, Mr. Harvey is withholding relevant information about a government witness from Wheat and thus potentially violating his duty of loyalty to his current client. Binding precedent establishes that divided loyalties arising from the successive representation of a defendant and government witness creates an intractable conflict of interest that requires disqualification, regardless of any waivers. (Doc. 88 at 8, 14–16). Accordingly, Mr. Harvey has an unwaivable conflict of interest that implicates the Court's independent interest in the fair administration of justice, and the motion to disqualify should be granted.

## ARGUMENT

**1. Mr. Harvey's admissions regarding his representation of C.S. establish a conflict of interest from successive representation of Defendant Wheat that requires disqualification under binding precedent and local rules.**

**A. Mr. Harvey concedes that his prior representation of C.S. was "substantially related" to Wheat's prosecution, establishing an actual conflict resulting from C.S.'s role as a government witness.**

Although Mr. Harvey contends that he has neither an actual nor potential conflict of interest arising from his representation of C.S., Mr. Harvey's

concessions about the scope of that prior representation of a government witness establish, on their face, an actual conflict of interest. Mr. Harvey acknowledges that the "matter of C.S.'s representation during the Government's interview is obviously substantially related that of Mr. Wheat." (Doc. 120 at 19). Mr. Harvey further concedes that emails sent to and from C.S. "may be relevant to some of [the government's] claims" against Wheat. (*Id.* at 15). And Mr. Harvey admits that he "received relevant confidential information" in his prior representation of C.S. (*Id.* at 19). In light of C.S.'s status as a likely government witness, these admissions collectively establish a clear conflict of interest under Eleventh Circuit precedent and the Georgia Rules of Professional Responsibility.

The Eleventh Circuit recognizes that "[t]he need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest, such as when he has previously represented a person who will be called as a witness against a current client at a criminal trial." *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994). The inquiry into a disqualifying conflict in such circumstances turns on one issue: whether the prior representation was substantially related to the successive matter. As the Eleventh Circuit noted in *Ross*, the "goal" of "examin[ing] whether the subject matter of the first representation is substantially related to that of the

3

second" is to "discover whether the defense lawyer has divided loyalties that prevent him from effectively representing the defendant." *Id.*; *see also United States v. Henry*, 307 F. App'x 331, 334 (11th Cir. 2009) ("When a witness at trial was defended by an attorney representing the defendant against charges related to an identical crime, the attorney has an 'actual' conflict of interest"); *United States v. McCutcheon*, 86 F.3d 187, 189 (11th Cir. 1996). The existence of "substantially related" subject matters is determinative of a disqualifying conflict because the Eleventh Circuit "irrebutably presume[s]" that counsel possesses "relevant confidential information" arising from the prior representation. *See Henry*, 307 F. App'x at 33. When a defense counsel possesses relevant confidential information concerning a "substantially related" matter, the defense counsel is inevitably placed in an impossible dilemma of choosing between the duty of confidentiality owed to the government witness and the duty of loyalty owed to the defendant. The conflict is even starker here when Mr. Harvey represented a government witness in the *identical* matter, the alleged forgery of certificates and audit reports, for which he is defending Wheat.

The Eleventh Circuit's interpretation of a disqualifying conflict of interest is consistent with the governing Georgia Rules of Professional Conduct. *See* NDGA Local Rule 83.1C. Those rules prohibit a lawyer from representing another client

"in the same or substantially related matter in which that person's interests are materially adverse" and recognize that an unwaivable conflict exists if the representation "[i]ncludes the assertion of a claim by one client against another client represented by the lawyer in the same or substantially related proceeding or [] involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients." Ga. R. Prof'l Conduct 1.7(c)(2)–(3), 1.9(a). While Mr. Harvey repeatedly contends that his prior representation poses no materially adverse effect to Wheat, courts interpreting these rules recognize that the prior representation of a government witness in a substantially related matter creates "at least a serious potential for a conflict of interest, which ethically bar[s] defense counsel from representing [defendant] at the trial." *Edwards v. State*, 784 S.E.2d 924, 929 (Ga. Ct. App. 2016) (affirming disqualification of defense counsel, even after jury was impaneled, when defense counsel knew confidences of government witness from prior representation) (citing Rule 1.7); *see also United States v. Scott*, No. 2:05-CR-01-WCO, 2007 WL 2121644, at *2–3 (N.D. Ga. July 24, 2007) (finding an unwaivable conflict under Rule 1.7(c)(3) based on counsel's prior representation of government witness). A government witness in a criminal prosecution is intrinsically adverse to the defendant, and prior representation of that witness in

