IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>   v.<br><br>JARED WHEAT,<br>JOHN BRANDON SCHOPP, AND<br>HI-TECH PHARMACEUTICALS, INC. | Criminal Action No.<br><br>1:17-CR-0229-AT-CMS |

**United States' Response in Opposition to Motion for Reconsideration of First Report and Recommendation**

The United States of America, by Byung J. Pak, United States Attorney, and Nathan P. Kitchens, Cassandra J. Schansman, and Kelly K. Connors, Assistant United States Attorneys for the Northern District of Georgia, files this response to the motion for reconsideration of the First Report and Recommendation ("R&R") denying Defendant Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech") and Jared Wheat's motion to suppress evidence seized pursuant to search warrants for emails (Doc. 138).

## Argument

1. **Defendants are not entitled to a hearing because they cannot show prejudice from a purposeful intrusion of attorney-client privilege.**

    a. **Hi-Tech cannot establish the need for a hearing based on the government's extensive disclosure of its ongoing filter review.**

Defendants misrepresent both the scope of the government's disclosures about the filter review process and the nature of the filter review itself. Contrary to Defendants' inaccurate descriptions, the government has repeatedly answered their questions about the filter review process, which is still ongoing and is consistent with common practice in federal prosecutions.

On January 26, 2018, the government sent Defendants a three-page letter providing extensive details about the filter review for privileged materials. (Doc. 138-1). This letter described a two-stage process for the filter review: an initial filter review when the investigation was covert in 2013 and 2014, and a more extensive filter review following indictment. In the first stage, the letter noted that the government sealed the prosecution team from access to the AOL production for Jared Wheat's account pursuant to the 2013 search warrant. The government compiled "an initial list of attorneys then known to be associated with the targets of the investigation," (*id.* at 2), and provided the list to Madison Associates ("Madison"), a law enforcement consulting firm comprised primarily of former federal law enforcement agents. *See* Who is Madison Associates?, https://www.maiassistance.com/about.aspx. During its filter review, Madison identified additional attorneys and law firms, resulting in a final list of more than forty privilege keyword search terms that were used to segregate potentially privileged documents. (Doc. 138-1 at 2–3). The letter listed each keyword and specified that the filter process was conducted on "AOL data," (*id.*), contrary to Defendants' claim that the government only "acknowledged" this fact later. (Doc. 138 at 4).

Defendants barely address the more extensive process still underway in the second stage of the filter review. The January 26th letter stated that after Hi-Tech provided a "list of attorney and law firm names to utilize for the filter review process" on November 10, 2017, an additional filter process commenced with review by a filter AUSA and paralegal, who are "not otherwise involved in this case." (Doc. 138-1 at 4). Based on Defendants' list, the filter AUSA has been conducting a second-level review of both the email data stored in the document management database following Madison's review and materials seized during the search warrants executed on October 4, 2017, which have not been made available to the prosecution team. (*Id.*)

For more than a month after the government's detailed explanation, Defendants raised no questions and no objections; their only response was to supplement their attorney list with an additional 32 names on February 28, 2018, bringing the attorney list to nearly 120 terms. *See* Email Chain from Elizabeth O'Brien, Mar. 2, 2018 (Attached as Exhibit 1). When the government inquired why these 32 names were omitted from the privilege list provided by Hi-Tech four months earlier, Hi-Tech explained the difficulty in identifying the "large number of lawyers who act or have acted as local counsel in cases . . . even though years may have passed since they last represented Hi-Tech" and additional attorneys who Wheat "occasionally" consults "even though [they] are not actively representing Hi-Tech." (*Id.*)

In this March 2nd email, Hi-Tech also requested additional information about the filter process. (*Id.*). In response, the government agreed both to use

3

Hi-Tech's belated supplemental attorney list in its filter review and to produce the subset of AOL documents provided to FDA Special Agent Brian Kriplean in January 2014 ("the Madison subset"). *See* Email from Nathan Kitchens, Mar. 5, 2018 (attached as Exhibit 2). The government also explained that Madison ran keyword searches to help identify relevant material in the AOL production pursuant to the two-step process outlined in the search warrant, and that this filtering for relevance would also be apparent in the Madison subset. (*Id.*) On March 8, 2018, the government produced the Madison subset and noted again that it was provided to Agent Kriplean. *See* Letter from Nathan Kitchens, Mar. 3, 2018 (attached as Exhibit 3).

