IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) |
| v. | ) No. 1:17-CR-0229-AT-CMS<br>) |
| JARED WHEAT, JOHN BRANDON SCHOPP, and HI-TECH PHARMACEUTICALS, INC. | )<br>)<br>)<br>) |

**JARED WHEAT AND HI-TECH PHARMACEUTICALS, INC.'S
MOTION TO DISMISS COUNTS TWELVE THROUGH
EIGHTEEN OF THE INDICTMENT**

COME NOW, Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), by and through their undersigned counsel, and pursuant to Fed. R. Crim. P. 12(b)(1), file this motion to dismiss Counts Twelve through Fifteen of the Indictment.

**Introduction**

The Government has a problem. It is beyond dispute that neither the Controlled Substances Act ("CSA") nor the Food Drug & Cosmetic Act ("FDCA") are intended to criminalize the possession, distribution, or failure to disclose the presence of trace, non-biologically active quantities of controlled substances in otherwise lawful products. (Doc. 169 at 14–15.) Yet the Government here is so

17072783v6

convinced that Hi-Tech was unlawfully selling controlled substances that it built its case – and its search of Hi-Tech's offices (Doc. 51-2 at ¶¶ 20–25) – on the allegation that Hi-Tech's products contain anabolic steroids. *See* Defendants' simultaneously filed Motion for *Franks* hearing. This is true even though (as Hi-Tech has explained previously) any anabolic steroids allegedly in Hi-Tech's products were in such infinitesimal quantities that the Government's own lab had to test the products *multiple times* using increasingly sensitive testing methods to identify *any* quantities. Doc. 169 at 3–5.[1]

The Government's indictment, however, fails to mention this critical fact, and Counts Twelve through Eighteen of the indictment should be dismissed. The Government has not alleged – because it cannot allege – that Hi-Tech possessed, distributed, or failed to disclose a *criminal* quantity of any anabolic steroid. Indeed, the Government's indictment – much like its search warrant – is conspicuously silent as to what quantity of anabolic steroids Defendants are alleged to have unlawfully distributed. And, as a result, the Government has not – because it cannot – allege that Hi-Tech violated the CSA (Counts Twelve through Fifteen) or the FDCA (Counts Sixteen through Eighteen) and those counts should be dismissed. In the

---

[1] To be clear, Defendants are not conceding that the Government's lab results are accurate or that any anabolic steroids – even in trace quantities – are present in Hi-Tech's products.

2

17072783v6

alternative, if this Court does not dismiss those counts outright, Defendants believe that it is plain that the fact that only trace quantities of the allegedly unlawful substances were found in the Hi-Tech products was not revealed to the grand jury, and Defendants should therefore have access to the grand jury testimony so that they may ascertain whether there is a defect in the grand jury proceeding that would warrant dismissal.

## Argument and Citations to Authorities

### I. The Government's Indictment is Founded on a False Premise That Trace, Non-Biologically Active Quantities of Anabolic Steroids Are Illegal.

Under Fed. R. Crim. P. 12(b), charges in an indictment may be dismissed where there is an infirmity of law in the prosecution. *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987); *United States v. Korn*, 557 F.2d 1089, 1090–91 (5th Cir. 1977); *see United States v. Cadillac Overall Supply Co.,* 568 F.2d 1078, 1082 (5th Cir. 1978). When (as here) the Government cannot allege facts sufficient to establish that a crime has occurred, the charge should be dismissed. *See Torkington*, 812 F.2d at 1354.

Counts Twelve through Fifteen of the indictment allege violations of the CSA associated with Hi-Tech's sale of five "prohormone" products that allegedly contain illegal anabolic steroids. Doc. 7. Counts Sixteen through Eighteen of the Government's indictment similarly allege violations of the FDCA associated with

3

selling these five allegedly "misbranded" dietary supplements – since the labels of these products did not disclose the presence of anabolic steroids. *Id.*

