IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) No. 1:17-CR-0229-AT-CMS |
| | ) |
| JARED WHEAT, JOHN | ) |
| BRANDON SCHOPP, and | ) |
| HI-TECH PHARMACEUTICALS, Inc. | ) |
| | ) |

**DEFENDANT JARED WHEAT AND HI-TECH PHARMACEUTICALS, INC.'S MOTION TO DISMISS FOR SELECTIVE PROSECUTION**

COME NOW Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc. ("Defendants"), by and through their undersigned counsel and move this Court for an Order dismissing Counts Ten though Eighteen of the First Superseding Indictment, Doc. 7. In support of this request, Defendants respectfully show this Court the following:

### Introduction

Defendants in this case have a long and continuing history of exercising their First and Fifth Amendment rights with respect to the Government's attempts to curtail their sale of certain dietary supplement ingredients. Defendants are singular in this regard, as most or all other dietary supplement manufactures acquiesce to the

demands of the Food and Drug Administration ("FDA") even when such demands are arguably or apparently unsupported by the law. The Government, in response to such actions on the part of Defendants, has elected to prosecute them on never before seen theories relating to types of products they, and a multitude of others, have sold for decades without incident. The Government's conduct in this regard amounts to discriminatory, selective prosecution requiring the dismissal of Counts Ten though Eighteen of the Indictment.

## I.  Statement of Facts

**Counts Ten and Eleven: Dietary Supplements Containing Red Yeast Rice**

Count Ten of the Indictment alleges a conspiracy to introduce misbranded drugs into interstate commerce and Count Eleven alleges the introduction of a misbranded drug into interstate commerce. Doc. 7 at 8-11. The Government bases both of these counts upon the manufacture, production, and/or sale of the Hi-Tech product Choledrene. *Id*.  According to the Indictment:

> [T]he Choledrene manufactured and produced by HI-TECH at the direction of WHEAT, contained lovastatin, the active ingredient in several FDA-approved prescription drugs. Lovastatin was not listed as an ingredient on HI-TECH's labeling of Choledrene. Due to the presence of lovastatin, Choledrene was not a "dietary supplement" under the FDCA, and instead was a "drug" because it was an article other than food intended to affect the structure or function of the human body.

Doc. 7 at 9. What the Government conveniently fails to acknowledge in the Indictment is that the Choledrene product contains *manascus purpureus*, also known as red yeast rice. EXHIBIT A.

Red yeast rice supplements are exceedingly common in the dietary supplement marketplace and have been for decades. A search for "red yeast rice" on Amazon.com yields listings for over 700 products, and such products are also sold in major retailers such as Kroger and Walgreens. EXHIBIT B, EXHIBIT C; EXHIBIT D.

Most supplements containing red yeast rice also contain amounts of monacolin K, "a 3-hydroxy-3-methyl-glutaryl-coenzyme A reductase inhibitor (statin) identical to the active ingredient in prescription lovastatin." EXHIBIT E at 1. This is because lovastatin naturally occurs in red yeast rice. *Id*. The amount of monacolin K (hereinafter "lovastatin") in red yeast rice products varies depending on the strain of yeast and the fermentation process. *Id.* at 2. A recent study by a researcher from Harvard and the University of Mississippi tested various red yeast rice supplement products from GNC, Walmart, Walgreens, and Whole Foods, *id.* at 1, and detected various levels of lovastatin in products from 26 different brands, one of which provided for a 10.94 milligram maximum daily dose of lovastatin, *id.* at 3. As also set forth in the study, none of the 26 brands listed lovastatin as an ingredient.

*Id*. at 3. Indeed, Defendants are unaware of any red yeast rice product on the market that identifies lovastatin as an ingredient. *See, e.g.*, *Id*.; EXH. C at 2.

Despite these circumstances, to counsel and Defendants' knowledge and research, Defendants are the first and only ones to have ever been prosecuted for the presence of lovastatin in a red yeast rice product.

