IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

JARED WHEAT,
JOHN BRANDON SCHOPP, AND
HI-TECH PHARMACEUTICALS, INC.

Criminal Action No.

1:17-CR-0229-AT-CMS

## UNITED STATES' RESPONSE TO DEFENDANTS WHEAT AND HI-TECH'S MOTION TO COMPEL

The United States of America, by Byung J. Pak, United States Attorney, and Nathan P. Kitchens, Cassandra J. Schansman, and Kelly K. Connors, Assistant United States Attorneys, for the Northern District of Georgia, files this opposition to Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc.'s ("Hi-Tech") Motion to Compel discovery, Brady and 404b materials. (Doc. 190). The Court should deny the Defendants' Motion to Compel because: (1) the United States has complied with its Rule 16 discovery obligations; (2) the United States has complied with its *Brady* and *Giglio* obligations, and considers this to be an ongoing obligation with which it will continue to comply as information becomes available and the trial preparation continues; and (3) the Defendants' request for 404b evidence is premature, given the Government's inability to

review a substantial portion of the evidence which is the subject to a privilege review.

## **BACKGROUND**

Since in or about August 2011, the United States Food and Drug Administration's ("FDA") Office of Criminal Investigations ("OCI") has been involved in several investigations involving products manufactured and distributed by Defendant Hi-Tech, a company owned and operated by Defendant Jared Wheat. After an extensive investigation, a sealed indictment was filed in June 2017. (Doc. 1). A superseding indictment was then filed in late September 2017. (Doc. 7). Shortly after this, on October 4, 2017, the Defendants were arrested and arraigned and agents conducted searches of the six Hi-Tech business locations. (Docs. , 11, 12, 18). This same date, the Government provided its initial discovery to the Defendants, which consisted of approximately 1041 pages on a compact disc, and then requested a hard drive with at least 26GB of memory for additional discovery. On October 25, 2017, an initial Pretrial Scheduling Order was filed by this Court, which provided the general timeline for disclosure of discovery, most relevant here as to 404b to be provided no later than 14/21 days prior to trial depending upon where the conduct took place. (Doc. 28).

On December 1, 2017, prior counsel for the Government provided supplemental discovery in the form of three compact discs, along with an index of all discovery produced as of that date, inclusive of the prior production.  Also as part of this discovery, the Government identified statements attributed to the corporate Defendant, Hi-Tech.  Only days later, on December 11, 2017, the Defendants sent a 16-page discovery letter outlining almost 100 documents and evidence to which they believed they were entitled, without any indication or acknowledgement they had reviewed the previously provided discovery.  (*See* Defendant's Exhibit A).  Then in late December 2017, the undersigned counsel made their first appearance in this matter on behalf of the United States, after which prior counsel left the employment of the United States Attorney.  (Docs. 67, 68).

On January 9, 2018, the United States filed an unopposed motion for a scheduling order suggesting a February 1, 2018 deadline for documents seized as a result of the search warrants, as well as a March 15th deadline for expert disclosures, which this Court granted.  (Docs. 76, 79).

Since that time, the United States has diligently worked to produce discovery and to prepare the expert disclosures to meet these deadlines. On January 26, 2018, the United States provided detailed information about the attorney client/filter review process it has employed for documents obtained

from the AOL email search warrant and continues to utilize for documents

seized pursuant to the search warrants executed on October 4, 2017. The United

States repeatedly offered to produce the contents of the electronic devices

imaged during the October 4, 2017, search warrants if the Defendants provided

hard drives, Defendant Hi-Tech provided hard drives in early February 2018,

and the United States promptly produced complete images of the electronic

devices. On February 2, 2018, the United States produced additional

supplemental discovery to the Defendants.

On July 20, 2018, as part of its response to the Defendants' request for a bill

of particulars, the Government agreed to  identify the relevant communications

of which it is currently aware, to make reasonable efforts to update the

Defendants as it identifies any additional relevant communications, and to

provide a list of all communications containing allegedly false and fraudulent

FDA Certificates of Free Sale, GMP Certificates, and/or GMP Audit Reports, in

support of the charges in the Indictment, of which it is aware thirty days before

the trial date, subject to modification as trial preparation proceeds.