a "substantially related" matter creates a disqualifying conflict. *See* Ga. R. Prof'l Conduct 1.7, cmt. 2 ("Loyalty to a client is impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other competing responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client.").

### B. Mr. Harvey's contention that C.S. will not be an adverse government witness is unavailing.

Faced with binding precedent establishing his conflict of interest, Mr. Harvey resorts to misrepresenting the government's position, repeatedly suggesting that the government contends that a conflict arises based solely on C.S.'s status as a subject of the investigation.[1] (Doc. 120 at 4, 10–11). When not ignoring C.S.'s status as a likely government witness, Mr. Harvey does his best to dismiss the possibility that C.S. may testify by contending that the government has not "affirmatively stated on the record that the Government has made any decision to definitely call C.S. as a Government witness." (*Id.* at 11). But the government

---

[1] While the government's argument is based primarily on C.S.'s status as a government witness, C.S.'s status as a subject means that "circumstances could arise where he would be charged." (Doc. 57 at 2). C.S.'s status thus raises the prospect of dual representation if C.S. were charged as an additional defendant, which poses an even "more dangerous conflict." *Scott*, 2007 WL 2121644, at *2.

has told Mr. Harvey and this Court on at least three occasions that it expects to call C.S. as a government witness. (Doc. 57 at 2–3; Doc. 90; Doc. 88 at 1).

Nothing more is required at this point—the mere likelihood that C.S. will be called as a government witness poses an intractable conflict for Mr. Harvey. *See McCutcheon*, 86 F.3d at 189 (affirming disqualification of defense counsel on first day of trial given possibility that former client would testify against defendant, even though former client did not ultimately testify). Although the "likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict," the Supreme Court requires trial courts to assess conflicts in this "murkier pretrial context" and thus recognizes that district courts have "substantial latitude in refusing waivers of conflicts of interest . . . in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat v. United States,* 486 U.S. 153, 162–63, 108 S. Ct. 1692, 1699 (1988). Waiting to see if the likelihood of C.S.'s testimony develops into a certainty closer to trial is not only improper under *Wheat*, but also would risk potential harm to Wheat if Mr. Harvey were disqualified during trial.

At best, Mr. Harvey urges the court not to disqualify him because he personally believes that C.S.'s testimony will not be materially adverse to Wheat. (Doc. 120 at 15–17). But the *Wheat* Court expressed skepticism about a defense

attorney's ability to assess conflicts based on their own beliefs about likely testimony, cautioning that "[i]t is a rare attorney who will be fortunate to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand."[2] 486 U.S. at 163, 108 S. Ct. at 1699.

The record here shows that this skepticism is well-grounded. Although C.S. denied in one proffer session that he prepared GMP certifications or GMP audit reports, the email records referenced in the government's motion tell a different story. (Doc. 88 at 3–4). The emails referenced in the search warrant affidavit for C.S.'s personal email account, as well as other email documents in discovery, establish that Wheat emailed C.S. links to sample GMP certificates in early 2011, and that C.S. later sent Wheat at least one unsigned GMP certificate, which falsely identified G.G. as the General Manager of PharmaTech, as alleged in Para. 11 of the indictment. (Doc. 88 at 3; Doc. 7 ¶ 11). Another email sent by Wheat to

---

[2] Mr. Harvey cites *Ferrell v. Hall*, 640 F.3d 119 (11th Cir. 2011), for the proposition that courts generally defer to the defense counsel's judgment concerning a conflict, (Doc. 120 at 12), but the *Ferrell* Court was merely reviewing the reasonableness of "the trial court's *inquiry* into the conflict" on habeas review, not endorsing a position that trial courts should defer to defense counsel's judgment, which would be contrary to *Wheat*. *Id.* at 1242–43.