In late March, Hi-Tech requested clarification regarding the Madison subset, and the government explained again that the Madison subset provided to Agent Kriplean in 2014 were the "only AOL documents that have been reviewed to date by any member of the prosecution team." Email from Nathan Kitchens, Mar. 27, 2018 (attached as Exhibit 4). In response to Hi-Tech's question whether a privilege filter was conducted for the Yahoo documents, the government stated that there "was no third-party filter of the Yahoo documents when they were received in 2014 because there was no expectation that the account would contain privileged materials," but the second-level privilege filter review of the Yahoo and AOL documents was ongoing based on Hi-Tech's attorney list. (*Id.*) Furthermore, the government stated that Agent Kriplean reviewed the Yahoo production for relevance pursuant to the two-step process, but it did not know if he reviewed the entire

4

Yahoo production. Following this response, Defendants raised no questions and requested no additional information from the government about the filter process before filing this motion more than a month later. (Doc. 138).

Based on this record, Defendants cannot plausibly claim that the government's disclosures "raised more questions than answers"—if so, Defendants failed to share any unresolved questions with the government prior to filing its motion for a hearing. (Doc. 138 at 2). Hi-Tech identifies no issues requiring an evidentiary hearing that have not been fully addressed in the parties' prior communications, nor have they sought to confer to resolve any unexpressed concerns about the filter process.

### b. The government's filter process was consistent with common practice and establishes no deliberate intrusion of privilege.

This Court has approved the government's use of a filter team for privilege "via erection of a 'Chinese wall,' [that] sealed the prosecution team . . . from access to information gained through the [search]." *United States v. Moody*, 762 F. Supp. 1491, 1499 (N.D. Ga. 1991). In *United States v. Kallen-Zury*, 710 F. App'x 365, 373–74 (11th Cir. 2017), the defendant requested a post-trial evidentiary hearing to determine whether the government improperly accessed privileged material obtained from the defendant's AOL account pursuant to a search warrant. The Eleventh Circuit denied the request for a hearing despite the existence of privileged material in the prosecutor's files, concluding that the defendant's allegation that government accessed privileged communications before trial was "wholly speculative" when the

5

government used a filter team to segregate potentially privileged emails obtained from the AOL search warrant. *Id.* at 374. This authority is consistent with the majority of jurisdictions that support the use of filter teams to screen privileged material. *See, e.g., United States v. Ary*, 518 F.3d 775, 780 (10th Cir. 2008) (affirming conviction where filter team reviewed computer files and privileged filed were not given to the prosecution team*); United States v. Patel*, No. 16 Cr. 798 (KBF), 2017 WL 3394607, at *7 (S.D.N.Y. Aug. 8, 2017) (noting government use of filter review team as evidence of good faith); *United States v. Chaiban*, No. 2:06-cr-00091-RLH-PAL, 2007 WL 437704, at *25, 30, 31 (D. Nev. Feb. 2, 2007) (approving use of filter team to review jailhouse phone calls between defendant and attorney); *Hicks v. Bush*, 452 F. Supp. 2d 88, 102–03 (D.D.C. 2006) (condoning use of filter team to review potentially privileged items previously seized, despite recognition that filter team "will not be able to recognize privileged . . . materials with complete accuracy"); *United States v. Gawrysiak*, 972 F. Supp. 853, 864-65 (D.N.J. 1997) (approving use of filter team during search). *But see In re Grand Jury Subpoenas*, 454 F.3d 511, 522–23 (6th Cir. 2006) (appointing special master for privilege review of documents requested by subpoena because documents were not already in government's control).[1] Numerous prosecutions in this district employ a privilege filter team, and this common procedure has sufficiently safeguarded privilege here.