The Government's indictment, however, fails to state what quantity of Hi-Tech's products allegedly contain unlawful anabolic steroids. In *Alleyne v. United States*, drug quantities under the § 841(b)(1)(A) and (b)(1)(B) of the CSA "are elements of the offense" and "must be *charged in the indictment* and submitted to the jury." *United States v. Curbelo*, 726 F.3d 1260, 1269 (11th Cir. 2013) (discussing *Alleyne*, 570 U.S. 99, 103 (2013)) (emphasis added); *see United States v. Flores-Villareal*, No. 4:15-cr-883-TUC-JAS, 2016 WL 232428 (D. Ariz. Jan. 20, 2016) (dismissing an indictment that did not specify drug type or quantity). [2]

---

[2] The Government may rely on *United States v. Sanchez*, 269 F.3d 1250, 1275 (11th Cir. 2001) (en banc), *abrogated on other grounds by United States v. Duncan*, 400 F.3d 1297, 1308 (11th Cir. 2005), to argue that an indictment charging a § 841 violation properly charges a complete federal crime without reference to either drug type or quantity. The distinction between *Sanchez* and the facts in the instant case is obvious. For the purpose of this motion, Defendants do not dispute the trace quantities of the substances identified in the Government FDA-FCC lab testing results. However, that fact alone distinguishes this case from *Sanchez* because *Sanchez* relied on the assumption that a § 841 charge necessarily implies a criminal amount of a controlled substance—an assumption that cannot be made here. *Cf. Sanchez,* 269 F.3d at 1264 (a drug quantity of some amount is implicit in a guilty plea or a jury verdict of guilty). Here, the trace amounts involved are legally insufficient to allege a violation, and since the quantity of substances alleged in Counts Twelve through Eighteen are legally insufficient, those counts should be dismissed.

17072783v6

While the Government is proceeding under a different provision of the CSA and is asserting claims under the FDCA, the Government's indictment nonetheless suffers from a similar defect. The Government's indictment fails to provide Hi-Tech any indication as to *what quantity* of the allegedly unlawful products Hi-Tech sold or possessed. The reason for this conspicuous omission is straightforward: None of Hi-Tech's products contains an unlawful quantity of anabolic steroids. As a result, the Government has not—and cannot—allege a violation of either the CSA or the FDCA.

As Defendants have explained previously, *see* Doc. 169 and *Franks* motion filed on September 28, 2018, although the FDA is orchestrating this action against Defendants, the FDA has repeatedly recognized that "it is not possible to produce food or food ingredients that are entirely free from contamination by foreign substances or impurities." *Poisonous or Deleterious Substances*, 42 Fed. Reg. 190 (Sept. 30, 1977). "Whether an article in interstate commerce is a food or a drug, the court is well aware that no named substance, whatever it may be, can be 'absolutely pure.'" *United States v. Articles . . . Provimi*, 425 F. Supp. 228, 229 (D.N.J. 1977). Thus, the long-recognized *de minimis* doctrine in food and drug law militates against

unjustifiably harsh consequences of an overly literal interpretation of FDA regulations.[3]

For the same reason, despite the Government's position to the contrary, it is not unlawful to possess or distribute trace, non-biologically active quantities of controlled substances under the CSA. In *United States v. Chin Chong*, 990 F. Supp. 2d 320, 322–23 (E.D.N.Y. 2014), for example, the Government took the same position that it has recently advocated here – that "the knowing importation of a single molecule of a controlled substance constitutes a felony offense." And much like the Government has argued here, the Government in *Chin Chong* "emphasiz[ed] that the plain language of [the controlled substances import/export statute] contains no minimum-quantity requirement." *Id*. at 322.

---

[3] *See 338 Cartons, More or Less, of Butter v. United States*, 165 F.2d 728, 731 (4th Cir. 1947) ("The courts have recognized that adulteration of foodstuffs may be so slight as to come under the maxim *de minimis non curat lex*."); *United States v. Undetermined Quantities of Various Articles . . . of Proplast II or Proplast HA*, 800 F. Supp. 499, 503 (S.D. Tex. 1992); *United States v. 900 Cases Peaches*, 390 F. Supp. 1006, 1010 (E.D.N.Y. 1975) (stating that strict enforcement "would set a standard which 'would ban all processed food from interstate commerce'"); *Adver. to Women, Inc. v. Gianni Versace S.p.A.*, No. 98 C 1553, 2000 WL 1230461, at *5 (N.D. Ill. Aug. 24, 2000) (declining to cancel a trademark registration where the alleged misbranding was not material and did not raise "serious consumer protection concerns"); *Gibbs Patrick Farms, Inc. v. Syngenta Seeds, Inc*., No. 7:06-cv-48(HL), 2008 WL 822522, at *18 (M.D. Ga. Mar. 26, 2008) ("A basic concept of toxicology [] is that individuals can be safely exposed to toxic substances up to a threshold level.").