**Counts Twelve Through Eighteen: Dietary Supplements Containing DHEA**

Counts Twelve through Eighteen of the Indictment allege a conspiracy to manufacture and distribute controlled substances (Count Twelve), the manufacturing and distributing of controlled substances (Counts Thirteen through Fifteen), and introducing misbranded drugs into interstate commerce (Counts Sixteen through Eighteen). Doc. 7 at 12-16. These Counts relate to five Hi-Tech products: Superdrol, Equibolin, 1-AD, 1-Testosterone, and Androdiol. *Id*. According to the Indictment, these products are illegal because they "contained Schedule III Controlled anabolic steroids not properly declared as ingredients on the products' respective labeling." *Id*. at 12. What the Government conveniently fails to acknowledge in the Indictment is that these five products contain DHEA. Doc. 51-2 at ¶ 24.

DHEA, although technically a steroid, is a legal dietary supplement ingredient. 21 U.S.C. § 802(41)(A) (expressly excluding DHEA from the definition

of "anabolic steroid"). Similar to red yeast rice supplements, DHEA supplements are exceedingly common in the dietary supplement marketplace. There are over 400 listings for DHEA supplements Amazon.com, and DHEA-containing supplements are sold in major retailers across the country such as Walmart, Walgreens, CVS, Publix, and Kroger. *See, e.g.*, EXHIBIT F; EXHIBIT G; EXHIBIT H.

The DHEA raw material used to manufacture dietary supplements such as those of Defendants is derived, or synthesized, from anabolic steroids. During the DHEA synthesis process, the vast majority of the starting anabolic steroid (generally androstenedione) is converted to DHEA. However, trace amounts of the starting anabolic steroid may not convert, such that these trace amounts remain in the resultant DHEA raw material. Additionally, depending on the starting anabolic steroid used, as with beginning steroid 4-AD, trace amounts of other anabolic steroids (*e.g.*, androstenediol) may be created during the synthesis process and remain in the DHEA raw material as a manufacturing byproduct. *See, e.g., Hi-Tech Pharmaceuticals, Inc. v. Dynamic Sports Nutrition, LLC* ("*Dynamic Sports*"), 1:16-CV-949 (N.D. Ga. 2017) (Doc. 163-3 at ¶¶ 60-63); EXHIBIT I. Indeed, Defendants have tested DHEA products from various other manufacturers and confirmed the presence of at least one anabolic steroid in those products. *Dynamic Sports* at Doc. 163-5 (lab tests detecting the presence of androstenedione in DHEA products).

Notably, none of the products tested, and no other DHEA products to Defendants' knowledge, list anabolic steroids as "ingredients" on their label. *See, e.g.*, EXHIBIT J at 3; EXHIBIT K at 2. This is not surprising because the trace amounts of anabolic steroids in DHEA raw material are not intentionally added to be "ingredients," and they are not "biologically active" or otherwise injurious, Doc. 169-3 at ¶ 26.

Despite these circumstances, to counsel and Defendants' knowledge and research, Defendants are the first and only ones to have ever been prosecuted for traces of anabolic steroids in a DHEA product.

**Defendants: A 15-Year-Old Thorn in the FDA's Side**

In 2004, the FDA passed a final rule banning dietary supplements that contained ephedra alkaloids on the ground that they presented "unreasonable risk of illness or injury." Hi-Tech, among others, challenged the FDA's final rule arguing that the FDA had failed to meet its burden of proof on the issue. *Hi-Tech Pharmaceuticals, Inc. v. Crawford,* 1:05-CV-2083, Doc. 1 (N.D. Ga.). In 2005, Hi-Tech filed suit against the FDA and its commissioner as well as the Department of Health and Human Services and its commissioner seeking relief from the FDA's final rule that supplements containing ephedra alkaloids were "adulterated." *Id*. In 2006, Hi-Tech also filed a statement of interest in a forfeiture case with respect to ephedra alkaloid-containing supplements seized by the FDA and filed a third-party

complaint seeking declaratory judgment against the FDA. *United States v. 18 Cases More or Less …* ("*18 Cases*"), 1:06-cv-0406, Docs. 2 and 6 (N.D. Ga.). While the FDA's final rule was initially remanded back to the FDA by the United States District Court for the District of Utah in 2005 in different proceedings, the Tenth Circuit subsequently reversed the district court's ruling. *See Nutraceutical Corp. v. Crawford,* 364 F.Supp.2d 1310 (D. Ut. 2005); *Nutraceutical Corp. v. Von Eschenbach,* 459 F.3d 1033 (10th Cir. 2006). In the end, Hi-Tech lost its battle for ephedra-alkaloids after three years of litigation. *Hi-Tech Pharmaceuticals, Inc. v. Crawford*, 544 F.3d 1187 (11th Cir. 2008).