In the meantime, the United States was working to procure testing and

expert testimony for purposes of the adulterated drugs seized and charged. The

United States had already disclosed to the Defendants substantial information

regarding the FDA chemist experts, including the FDA lab test results, their CVs,

and their complete work papers on February 21, 2018. An original deadline of May 31, 2018 was set to comply with the expert notification requirement, to which the Government partially responded.  (See Attachment 1).  However, some of the experts had not completed their testing and analysis, which was required for them to prepare their reports.  Thus, two additional responses were made by the Government with regard to testing, experts, and the corresponding Rule 16 notice, as well as responses to the Defendants' requests for certain corresponding documentation.  Specifically, in August 2018, the Defendants sent yet another discovery demand to the Government, with a "laundry list" of items they were requesting.  (Defendant's Exhibit B).  Much of this request was either outside the scope of discovery or their request required additional information from them in order for the Government to respond.[1] However, on September 21, 2018, the Government responded to each item of their list – either providing the information and documentation requested, requesting additional clarification in order to respond, or indicating the basis for not providing the requested documentation (as it was outside the scope of discovery).  (See Attachment 2). Realizing the continuing nature of the Government's obligations, two more

---

[1] As of the date of this filing the defendants have yet to provide the additional clarification and information request by the Government in its September 21st letter.  Therefore, the Government is unable to respond to those specific requests in sections (a), (e), (j), and (k) from their August 2018 request.

responses were sent in October, including newly obtained expert and testing information, as well as some of the outstanding information requested in the original December 2017 and August 2018 defense letters.  (See Attachments 3 & 4).

Most recently, as of December 3, 2018, the Government has produced the AOL and Yahoo data the Government seized pursuant to the 2013 and 2014 email search warrants.

## ARGUMENT

The Defendants now complain on the one hand that the Government has produced "millions of pages of documents and mammoth amounts of electronically stored information ("ESI")," … constituting a "gargantuan amount of discovery," and that, as such, they cannot possibly prepare an adequate defense. (Doc. 190-2).  Yet, in the same breathe, they complain that the Government has not turned over that to which they believe they are entitled. (*Id.*) Thus one must ponder, how can counsel know they do not have discovery if they have not reviewed it? While it is true the discovery is voluminous, the Defendants' motion must fail as the Government has already in the materials it has produced, gone above and beyond the discovery requirements of the Federal Rules, as well as *Brady* and *Giglio* in any number of ways.

6

1. **The Government has complied with its Fed R. Crim. P. 16 discovery obligations.**

Under Rule 16, the Government has a continuing duty to disclose any evidence that is subject to discovery or inspection. Fed.R.Crim.P. 16(c). On the other hand, the Government need not produce the materials unless there is a request by the Defendant, *see, e.g., United States v. Lambert*, 580 F.2d 740, 745 (5th Cir.1978).[2] Yet even if there is a request, the Government is not obligated to make copies of the items. *United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003). Rather, the Government must simply make them available for inspection, copying or photographing. Fed R. Crim P. 16(c). Here, the Government has gone one step further, producing the discovery in the electronic format requested by the Defendants, which is searchable, along with an index of said discovery. Moreover, Rule 16 is a rule of production, not of identification. *See United States v. Carranza*, No. CRIM.1:05CR197-4TWT, 2007 WL 2422033, at *3 (N.D. Ga. Aug. 21, 2007)(Rule 16(a)(1)(E) does not require government to make specific identification of case-in-chief documents separately from the other two categories of documents required to be produced in said Rule); *United States v. Scrushy*, 2004 WL 483264, *3 (N. D.Ala. March 3, 2004)(plain language of Rule

---

[2] *See Bonner v. City of Prichard*, 661 F.3d 1206, 1209 (11th Cir. 1981)(*en banc*)(adopting as binging precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

16(a)(1)(E)(ii) does not require government to specify which documents it

intends to rely upon at trial); *United States v. Carrington*, 2002 WL 31496199, *2