C.S. attached a sample GMP audit report with the message "I will be back there in a minute." (Doc. 44, Ex. C ¶ 9). C.S. performed graphic design work for Hi-Tech and would have had no clear role in conducting a GMP audit. (Doc. 88 at 3).

Mr. Harvey does not suggest that these communications with C.S. are anything but inculpatory; he concedes that such emails "may be relevant to some of [the government's] claims" against Wheat. (Doc. 120 at 15). But Mr. Harvey suggests that C.S. only shared confidential information with him that was "exculpatory in nature," consistent with the proffer. (*Id.* at 16, 19). If C.S.'s testimony at trial differs from statements made in his proffer or shared in confidence with Mr. Harvey, however, Mr. Harvey faces the exact peril of divided loyalties that the Eleventh Circuit has found disqualifying: he cannot cross-examine C.S. regarding confidences gleaned from his prior representation, but failing to cross-examine C.S. regarding this information would violate his duty of loyalty to Wheat. *See United States v. Campbell*, 491 F.3d 1306, 1311 (11th Cir. 2007); *Ross*, 33 F.3d at 1523. Mr. Harvey simply cannot establish that C.S.'s interests as a government witness will be aligned with Wheat's interests based on this record and thereby overcome precedent establishing his conflict of interest.[3]

---

[3] Mr. Harvey cites two out-of-district cases, *United States v. Hanania*, 989 F. Supp. 1187 (M.D. Fla. 1997) and *United States v. DeCay*, 406 F. Supp. 2d 679 (E.D.

9

2.  **The Court's independent institutional interests in protecting the fair, ethical administration of justice require the refusal of any waivers and alternatives to disqualification of Mr. Harvey.**

Mr. Harvey contends that even if he has a conflict of interest, the Court should accept his clients' waiver of their right to conflict-free counsel, and any divided loyalties could be cured by having Wheat's co-counsel cross-examine C.S. Both arguments are contrary to binding Eleventh Circuit precedent.

As a preliminary matter, the government has no ability to assess the validity of the *Garcia* waivers in this case.[4] For purposes of this motion, the government

---

La. 2005), for the proposition that disqualification is unnecessary "in cases similar to the one at bar." (Doc. 120 at 17–18). In both cases, however, the district courts found no actual conflict because the testimony of their prior clients incriminated co-defendants, not defense counsel's current clients. *Hanania*, 989 F. Supp. at 1191; *DeCay*, 406 F. Supp. 2d at 686–87. While the *Hanania* Court noted that one aspect of the prior client's testimony could "indirectly implicate" counsel's current client, this part of his testimony was uncontested, but the court was still "concerned about his ability to effectively cross-examine" the prior client. 989 F. Supp. at 1191.

Here, C.S.'s testimony would squarely concern Wheat's conduct alleged in Counts One through Three of the indictment. Mr. Harvey's own cited authority recognizes that an actual conflict issue arises if the prior client's testimony directly concerns a current client's conduct. *See DeCay*, 406 F. Supp. 2d at 686–87 (acknowledging that counsel "would have a problem" if he sought to represent the co-defendant implicated in his prior client's testimony because "their interests would be materially adverse").

[4] The government has a redacted copy of the response brief omitting all quotations to the *Garcia* hearing.

10

will assume that Mr. Harvey's representations about the validity and completeness of those waivers are accurate. (Doc. 120 at 27). But such waivers are without force given the unfairness implicit in Mr. Harvey's intractable conflict.