---

[1] The other cases cited by Defendant for expressing "skepticism as to whether a taint team is adequate," (Doc. 138 at 7), rejected defense challenges to the use of a filter team. *See United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027, 1039 (D. Nev. 2006) (denying request for evidentiary hearing into intrusion of

Defendants suggest that Madison's filter review was not a "real taint team" because it was not comprised of attorneys and, even more implausibly, violated federal law, but Defendants cite no authority supporting either proposition.[2] (Doc. 138 at 5, 13–14). A case cited in Defendant's motion, *United States v. Noriega*, 764 F. Supp. 1480, 1489 (S.D. Fla. 1991), condoned the use of a filter team consisting of DEA agents and "outside screeners." Although some of the defendant's privileged communications were provided to the prosecutor in *Noriega*, the court concluded that the government's receipt of privileged material was not intentional in light of the "positive steps" taken to segregate potentially privileged conversations with an agent-led filter team. *Id.* The same is true with Madison's review. In any event, the government's ongoing filter review for AOL and Yahoo documents is led by a filter attorney, resolving Defendants' concern.

---

attorney-client privilege absent determination that prosecution team used privileged materials; finding no requirement for filter team to review all records for privilege whenever government "seizes voluminous business records," unlike searches of law office that making it "incumbent on the Government to have a taint team review of all records"); *United States v. Neill*, 952 F. Supp. 834, 841–42 (D.D.C. 1997) (rejecting motion to dismiss for intrusion of attorney-client privilege when government "taint team took sufficient precautions to ensure that the prosecution team did not have access to the potentially privileged materials," even when potentially privileged materials were later discovered by case agent).

[2] Defendants cite *In the Matter of the Search of 544 Westheimer Road*, 2006 WL 1881370, at *2 (S.D. Tex. July 6, 2006) and *United States v. Sutton*, 2009 WL 481411, at *9 (M.D. Ga. Feb. 25, 2009) as cases providing the "minimum requirements" for a filter team, but both cases simply upheld the use of filter teams and made no suggestion that the exact procedures employed were mandatory in all cases.

The *Noriega* Court's approval of "outside screeners" for the filter review only underscores the absurdity of Defendants' argument that Madison's involvement violated 18 U.S.C. § 3105. Agent Kriplean served the AOL search warrant; accordingly, he complied with the plain language of Section 3105 limiting service of warrants by "officers authorized by law." Defendants cite no authority supporting their argument that Section 3105 governs the subsequent review of documents obtained from a validly served warrant. If Defendants' argument were valid, the mere retention of a document vendor to process a search warrant production would violate federal law.

    **c. Even if Madison's review failed to identify all privileged material, Defendants cannot establish a basis for suppression of the search warrants absent proof of deliberate intrusion and prejudice.**

Even assuming that Defendants could establish that privileged material slipped through Madison's filter review, Defendants neglect to mention a salient fact: all attorneys on the prosecution team have been screened from reviewing the AOL and Yahoo productions pending the completion of the filter review. (Doc. 138-1 at 3). As noted in the government's disclosures, the Madison subset, which contains the purportedly privileged documents challenged in Defendants' motion, was provided only to Agent Kriplean, not an attorney on the prosecution team. Defendants cannot establish any purposeful intrusion of attorney-client privilege when none of the roughly 300 potentially privileged documents have been reviewed by, or made available to, the prosecutors.

Based on the ongoing filter wall, there is a simple solution to Defendants' claim of privilege: Defendants should submit all 321 documents to the filter AUSA for review. If the filter AUSA agrees with the privilege designation, the documents will never be made available to the prosecutors. If the filter AUSA disagrees, the filter AUSA will attempt to resolve the disagreement with Defendants and, if the parties are unable to resolve it, raise the matter with the Court for final determination. This process would ensure that the prosecutors review no privileged communications in the AOL and Yahoo productions.

Because the prosecutors have not seen any of the challenged documents, Defendants can only assert, at most, that Agent Kriplean may have been exposed to potentially privileged documents.[3] But Defendants cannot establish that Agent Kriplean deliberately viewed privileged material in light of the safeguards put in place by the government, including the retention of an outside consulting firm comprised of former law enforcement agents to conduct a privilege screen, the compilation of an attorney list based on representations known to the government, and Madison's segregation of additional materials based on its

---

[3] The potentially privileged documents attached to the motion were provided only to the filter AUSA, who will address the privilege issue in a separate filing under seal. For purposes of this response, the government will assume that Defendants have met their burden to establish the documents are privileged.