17072783v6

Not surprisingly, that absurd position failed. Much like this Court did in a recent hearing, the court in *Chin Chong* explained that an infinitesimally detectable amount does not justify criminal prosecution:

> Credible studies indicate that as much as 90% of the paper currency in the United States is contaminated with a "detectable amount" of cocaine. These studies are known not just to the courts, law enforcement, and forensic chemists, but to members of the general public. Would a knowledgeable judge with a contaminated $10 bill carried in his wallet on return to the United States from a judicial conference in London be committing a serious drug crime? The government's wooden interpretation of [the controlled substances import/export statute] would dictate that any individual who enters the United States with a modest amount of United States currency has committed a felony drug offense, assuming the traveler is familiar with the contents of her wallet and these well-known facts on contamination referred to above.

*Id.* at 322–23 (internal citations omitted).

Here, the Government has not provided – because it cannot provide – this Court or the Defendants with any information as to the quantities of the allegedly illegal "drugs" that the Defendants are charged with selling. The reason for that is simple: Hi-Tech has not sold unlawful quantities of any illegal anabolic steroids. Both the Government's FDCA counts and the CSA counts should therefore be dismissed.

## II. Alternatively, This Court Should Order the Disclosure of the Grand Jury Transcript to Allow Defendants to Understand What Evidence of Drug Quantity Was Presented to the Grand Jury to Obtain the Indictment.

A district court retains "substantial discretion" to order the release of grand jury materials. *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 224 (1979); *United States v. Aisenberg*, 358 F.3d 1327, 1349 (11th Cir. 2004). Disclosure of grand jury proceedings is proper "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). A party seeking disclosure must show: (1) the material sought "is needed to avoid a possible injustice in another judicial proceeding"; (2) "the need for disclosure is greater than the need for continued secrecy"; and (3) the "request is structured to cover only the material so needed." *Douglas Oil Co.*, 441 U.S. at 222. To show the need for disclosure outweighs the need for secrecy, a defendant must establish "a compelling and particularized need for disclosure." *Aisenberg*, 358 F.3d at 1348.

Should this Court not dismiss the counts outright, Defendants request, in the alternative, that the Court order the release of the grand jury materials and transcripts relating specifically to the FDA Forensic Chemistry Center's ("FDA-FCC") testing of the Hi-Tech products listed in the indictment and the identification of any drugs in Hi-Tech's products. The material is sought to avoid an injustice in this case –

17072783v6

specifically, it is becoming increasingly clear that the Government must have obtained the indictment by covering up the fact that Hi-Tech's products contain only legal, trace amounts of controlled substances. Indeed, as explained in the contemporaneously filed motion for a *Franks* hearing, the lab testing showed that a major ingredient of the Hi-Tech products was DHEA, a legal substance, while the alleged illegal anabolic steroids were present in trace amounts. *See* Doc. 169-1 at ¶ 19.

Knowing that the amounts in the products were so low that they would not be "biologically active" upon oral administration and knowing that such a *de minimis* amount is not a crime, the Government avoided making pre-indictment quantification testing that would have provided clear confirmation of the negligible amounts of alleged controlled substances. *Id.* at 5–6. No reasonable grand jury would have returned with an indictment if confronted with this information. Indeed, given that there is no biological effect of the steroids in the products, there is no plausible reason for Defendants to have intended to include these substances in their supplements – nullifying any criminal intent. Yet the grand jury nonetheless returned the indictment charging Defendants. The only reasonable conclusion is that the grand jury was not given all of the relevant facts – including, most obviously, the fact that the FDA's own lab results indicate that any steroids are in infinitesimal

9

quantities and that the FDA was nonetheless directed by SA Kriplean to not obtain any specific quantification data prior to bringing these charges. Defendants should know what the grand jury was told on this critical issue.