Then, in 2012, the FDA attempted to ban yet another ingredient popular in dietary supplements – DMAA. Unlike ephedra alkaloids, however, this time the FDA did not engage in formal rulemaking. Instead, it simply sent warning letters to several dietary supplement manufacturers,[1] all of whom voluntarily stopped using DMAA. Defendants did not receive a warning letter, but refused to voluntarily relinquish their legal right to sell DMAA simply because the FDA was sending out such warning letters – letters the FDA describes as "informal and advisory." *Regulatory Procedures Manual*, Food and Drug Administration, at § 4–1–1 (2017).

---

[1] https://www.fda.gov/food/dietarysupplements/productsingredients/ucm346576.htm

On November 1, 2013, the FDA seized quantities of Hi-Tech products containing DMAA and on November 7, it filed a civil forfeiture action in this Court. *United States v. Quantities of Finished and In-Process Foods*, 1:13-cv-3675-WBH (N.D. Ga.).

Hi-Tech filed a statement of interest in the civil forfeiture case in this Court and also filed a related complaint against the FDA and its commissioner in the District Court for the District of Columbia. *Id*. at Doc. 11; *Hi-Tech Pharmaceuticals, Inc. v. Hamburg*, 1:13-cv-01747-KBJ, Doc. 1 (D.D.C.). The cases were subsequently consolidated in the Northern District of Georgia. Hi-Tech argued that DMAA was a dietary ingredient under 21 U.S.C. § 321(ff)(1) and hence presumed safe and marketable. According to Hi-Tech, the FDA could ban DMAA only if it proved otherwise in formal rulemaking procedures, a step the FDA has not taken to this day. While the District Court eventually found against Hi-Tech in 2017, *United States v. Quantities of Finished and In-Process Foods*, 2017 WL 4456903 (N.D. Ga. April 3, 2017), Hi-Tech appealed this decision to the Eleventh Circuit where it remains pending. *Hi-Tech Pharmaceuticals, Inc. v. United States,* No. 17-13376 (11th Cir. 2017). Just two months after the filing of Hi-Tech's DMAA appeal, the Government filed the operative Indictment in this case and used its associated search warrants to seize, *inter alia*, over $3 million dollars from Hi-Tech bank accounts and

approximately $19 million worth of DMAA product from Hi-Tech's premises. *See* Docs 36 and 173.

Defendants, however, have not only exercised their right Fifth Amendment right to challenge the FDA in legal proceedings, but also their First Amendment right to challenge the FDA in the court of public opinion. Defendants have consistently spoken out against what they deem to be the FDA's unconstitutional and improper approach to regulation in the form of press releases, trade show speeches, YouTube videos, and interviews with third-parties. *See, e.g.*, https://www.prnewswire.com/news-releases/hi-tech-pharmaceuticals-sets-the-record-straight-on-dmaa-300413254.html; https://blog.priceplow.com/dmaa-supplements/not-illegal; https://www.youtube.com/watch?v=Av9UMhXLGfQ.

Defendants have, in short, been a thorn in the FDA's side for close to fifteen years.

## II. Argument and Citation of Authorities

**The Government Has Improperly and Deliberately "Selected" Defendants for Criminal Prosecution Due to Defendants' Exercise of First and Fifth Amendment Rights.**

> [A]lthough prosecutorial discretion is broad, it is not "unfettered." Selectivity in the enforcement of criminal laws is subject to constitutional constraints. In particular, the decision to prosecute may not be deliberately based upon an unjustifiable standard such as … the exercise of protected statutory and constitutional rights.