(S.D.N.Y. Nov. 7, 2002)(same); *United States v. Alvarado*, 2001 WL 1631396, *5

(S.D.N.Y. Dec. 19.2001)(same); *United States v.. Nachamie*, 91 F.Supp.2d 565, 569

(S.D.N.Y.2000)(same).  As stated by the district court in *Scrushy*:

> The obligation imposed by Rule 16 is one of discovery, to make
> certain categories of documents available to the defense. The rule
> does not impose a duty on the government to tip its hand
> prematurely by requiring it to give the defendant a roadmap of its
> strategy. The act of categorizing documents under Rule 16 for the
> defendant necessarily reveals the government's strategic view of the
> significance of each document-whether it is one pertinent to an
> anticipated defense or one the government itself intends to use. The
> rule does not require that outcome. Although it requires an
> exchange of information, it does not open the door to discovery of
> strategy.

2004 WL 483264 at *3.  The fact that Rule 16 does not mandate identification is

consistent with the general limited scope of criminal discovery as compared to

civil discovery (with interrogatories, depositions, etc.).  For example, the

Defendants have requested statements that can be attributed to the corporate

defendant. Yet Rule 16(a)(1)(C) does not require the government to list the

statements upon which it will rely at trial. *See United States v. West*, No 08-CR-

669, 2010 WL 2293392, at *4-5 (N.D. Ill. June 2, 2010) ("Nowhere does Rule 16

state that a defendant may force the government to specifically identify each

statement it contends binds the organizational defendant; it just compels, upon a

8

defendant's request, production of the statement(s) once the government contends the person making the statement 'was legally able to bind' the corporation."); *see also United States v. Maury*, 695 F.3d 227, 254 (3d Cir. 2012) (noting that "Rule 16 affords an organizational defendant the opportunity to access that statement" and that "Rule 16 is not to be used as a tool for general evidence-gathering prior to trial" (emphasis added)).  They also demand

> The names and addresses of all persons whom the prosecution, its agents and representatives, believe to have relevant knowledge or information with reference to the charges contained in the Indictment but <u>whom the prosecution does not intend to call as witnesses at trial</u> on the ground that such a decision reflects that the person does not support the Government's allegations in the Indictment.

(Doc. 190-13, emphasis added). Not only are they requesting information to which they are not entitled under any discovery obligation, the Government does not even have an obligation to turn over this information as it relates to witnesses it does intend to call. *See United States v. Cerpas*, 397 F. App'x 524, 528 (11th Cir.2010); *United States v. Johnson*, 713 F.2d 654, 659 (11th Cir.1983)(Government does not have a general duty to disclose list of witnesses or information about witnesses prior to trial);  Barring unfairness of sufficient gravity, a defense counsel is not entitled to know in advance of trial who will testify for the Government. *United States v. Davis*, 888 F.2d 1392, 1989 WL 134194, at *2 (6th Cir.1989) (rejecting defendant's argument that identities of

Government's witnesses must be disclosed because "it would have enabled him to more readily attest to his whereabouts on the dates in question and would have enabled him to more effectively challenge witness credibility" because unfairness to defendant must be far greater than what the defendant alleged); *United States v. Elder*, No. 1: 10–CR–132–RWS–AJB, 2010 WL 5656687, at *5 (N.D.Ga. Dec.16, 2010)(holding that the Federal Rules of Criminal Procedure do not "requir[e] the Government to supply witness lists or witness statements until that witness has testified on direct examination, unless such information is required sooner by Brady or Giglio"). In that vein, such information must be material to a Defendant's defense. *Id.* at *5; *see also United States v. Prater*, 562 F. App'x 859, 865 (11th Cir.2011) (Government's failure to include witness on pretrial witness list did not violate defendant's rights where no showing that defendant's trial strategy would have differed had witness had been disclosed); *United States v. Colson*, 662 F.2d 1389, 1391–92 (11th Cir.1981). Alas, the Defendants' demands in the instant case are merely a veiled effort to transport civil discovery standards to a criminal prosecution, contrary to law.