While Mr. Harvey contends that courts should hesitate to refuse conflict waivers given a defendant's "presumptive right to counsel of choice," (*id.* at 24), disqualification of Mr. Harvey as co-counsel will not deprive Wheat of his first counsel of choice: Bruce Morris. Mr. Harvey does not contest that Mr. Morris's ability to continue his representation as Wheat's first chosen counsel lessens the argument for prejudice resulting from Mr. Harvey's disqualification. (Doc. 88 at 20). Under these unique circumstances, it is questionable whether *any* sixth amendment rights are affected by disqualification of co-counsel. *Henry*, 307 F. App'x at 335 (recognizing that defendant still "was able to receive his choice of representation with respect to one of his attorneys" after disqualification of co-counsel); *see also United States v. Stuckey*, 917 F.2d 1537, 1543 (11th Cir. 1990) (holding that disqualification of co-counsel did not deny sixth amendment rights when original counsel represented defendant at trial).

As Mr. Harvey acknowledges, courts are bound to refuse conflict waivers if necessary to protect their independent interest "in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal

proceedings appear fair." (Doc. 120 at 24). Binding precedent holds that conflict waivers must be refused in similar circumstances in which a conflict arising from the prior representation of a government witness in a substantially related matter strikes at the heart of the court's concern for the ethical administration of justice. *See Wheat*, 486 U.S. at 164, 108 S. Ct. at 1700; *Ross*, 33 F.3d at 1524; *Scott*, 2007 WL 2121644, at *3; *see also Edwards*, 784 S.E.2d at 927 (recognizing that defendant's waiver "does not always cure the problem" because of court's independent interest in protecting ethical standards (citation omitted)).

Mr. Harvey cannot rebut the reasoning in these cases, so he instead attempts to distinguish them on the facts given his "limited and fleeting" representation of C.S. (Doc. 120 at 21–22). But the courts in *Wheat*, *Ross*, and *Scott* nowhere discuss the duration of counsel's prior representation of the witness or otherwise suggest that this is a factor, and there is no basis to compare the prior representation in those cases to the three-month representation of C.S. here. (Doc. 88 at 4). Mr. Harvey cites no authority for his claim that the length of his prior representation eliminates the concern with divided loyalties. To the contrary, the Georgia Rules of Professional Conduct recognize an ongoing duty of confidentiality after the termination of the attorney-client relationship. *See* Ga. R. Prof'l Conduct 1.6(e). Accordingly, counsel owe the same duty of confidentiality to former clients no

matter the length of the initial representation. Mr. Harvey's duties owed to C.S.
are thus lifelong, not "limited and fleeting," and are indistinguishable from the
duties creating unwaivable conflicts in *Wheat*, *Ross*, and *Scott*.[5]

Against this line of binding precedent, Mr. Harvey offers only out-of-district
authorities that fail to consider the issue of the court's independent interest in
ethical standards,[6] with one exception. (Doc. 120 at 25–26). In *United States v.
Wings*, No. 1:05-CR-316-20-BBM, 2007 WL 9676968, at *4–5 (N.D. Ga. Aug. 10,

---

[5] Mr. Harvey also suggests that the cases refusing conflict waivers had "far
more troubling" facts, (Doc. 120 at 28), but he ignores other facts present here
that make his conflict more troubling or that lessen Wheat's sixth amendment
interests in Mr. Harvey's representation. For example, the prior representation in
*McCutcheon* and *United States v. Kight*, No. 1:16-CR-99-WSD, 2017 WL 4619024, at
*13 (N.D. Ga. Oct. 16, 2017), involved separate civil or criminal matters, but Mr.
Harvey represented a government witness in the identical matter here,
heightening the risk of conflict from relevant confidential information. (Doc. 88 at
13). The defense counsel in *Ross*, *Campbell*, and *Scott* never represented the
government witness but instead had conflicts of interest imputed to them
through their law firms. (*Id.* at 13). And the defendants in *Ross* and *Scott* had a
stronger sixth amendment interest in retaining conflicted counsel because they
had no co-counsel, unlike Mr. Morris's availability here.