discovery of attorneys revealed in its review. (Doc. 138-1 at 2). Defendants also cannot establish that the government reasonably should have anticipated any potentially privileged documents in the Yahoo production when C.S.'s role as a graphic designer at Hi-Tech made it unlikely that corporate superiors would direct him to speak with counsel to secure legal advice. *See United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319, 1329 (N.D. Ga. 2015) (noting that privilege attaches when "primary purpose" of communication was to seek legal advice, such as when employees are directed to speak with counsel in order for a company to secure legal advice). Defense counsel's difficulty in identifying attorneys who advised Hi-Tech, which required them to supplement the attorney list after four months of review and inquiry of their own client, highlights the challenge and underscores the lack of any intent to invade privilege. (Exhibit 1). "Even the most cautious of Filter Team attorneys is likely to make mistakes when faced with documents bearing no indicia of privilege," but such mistakes are insufficient to invalidate the filter process. *Hicks*, 452 F. Supp. 2d at 103.

Moreover, to establish a constitutional violation, a "showing of 'demonstrable prejudice, or substantial threat thereof,' must be made, even in cases where the violation is a deliberate intrusion." *United States v. DeLuca*, 663 F. App'x 875, 878 (11th Cir. 2016) (quoting *United States v. Morrison*, 449 U.S. 361, 365, 101 S. Ct. 665,

10

668 (1981)). Defendants do not assert, must less establish, prejudice arising from Agent Kriplean's possible exposure to potentially privileged material. "The general remedy for violation of the attorney-client privilege is to suppress introduction of the privileged information at trial," not total suppression of all evidence received from a search warrant of corporate records. *SDI Future Health*, 464 F. Supp. 2d at 1047; *see also United States v. Sutton*, No. 5:08-CR-40, 2009 WL 481411, at *9 n.3 (M.D. Ga. Feb. 25, 2009) ("[T]o whatever degree the search may have violated [the attorney-client] privilege, total suppression would not be the appropriate remedy."). Defendants cite no authority to the contrary. By submitting the potentially privileged documents to the filter AUSA, Defendants will receive the proper remedy if any privileged materials were seized: suppression of that privileged material. Accordingly, their motion for a hearing and reconsideration should be denied.

2. **Defendants are not entitled to a hearing or reconsideration because they cannot show flagrant disregard of the email search warrants.**

Defendants contend that the government employed a flawed "two-step" procedure for the AOL and Yahoo warrants that resulted in an overbroad seizure, but Defendants ignore the governing legal standard for overbreadth claims and misapprehend the operation of the two-step process.

11

Under Eleventh Circuit law, "absent a 'flagrant disregard' of the terms of the warrant, the seizure of items outside the scope of a warrant will not affect admissibility of items properly seized." *United States v. Wuagneux,* 683 F.2d 1343, 1354 (11th Cir. 1982) (citations omitted). "Total suppression of all items seized, including items within a warrant's scope, is not appropriate unless the executing officers' conduct 'exceeded any reasonable interpretation of the warrant's provisions.'" *United States v. Khanani*, 502 F.3d 1281, 1289 (11th Cir. 2007) (quoting *Wuagneux,* 683 F.2d at 1354). Absent the "extraordinary" circumstances required to show flagrant disregard, the proper remedy for an overbroad seizure is the suppression of "only seized items that are outside the warrant's terms." *United States v. Maali*, 346 F. Supp. 2d 1226, 1250–51 (M.D. Fla. 2004) (citing *United States v. Schandl*, 947 F.2d 462, 465 (11th Cir. 1991)).

Defendants fail to cite the appropriate legal standard for good reason: the Eleventh Circuit has never found "flagrant disregard" of a warrant, and Madison's efforts to use keyword searches to filter material outside the scope of the warrant prior to production to Agent Kriplean plainly rebut any showing of flagrant disregard here. *See, e.g.*, *Schandl*, 947 F.2d at 465 (denying flagrant disregard, even though agents read defendant's love letters and seized documents about son's rhinoplasty in tax evasion case); *United States v.*