Moreover, the need for disclosure here is significantly greater than the need for secrecy. Defendants have two particularized and compelling needs. First, Defendants require disclosure to impeach any witness that later testifies to finding a criminal amount of a controlled substance in the products at issue – a finding that is necessarily required for the Government to prove its case on Counts Twelve through Eighteen. Precedent is clear that a particularized need arises where a defendant seeks to use grand jury materials "to impeach a witness, to refresh his recollection, to test his credibility and the like." *Douglas Oil Co.*, 441 U.S. at 222 n.12; *United States v. Jones*, No. 1:05-cr-617-WSD, 2007 WL 2301420, at *16 (N.D. Ga. July 18, 2007).

Second, Defendants have a particularized need in exposing prosecutorial misconduct. "[A] strong interest in any bad faith prosecution being fully exposed" justifies disclosure of grand jury materials. *Aisenberg*, 358 F.3d at 1352. Here, had the Government fully disclosed that it declined to perform a quantification test, which would have established the negligible quantities of the alleged controlled substance, no reasonable grand jury would have come back with an indictment. If this fact was not revealed, it demonstrates bad faith on behalf of the Government.

10

And, in contrast to the party seeking grand jury material in *Aisenberg*, Defendants do not already have evidence exposing the Government's misconduct. *Id.* at 1352. In fact, Defendants lack complete laboratory documentation for all the products identified in the indictment. Doc. 169 at 3–4.[4] This interest and the interest in impeachment significantly outweigh any interest in secrecy, because they could and likely would lead to the proper dismissal of these counts while saving significant judicial resources.

Finally, this Court can narrowly tailor the disclosure to only those materials and transcripts pertaining to the FDA FCC's laboratory testing and the alleged quantities of the steroids in Hi-Tech's products. As a result, any intrusion into the secrecy of the proceedings can, in significant part, be mitigated.

WHEREFORE, Defendants respectfully pray that this Court issue an Order dismissing Counts Twelve through Eighteen of the indictment or, in the alternative, an Order providing access to the grand jury materials set out above, and for such other and further relief as this Court may deem just and proper.

---

[4] After a follow-up request to Defendants' December 11, 2017 original request for lab documents, the Government made available over 600 pages of additional lab documents days before Defendants' pretrial motions were due. While the requested lab documents may be included in this recent production, Defendants have not had sufficient time to review the documents or consult with their expert witness concerning them.

11

17072783v6

This 28th day of September 2018.

Respectfully submitted,

/s/ *Bruce H. Morris*
Bruce H. Morris
Georgia Bar No. 523575
Finestone Morris & White
3340 Peachtree Road NW
Atlanta, Georgia 30326
404-262-2500
BMorris@FMattorneys.com
*Counsel for Defendant*
*Jared Wheat*

/s/ *Arthur W. Leach*
Arthur W. Leach
Georgia Bar No. 442025
The Law Office of Arthur W. Leach
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
404-786-6443
Art@ArthurWLeach.com
*Counsel for Defendant*
*Hi-Tech Pharmaceuticals, Inc.*

/s/ *James K. Jenkins*
James K. Jenkins
Georgia Bar No. 390650
Maloy Jenkins Parker
1506 Brandt Court
Boulder, Colorado 80303
303-443-9048
jenkins@mjplawyers.com
*Counsel for Defendant*
*Jared Wheat*

/s/ *Jack Wenik*
Jack Wenik
Epstein Becker & Green, P.C.
One Gateway Center, 13th Floor
Newark, New Jersey 07102
973-639-5221
jwenik@ebglaw.com
Admitted Pro Hac Vice
*Counsel for Defendant*
*Hi-Tech Pharmaceuticals, Inc.*

12

17072783v6

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing "Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc.'s Motion to Dismiss Counts Twelve through Fifteen and Memorandum of Law in Support" through this District's ECF system, which will automatically serve all counsel of record.

This 28th day of September 2018.

/s/ *Arthur W. Leach*
Arthur W. Leach
*Counsel for Defendant*
*Hi-Tech Pharmaceuticals, Inc.*

17072783v6