*Wayte v. United States*, 470 U.S. 598, 608 (1985) (internal citations and punctuation omitted). Indeed, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort [] and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' " *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (internal citation omitted). More specifically, a prosecution that has both a discriminatory effect and intent violates the equal protection clause of the United States Constitution. *Wayte*, 470 U.S. at 608. The Government's prosecution of Defendants for the presence of lovastatin in a red yeast rice product and trace amounts of anabolic steroids in a DHEA product has both a discriminatory effect and intent. These charges must therefore be dismissed with prejudice.

A prosecution has a discriminatory effect when the defendant has been singled out for prosecution and others similarly situated have not.

> A "similarly situated" person for selective prosecution purposes is one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant.

*United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011) (internal citation and punctuation omitted). While courts have considered a comparison of the criminal

histories of defendants to be relevant to the "similarly situated" inquiry, and while raw statistics are insufficient to make this showing, *id.*, it cannot be ignored that that the dietary supplement market is replete, to put it lightly, with examples of the exact same "conduct" alleged in this case and has been for decades. It also cannot be ignored that the government has *never* prosecuted *any* dietary supplement manufacturer under the theories it is relying upon in this case. Simply put, the only material difference between Defendants and the multitude of other red yeast rice and DHEA purveyors is Defendants' long history of lawfully challenging the FDA and willingness to continue doing so.

It is further clear that the Government undertook the prosecution of Counts Ten through Eighteen with bad faith, discriminatory intent. As set forth herein, in order to prosecute Defendants, the Government created "crimes" where none previously existed. The Government then used these "crimes" to obtain warrants enabling them to seize all of Hi-Tech's operating funds and over $19 million worth of product containing the very substance that is the subject of ongoing, yet entirely un-related, civil litigation. In this light, Defendants' historical and continuing efforts to lawfully challenge the Government and the fact that Defendants, and Defendants alone, have been prosecuted in the manner set forth in the Indictment is not a mere coincidence. Counts Ten though Eighteen of the Indictment were intended and

implemented to punish, deter, and hinder Defendants' exercise of their Constitutional rights and must therefore be dismissed. Or, in the alternative, discovery should be granted based upon the showing set forth herein. *See United States v. Armstrong*, 517 U.S. 456, at 469 (1996) (discovery on selective prosecution should be permitted where there is "some evidence" tending to show the existence of discriminatory effect and purpose).

## CONCLUSION

For the reasons stated above, the district court should dismiss Counts Ten through Eighteen with prejudice or, in the alternative, grant Defendants discovery on the selective prosecution issue.

This 28th day of September, 2018.

Respectfully submitted,

*/s/ Bruce H. Morris*
Bruce H. Morris
Georgia Bar No. 523575
Finestone Morris & White
3340 Peachtree Road NW
Atlanta, Georgia 30326
404-262-2500
BMorris@FMattorneys.com
*Counsel for Defendant*
*Jared Wheat*

*/s/ Arthur W. Leach*
Arthur W. Leach
Georgia Bar No. 442025
The Law Office of Arthur W. Leach
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
404-786-6443
Art@ArthurWLeach.com
*Counsel for Defendant*
*Hi-Tech Pharmaceuticals, Inc.*

13

| | |
|---|---|
| ***/s/ James K. Jenkins*** | ***/s/ Jack Wenik*** |
| James K. Jenkins | Jack Wenik |
| Georgia Bar No. 390650 | Epstein Becker & Green, P.C. |
| Maloy Jenkins Parker | One Gateway Center, 13th Floor |
| 1506 Brandt Court | Newark, New Jersey 07102 |
| Boulder, Colorado 80303 | 973-639-5221 |
| 303-443-9048 | jwenik@ ebglaw.com |
| jenkins@mjplawyers.com | Admitted Pro Hac Vice |
| *Counsel for Defendant* | *Counsel for Defendant* |
| *Jared Wheat* | *Hi-Tech Pharmaceuticals, Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing "Motion for Reconsideration of First Report and Recommendation and Request for Evidentiary Hearing" through this District's ECF system, which will automatically serve all counsel of record.

This 28th day of September 2018.

*/s/ Arthur W. Leach*

Arthur W. Leach
*Counsel for Defendant Hi-Tech Pharmaceuticals, Inc.*