### 2.  The Government has complied with its Brady obligations.

In addition to the Government's discovery obligations under Rule 16(a), the Government must also honor the Defendant's constitutional rights, particularly the due process right *Brady v. Maryland* established. *Brady* requires

the Government to turn over to the defense evidence that is favorable to the accused, even though it is not subject to discovery under Rule 16(a), since, eventually, such evidence may "undermine[ ] the confidence in the outcome of the trial." *United States v. Newton*, 44 F.3d 913, 918 (11th Cir.1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985)). The Defendant's right to the disclosure of favorable evidence, however, does not "create a broad, constitutionally required right of discovery." *Bagley*, 473 U.S. at 675 n. 7, 105 S.Ct. at 3380 n. 7.  Indeed, a "defendant's right to discover exculpatory evidence does not include the unsupervised right to search through the [government's] files," *Pennsylvania v. Ritchie*, 480 U.S. 39, 59, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987). Rather, *Brady* obligates the Government to disclose only favorable evidence that is "material," the touchstone of which is "a 'reasonable probability' of a different result." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995). Accordingly, under *Brady*, the Government need only disclose during pretrial discovery (or later, at the trial) evidence which, in the eyes of a neutral and objective observer, could alter the outcome of the proceedings.

As the Fifth Circuit put it in *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir.1978) (quoting *United States v. Ross*, 511 F.2d 757, 762–63 (5th Cir.1975)), the defendant must "show" "more than that the [item] bears some abstract logical

relationship to the issues in the case.... There must be some indication that the pretrial disclosure of the [item] would ... enable [ ] the defendant significantly to alter the quantum of proof in his favor." *Jordan*, 316 F. 3d at 1251.

Not infrequently, however, what constitutes *Brady* material is fairly debatable. "In such cases, the prosecutor should mark the material as a court exhibit and submit it to the court for in camera inspection. *Jordan*, 316 F.3d at 1251-52 (citing *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978); and *United States v. Agurs*, 427 U.S. 97, 106; 96 S.Ct. 2392, 2399 (1976)).

In *Jordan*, the defendants complained that the Government's "discovery was so voluminous that it hindered their pretrial preparation."  316 F.3d 1215 (11th Cir. 2003). "The discovery was indeed voluminous—because the Government gave the defense access to far more information and materials than the law required. The defendants could hardly complain about that." *Jordan*, 316 F. 3d at 1253.

The defendants in *Jordan*, like the Defendants here, also contend that the "Government attempted to avoid its *Brady* obligation by requiring them to search the discovered materials for exculpatory material." As in *Jordan*, the Government is unaware of what the defense's strategy is.  Thus, as the Court noted there, the Defendants here request for *Brady* material is nothing more than a general request for favorable information.  Moreover, they have failed to show the

materiality for any of their purported *Brady* requests.  As outlined below the Defendants cannot complain that the Government has not complied with *Brady* or that the Government must identify the *Brady* in the discovery.  Thus, their motion must fail.

Even so, the Defendants repeatedly attempt to impart the *Brady* requirements onto what are really *Giglio* requests.  For instance, they have requested a list of items in relation to an informant, Sergio Oliviera.  (Doc. 190-14-16).  Yet most, if not all, of their requests related to Mr. Oliviera are in the nature of *Giglio* materials (his criminal history, prior inconsistent statements, communications with agents or the Government, judicial proceedings in which Mr. Oliviera may have participated), with which the Government has been and will continue to comply as witnesses are developed.

"For though the attorney for the sovereign must prosecute the accused with earnestness and vigor, he must always be faithful to his client's overriding interest that justice shall be done.  He is the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer." *United States v. Agur*, 427 U.S. 97,111; 96 S. Ct. 2392; 49 L.Ed 2d 342 (citing *Berger v. United States*, 295 U.S. 78, 88; 55 S.Ct. 629; 79 L.Ed. 1314)(quotations omitted). This description of the Government's duty illuminates the standard of materiality that governs counsel

for the Government's *Brady* and *Giglio* obligations, which this counsel takes very seriously, to disclose exculpatory evidence.