[6] The courts in *U.S v. Parnell*, No. 1:13-CR-12, 2013 WL 2387714, at *3 (M.D. Ga.
May 30, 2013); *United States v. Casiano*, 929 F.2d 1046, 1053 (5th Cir. 1991); and
*United States v. Anghai*, No. 109CR00037, 2010 WL 11474542, at *1 (N.D. Fla. Nov.
3, 2010) nowhere discuss the court's independent interest and instead merely
found that the conflict waivers met the *Garcia* requirements, an issue that is not
contested here. In *United States v. Martin*, 824 F. Supp. 208, 210 (M.D. Ga. 1993),
the court not only did not address the court's independent interest, but also
made no ruling on disqualification at all pending a *Garcia* hearing.

2007), the district court accepted the conflict waiver because defense counsel had only an imputed conflict when the government witness was represented by counsel's partner; the conflicted counsel was defendant's only lawyer "since before the time he was indicted"; the government delayed seven months before moving for disqualification, by which point conflicted counsel had been preparing a defense for months; and the government witness had a joint defense agreement with the defendant and thus had already shared confidences with the defendant. By contrast, Mr. Harvey personally represented C.S. and received confidential information from him; Wheat retained Mr. Morris before retaining Mr. Harvey weeks later; the government raised the issue of Mr. Harvey's conflict only twenty days after his notice of appearance; and Mr. Harvey represents that he has not shared C.S.'s confidences with Wheat. (Doc. 88 at 4; Doc. 120 at 16, 20). The court's concerns in *Wings* are plainly not present here.

In a final pitch to avoid disqualification, Mr. Harvey contends that Mr. Morris could cross-examine C.S. as "an additional buffer" to cure the conflict issue. (Doc. 120 at 20). Not so. Mr. Harvey does not address the reasoning of courts that rejected this remedy because the conflicted counsel would inevitably be the best source of information in preparing co-counsel for the cross-examination, and the court could not forbid co-counsel from such preparation. *See Campbell*, 491 F.3d at

14

1312 (concluding that the district court's rejection of this remedy on this basis was "well-reasoned"); *Williams*, 81 F.3d 1321, 1325 (4th Cir. 1996). In fact, if Mr. Harvey withheld information from co-counsel and took no role in preparing for C.S.'s cross-examination, he would violate his duty of loyalty owed to Wheat. Instead of contesting *Campbell*'s reasoning for rejecting cross-examination by co-counsel given the inevitability of shared confidences from the conflicted counsel, Mr. Harvey instead attempts to distinguish *Campbell*'s finding of an unwaivable conflict on its facts, which is both flawed and misses the boat. And Mr. Harvey's out-of-district authorities provide no safe harbor.[7]

---

[7] The district court in *United States v. Hawkins*, No. CRIM.A. 04-370-05, 2004 WL 2102017, at *3 (E.D. Pa. Aug. 26, 2004), found no conflict of interest based, in part, on the lack of any assertion that defense counsel's representation violated professional responsibility rules and merely noted that cross-examination by co-counsel was an "additional reason" not to disqualify counsel. In dismissing an interlocutory appeal on a conflict issue, the Second Circuit in *United States v. Camisa*, 969 F.2d 1428, 1429–30 (2d Cir. 1992) passed no judgment on this remedy at all, but instead concluded that it was premature to determine the conflict issue.

## <u>CONCLUSION</u>

For the foregoing reasons and the reasons stated in its initial motion, the United States respectfully requests that the Court disqualify Bruce S. Harvey as counsel for Defendant Wheat.

Respectfully submitted,

BYUNG J. PAK
*United States Attorney*

/s/ NATHAN P. KITCHENS
*Assistant United States Attorney*
Georgia Bar No. 263930
Nathan.Kitchens@usdoj.gov

/s/ CASSANDRA J. SCHANSMAN
*Assistant United States Attorney*
Georgia Bar No. 183184
Cassandra.Schansman@usdoj.gov

/s/ KELLY K. CONNORS
*Assistant United States Attorney*
Georgia Bar No. 504787
Kelly.Connors@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

April 11, 2018

/s/ NATHAN P. KITCHENS

NATHAN P. KITCHENS

*Assistant United States Attorney*