*Santarelli*, 778 F.2d 609, 615–16 (11th Cir. 1985) (affirming finding of no flagrant disregard, even when agents seized children's report cards). Courts have recognized that in complex fraud cases like this, it is "inevitable that some irrelevant materials would be seized as agents search[] through numerous documents for evidence." *Schandl*, 947 F.2d at 465; *see also United States v. Chan*, No. 1:14-CR-203-ODE-AJB, 2016 WL 627350, at *3 (N.D. Ga. Feb. 16, 2016) (denying flagrant disregard in misbranding and adulterated food investigation); *Maali*, 346 F. Supp. 2d at 1253. This is particularly true in searches of electronic data, where "it has been recognized that seizure of superfluous computer files is virtually inevitable." *Maali*, 346 F. Supp. 2d at 1265; *see also United States v. Lee*, 1:14-CR-227-TCB, 2015 WL 5667102, at *10 n.11 (N.D. Ga. Sept. 25, 2015). Accordingly, the mere fact that some documents were seized outside the scope of the warrant is insufficient to justify total suppression or a hearing. *See United States v. Nsoedo*, No. 1:08-CR-0351-JEC-JFK, 2009 WL 10669746, at *31 (N.D. Ga. July 31, 2009) (denying claim of flagrant disregard without an evidentiary hearing, even though some items seized "appear to fall outside the scope of the authorized search").

The safeguards employed in the two-step process for the AOL and Yahoo data rebut any claim of flagrant disregard. Defendants do not contest the use

13

of a two-step process but instead claim that the government's implementation was flawed because of purportedly overbroad keyword searches for the AOL data and the lack of keyword searches for the Yahoo data. (Doc. 138 at 9–11). The use of keywords to narrow the scope of AOL data and identify relevant documents, by its own terms, rebuts any suggestion of flagrant disregard. *See Khanani*, 502 F.3d at 1290–91 (affirming finding of no flagrant disregard, even when government agents could not recall what keyword searches were conducted). Here, Defendants' eight challenged terms are related either to supplements subject to FDA rules and regulatory actions, which could reveal "representations concerning Hi-Tech's compliance with FDA rules and regulations," as authorized by the warrant; or to importation of ingredients, which could reveal "representations regarding audit reports, certifications (including GMP certifications)," as authorized by the warrant. (Doc. 44-2).

Defendants' arguments against the Yahoo search fare no better. Although Defendants cite *Lee* for the proposition that the government failed to employ any two-step procedure with the Yahoo data, the *Lee* Court upheld a nearly identical two-step process in which the case agent could not recall using keyword searches and instead "went through the e-mails" to determine relevancy. *Id.* at *6. Defendants cite no authority requiring the use of keyword

14

searches for the two-step process. Moreover, the *Lee* Court found no disregard of the warrant when the government maintained the defendant's full email account for more than three years, noting that the warrant imposed no time limit for completion of the search and that the government thus reasonably could "retain[] that information during the pendency of this case." *Id.* at *4.[4]

Accordingly, Defendants have proffered no evidence supporting flagrant disregard of the warrants sufficient to justify an evidentiary hearing. And even if Defendants could establish a violation of the two-step process, the *Leon* good faith exception applies in light of the *Lee* Court's acceptance of nearly the identical two-step protocol that was used with the Yahoo data.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny Defendants' motion for reconsideration and an evidentiary hearing.

                                        Respectfully submitted,

                                                                         BYUNG J. PAK
                                                                     *United States Attorney*

                                        /s/NATHAN P. KITCHENS

---

[4] Although a different jurisdiction reached a contrary conclusion in *United States v. Roper*, 201 WL 1465765, at *6 (S.D. Ga. Mar. 1, 2008), the *Roper* Court found no flagrant disregard of the warrant and denied the motion to suppress.

15

    *Assistant United States Attorney*
  Georgia Bar No. 263930
  Nathan.Kitchens@usdoj.gov


/s/ CASSANDRA J. SCHANSMAN
    *Assistant United States Attorney*
  Georgia Bar No. 183184
  Cassandra.Schansman@usdoj.gov


/s/ KELLY K. CONNORS
    *Assistant United States Attorney*
  Georgia Bar No. 504787
  Kelly.Connors@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

May 25, 2018

/s/ NATHAN P. KITCHENS

NATHAN P. KITCHENS

*Assistant United States Attorney*