In essence the Defendants' complaint is they want the Government to do their work for them.  Rather than actually review the materials provided, much of it at their request, they now demand that the Government spoon feed them. This is the Defendants' attempt to create an obligation on the Government to prepare an index of each and every document the Defendants *might* find helpful at trial – an obligation which is most definitely outside the scope of Rule 16, *Brady*, *Giglio* or any other precedent in this circuit or other circuits. *See United States v. Mmahat*, 106 F.3d 89, 94 (5th Cir. 1997), overruled in part on other ground by *United States v. Estate of Parsons*, 367 F.3d 409 (5th Cir. 2004) ("[T]here is no authority for the proposition that the government's *Brady* obligations require it to point the defense to specific documents within a larger mass of material that it has already turned over."); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005), *as amended* (Mar. 8, 2005) ("*Brady* and its progeny…impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are…disclosed" to defense counsel"); *United States v. Faux*, No. 3:14-CR-28 SRU, 2015 WL 1190105, at *7 (D. Conn. Mar. 16, 2015) ("Generally speaking, however, the Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of

14

disclosed evidence.") (quotation marks and citations omitted); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 457 (S.D.N.Y. 2011) ("Because the Government is under no general obligation to identify or sort *Brady* material within even an extremely voluminous disclosure, and Defendants have failed to persuade the Court that an exception to this general rule is warranted here, Defendants' joint motion is denied.").

Indeed, "[t]here is no reason to believe that the Defendants are less able to locate exculpatory materials within the evidentiary database than is the government." *United States v. W. R. Grace*, 401 F. Supp. 2d 1069, 1081 (D. Mont. 2005) (denying defendants' request for an order requiring prosecution to identify *Brady* materials within the discovery already produced). This is particularly true here, where Defendants Wheat and Hi-Tech are well-resourced and have engaged law firms that tout their e-discovery capabilities. *See, e.g., United States v. AU Optronics Corp.*, No. C 09-0110 SI, 2011 WL 6778520, at *2 (N.D. Cal. Dec. 23, 2011) ("Defendants have made no showing that the government has used its production as a means of concealing *Brady* material. Further, the defendants here are well-resourced, have interests that are largely aligned, and perhaps most importantly, have the benefit of years of participation in the civil cases.).

The Fifth Circuit in *Skilling* also rejected the defendant's *Brady* challenge because there was no evidence the Government acted in bad faith in producing

its "voluminous file," which was "electronic and searchable" and included indices for reference. *United States v. Skilling*, 554 F.3d 529, 577 (5th Cir.2009), vacated on other grounds, 561 U.S. 358, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010); *see also United States v Parnell*, 32 F. Supp. 3d 1300, 1309 (M.D. Ga. 2014); *United States v. Warshak*, 631 F.3d 266, 274 (6th Cir. 2010)(government did not duck its obligations under *Brady* by providing the defendants with massive quantities of discovery).  In the instant case, like in *Skilling, Warshak* and *Parnell*, the Government copied the discovery for the Defendants, giving it to them in an electronic and searchable format, with indexes.

Lastly, as the evidence is released from the privilege review, the Government will continue to comply with its Rule 16 discovery, *Brady* and *Giglio* obligations to the extent it has not already done so.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Defendants' Motion to Compel Discovery.

Respectfully submitted,

BYUNG J. PAK
    *United States Attorney*

/s/NATHAN P. KITCHENS
    *Assistant United States Attorney*
Georgia Bar No. 263930
Nathan.Kitchens@usdoj.gov

/s/CASSANDRA J. SCHANSMAN
    *Assistant United States Attorney*
Georgia Bar No. 183184
Cassandra.Schansman@usdoj.gov

/s/KELLY K. CONNORS
    Assistant United States Attorney
Georgia Bar No. 504787
Kelly.Connors@usdoj.gov

**<u>Certificate of Service</u>**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

December 7, 2018

/s/ CASSANDRA J. SCHANSMAN
CASSANDRA J. SCHANSMAN
*Assistant United States Attorney*