IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| v. | ) No. 1:17-CR-0229-AT-CMS<br>) |
| JARED WHEAT, JOHN BRANDON SCHOPP, and HI-TECH PHARMACEUTICALS, INC. | )<br>)<br>)<br>) |

**JARED WHEAT AND HI-TECH PHARMACEUTICALS, INC.'S REPLY IN SUPPORT OF MOTION FOR RETURN OF SEIZED PROPERTY (DMAA)**

COME NOW Defendants Hi-Tech Pharmaceuticals, Inc. and Jared Wheat and file this Reply to the Government's Response, Doc. 212, to Defendants' Motion for the Return of Seized Property, Doc. 173. The Court should grant the Motion.

**INTRODUCTION**

Rather than address Defendants' arguments under Rule 41(g), the Government again suggests that Rule 41(g) does not govern. The Government is wrong. Under almost identical circumstances, this Court rejected the contention that the seizure of Defendants' property is unrelated to the pending criminal case. This Motion is properly filed, and this Court can and should consider it under Rule 41(g). And because Defendants have satisfied the elements of Rule 41(g), the Government must prove a substantial justification for its retention of Defendants' property.

The Government, however, comes nowhere close to meeting that burden. Indeed, well over a year since the seizure, the Government has yet to provide any cognizable basis for it. Instead, the Government rests its entire argument on the bald contention that it may detain the DMAA and DMAA-containing products for a "reasonable" time so long as *Defendants* cannot show resulting prejudice. That is not the law. The Government must prove, but has not proved, a substantial justification for detaining Defendants' property. Absent that showing, the Defendants need not prove prejudice; the continuing seizure is presumptively prejudicial. Moreover, though Defendants are not required to show prejudice here, they easily show that the continued detention of their perishable property subjects them to economic harm.

This Court should reject the Government's invitation to delay consideration of this Motion and should order the Government to return the seized property or to file a forfeiture proceeding against it within 30 days.

## ARGUMENT AND CITATION OF AUTHORITIES

### I. Rule 41(g) Governs Defendants' Motion.

The Government once again tries to recast a Rule 41(g) motion as a "pre-indictment" one, having no inherent connection to this criminal proceeding. Doc. 212 at 7 n.1. But in the context of a prior Rule 41(g) motion, this Court already rejected that very argument. *See* Doc. 122. It should do the same here.

Defendants previously moved for the return of $2 million in products that, like the DMAA and DMAA-containing products here, were not mentioned in the indictment. Doc. 72 at 1-2. In response, the Government offered no basis for the seizure and no explanation why it needed the products as evidence. Doc. 104 at 5. Instead, contending that the seizure was not linked to this criminal case, and painting the seizure as "pre-indictment," the Government suggested – exactly as it does here – that the motion was really a civil claim that the Court should consider, if at all, per its equitable jurisdiction. *Compare* Doc. 104 at 6 *with* Doc. 212 at 7 n.1.

This Court rightly disagreed. "The timeline [at issue in this case] reflects that the seizure of the Products occurred squarely within the context of this criminal case – a case that had already been indicted for months before the warrants were executed and a case in which the indictment was unsealed immediately after the execution of the search warrants." Doc. 122 at 4. In fact, the Court found the Government's unexplained seizure "troubling": "In the absence of any explanation from the Government as to its motives, the Government's continued retention of the Products and its response to the Motion [is] troubling." *Id*. The Government's retention of over $19 million of DMAA and DMAA-containing products here is no less troubling. As before, the Government has no explanation for why products "seized the same day that a superseding indictment was unsealed, should not be viewed as

being part of this pending criminal case." Doc. 122 at 4.[1] The Court should conclude that Rule 41(g) governs this Motion.[2]

## II.     Under Rule 41(g), Defendants Are Entitled to Return of Their Property.

### A.     Defendants Have Made an Unrebutted, *Prima Facie* Case for the Return of the Property.

As Defendants previously explained, Doc. 173 at 8-9, when – as here – a Rule 41(g) motion is filed during the pendency of a criminal action, the movants must show that: (1) they are legally entitled to the property; (2) the property is not illegal contraband; and (3) the property lacks evidentiary value. *See* Doc. 173 at 8-9; *United States v. Price*, No. 10-60243-CR, 2011 WL 2651802, at *2 (S.D. Fla. July 7, 2011); *see also United States v. White*, No. 12-2833-MJ, 2013 WL 141147, at *3-4 (S.D. of Fla. Jan. 11, 2013). Defendants established those elements in their Motion. Doc. 173 at 9-17. The Government offers no rebuttal to those points. Doc. 212.

Defendants have thus established that they are lawfully entitled to possess the seized DMAA and DMAA-containing products. Doc. 173 at 10. The property is neither controlled substances, *see* 21 U.S.C. 801, nor contraband of any sort. Doc.

---

[1] When this Court previously ordered the Government to explain the basis for its retention of Hi-Tech's property, Doc. 122 at 5, the Government simply returned some of the seized property and filed a civil forfeiture action on the remainder. *See* Doc. 126.

[2] It is telling that the Government never bothers to respond to Defendants' alternative equitable arguments, which would apply were the Court to construe Defendants' Motion as a civil claim. *Compare* Doc. 173 at 17-21 *with* Doc. 212.

4

173 at 11–13. Nor is there any showing that the property has evidentiary value in this or any other criminal proceeding – as evidence, it is valueless. *Id*. at 14–17.

### B. The Government Has Failed to Justify Its Continuing Seizure.

Because Defendants have made their *prima facie* showing under Rule 41(g), to decide whether the Government's continuing seizure without filing a forfeiture action is improper, the Court must consider: (1) the length of delay; (2) the reason for the delay; (3) Defendants' assertion of their rights; and (4) any prejudice suffered by Defendants. *See Nnadi v. Richter*, 976 F.2d 682, 687 (11th Cir. 1992).[3]

The Government tries to confuse those factors, and to shift its burden to Defendants, by contending vaguely that Defendants have not asserted an adequate "due process" challenge, Doc. 212 at 8-9, and that Defendants have not "asserted any specific prejudice" caused by the continuing seizure, *id.* at 12. Although the Government acknowledges, as it must, that a Rule 41(g) motion implicates a due process analysis, *see* Doc. 212 at 8 (citing *United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004)), the Government skips right over its initial burden to provide a substantial justification for its continuing seizure without seeking forfeiture.

---

[3] The fact that the limits on governmental abuses imposed by the Civil Asset Forfeiture Reform Act of 2000, *see* 18 U.S.C. § 983(i)(2)(C), do not apply to seizures under the Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301, *et seq.*, simply underscores the Government's duty to act reasonably here.

To the contrary, under Rule 41(g) the Government "bears the burden of proof in demonstrating a legitimate reason why it continues to require possession of the seized property." *United States v. Price*, No. 10-60243-CR, 2011 WL 2651802, at *2 (S.D. Fla. July 7, 2011); *see also United States v. Gladding*, 775 F.3d 1149, 1153 (9th Cir. 2014).[4] To meet that burden, "the [G]overnment must *explain* and *justify* [its] substantial delay[ ] in seeking forfeiture of seized property." *United States v. $23,407.69 in U.S. Currency*, 715 F.2d 162, 166 (5th Cir. 1983) (emphasis added). Here, the Government does neither.

The Government has offered no substantial justification for why it continues to need the DMAA. It merely says it may detain the DMAA indefinitely while awaiting the Eleventh Circuit's ruling in the separate *in rem* action. Doc. 212 at 9-11. That is not enough. Possessing DMAA is not unlawful and, as explained below, Defendants have legitimate reasons to regain possession of that property, which outweigh the Government's authority to continued possession. "'[I]f the United States has a need for the property in an investigation or prosecution, its retention of the property is generally reasonable. But if the United States' legitimate interests can

---

[4] "Closely related to the length of the delay is the reason the Government assigns to justify the delay." *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 565 (1983). Although the description of a "substantial" delay ultimately depends on the circumstances, it has been generally described as anything longer than a "short delay" of a month or so. *Id*. See also *United States v. Sharp*, 655 F. Supp. 1348, 1350 (W.D. Mo. 1987) (same).

6

be satisfied even if the property is returned" – as here – "continued retention of the property would become unreasonable.'" *White*, 2013 WL 141147, at *1 (citation omitted).

The Government tries, but fails, to justify its continuing seizure simply by declaring that detaining DMAA for less than 18 months is *per se* reasonable under *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555 (1983). Doc. 212 at 9. The question whether the length of delay in seeking forfeiture is reasonable, however, depends on the specific facts of each case and is not subject to such a bright-line approach. *See $8,850 in U.S. Currency*, 461 U.S. at 565; *United States v. Robinson*, 434 F.3d 357, 364–66 (5th Cir. 2005); *Gonzales v. Rivkind*, 858 F.2d 657, 661–62 (11th Cir. 1988). And "[c]losely related to the length of the delay is the *reason* the Government assigns to justify the delay" – discussion of duration alone will not do. *$8,850 in U.S. Currency*, 461 U.S. at 565.

Any delay in seeking forfeiture here is unreasonable because the Government has never had a legitimate reason to possess the property or to deprive Defendants of their possession. The Government made no showing, for example, that Defendants were about to take illegal action regarding the property in violation of

the FDCA.[5] The mere fact that a separate *in rem* action concerns DMAA-containing products does not by itself support the different seizure here, which must be justified independently. The two cases the Government cites for the idea that property may be seized while awaiting the result of a civil action involving similar legal "issues" are distinguishable. *See* Doc. 212 at 11–12. In each of those cases, unlike here, the civil actions related to the legal importation status of the *very same seized property itself*.[6] "A forfeiture action is *in rem*" – that is, pertinent to the specific property seized. *United States v. Approximately $1.67 Million (US) in Cash, Stock & Other Valuable Assets*, 513 F.3d 991, 996 (9th Cir. 2008).[7]

---

[5] To violate the FDCA, as alleged in the warrant affidavits that allegedly support the seizure of DMAA, some action must have been taken with respect to DMAA – mere possession is not enough. *See* 21 U.S.C. § 331(a) (requiring "the introduction or delivery for introduction into interstate commerce"); *id.* at (k) (requiring "the alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling"). Thus, even assuming the Eleventh Circuit will agree DMAA is not a "dietary ingredient," Defendants' possession is not unlawful.

[6] *See Ancient Coin Collectors Guild v. U.S. Customs & Border Prot., Dep't of Homeland Sec.*, 801 F. Supp. 2d 383 (D. Md. 2011) (forfeiture proceeding was delayed while owner filed action to declare exact same merchandise importable), *aff'd*, 698 F.3d 171 (4th Cir. 2012); *United States v. Thirty-Six (36) 300CC on Rd. Scooters Model WF300-SP*, No. 2:11-CV-130, 2012 WL 4483281 (S.D. Ohio Sept. 27, 2012) (forfeiture proceeding was delayed during pendency of administrative forfeiture proceedings concerning the exact same merchandise and of owner's actions to declare the exact same merchandise importable).

[7] The Government's seizure here is also unjustified insofar as filing a new or supplemental forfeiture action might be constrained as "duplicative," as the Government intimates, under the FDCA's seizure provisions in 21 U.S.C. § 334. *See* Resp., Doc. 212 at 11 n.5; 1 FOOD & DRUG ADMIN. § 7:3 (4th ed. 2018); 13 FED.

Moreover, unlike the property in the cases the Government cites, the property here has a limited shelf-life; it loses its potency over time and eventually expires. Harris Decl. at ¶¶ 8-9, attached as EXHIBIT A. Although the Government cites cases for the proposition that a 30-month to five-year delay in seeking forfeiture has been deemed reasonable, in each of those cases the property seized was, unlike here, contraband having direct evidentiary value to underlying, complex criminal indictments. *See* Doc. 212 at 10.[8]

The Government has neither offered a valid justification for its continued seizure nor demonstrated that the continued seizure for over 14 months without initiating forfeiture proceedings is reasonable.

### C. Although Defendants Are Not Required to Demonstrate Prejudice, the Seizure Poses Significant and Potentially Irreparable Harm.

The Government has been detaining approximately $19 million in

---

PROC., L. ED. § 35:458. Any limitation that 21 U.S.C. § 334 might put on the Government's power to seize DMAA here cannot justify disregarding Defendants' rights of possession. The Government may not justify its detention, and shift to Defendants the Government's burden of complying with 21 U.S.C. § 334, merely by suggesting that that statute precludes the immediate filing of a forfeiture action.

[8] *See United States v. Approximately $1.67 Million (US) in Cash, Stock & Other Valuable Assets*, 513 F.3d 991 (9th Cir. 2008) (seized funds were laundered through global narcotics-trafficking operation); *United States v. Ninety Three Firearms*, 330 F.3d 414 (6th Cir. 2003) (weapons seized from felon); *United States v. $292,888.04 in U.S. Currency*, 54 F.3d 564, 566 (9th Cir. 1995) (seized currency related to smuggling of 56 tons of marijuana and hashish into United States).

Defendants' DMAA and DMAA-containing products for over 14 months. *See* EXHIBIT A at ¶ 5; Doc. 45-2 at 2. Because the Government has failed to show that its seizure is substantially justified, *see Nnadi*, 976 F.2d at 687, prejudice to the Defendants is presumed. "[P]rejudice to the defendant can be presumed where he is deprived of the use of his property by the government without justifiable cause … " *United States v. Sharp*, 655 F. Supp. 1348, 1352 (W.D. Mo. 1987). Because the "mere absence of prejudice does not make the [G]overnment's position substantially justified," the "possible absence of [demonstrable] prejudice is not conclusive." *United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1519 (9th Cir. 1991). That is so because the Government's unjustified seizure implicates Defendants' most basic due process rights to the possession of property. *See* U.S. Const. Amend. V; *Robinson v. United States*, 734 F.2d 735, 738 (11th Cir. 1984).

Regardless, Defendants have shown significant prejudice arising from the seizure. According to the Government, due to "Judge Hunt's finding that DMAA is adulterated," and given the Defendants' bond conditions, Doc. 19, any DMAA in Hi-Tech's possession is effectively worthless. Doc. 212 at 15. To the contrary, the detained property has significant value to Defendants, which this Court should consider. *See, e.g., $8,850 in U.S. Currency*, 461 U.S. at 565 (considering deprivation of a "substantial sum of money for a year and a half" as "undoubtedly a significant burden").

The detention risks spoiling that property if it is not stored under the right conditions, such as temperature and humidity, which the Government lacks the same motivation as Defendants to ensure. *See* EXHIBIT A at ¶ 8; Doc. 212 at 13–14. The Government's Response claims that it is storing the DMAA properly, Doc. 212 at 14, but it offers no evidentiary support, as plainly required by N. Dist. Ga. L.R. 7.1(A)(1).

Even more importantly, were the Eleventh Circuit to reverse Judge Hunt's decision that products containing DMAA are adulterated, Defendants would be poised, subject to amendment of the bond condition, to be among the first to re-enter the market of selling DMAA-containing dietary supplement products – so long as Defendants possess the products when that ruling is issued. *See* EXHIBIT A at ¶ 10.[9] Were Defendants' products to remain in the Government's hands, getting back the unexpired product could – and likely would – be delayed by the need to seek another Court order and red tape, depriving Defendants of their valuable first-to-market advantage. *See id*. at ¶ 11 (discussing value of first-to-market advantage). That delay would significantly prejudice Defendants and advance the Government's unstated

---

[9] Through a warning-letter campaign and other informal actions, the FDA has deterred companies from selling dietary supplements containing DMAA. *See* EXHIBIT A at ¶ 10; FDA, DMAA in Products Marketed as Dietary Supplements, https://www.fda.gov/Food/DietarySupplements/ProductsIngredients/ucm346576.htm (Aug. 2018) (last visited Dec. 20, 2018).

(and illicit) goal of harming Defendants financially.

Nothing in Defendants' bond conditions changes this analysis. Judge Baverman's bond Order prohibits Defendants from "*manufacturing, distributing or selling* adulterated foods or misbranded drugs," including "products containing DMAA or its chemical equivalent." Doc. 19 (emphasis added). The Order thus precludes Defendants from "manufacturing, processing, packaging, marketing or distributing food or dietary supplements containing DMAA." *Id.* But the Order says nothing about possessing or retaining DMAA or DMAA-containing products that had previously been stored in Hi-Tech's warehouses. *See* Doc. 19.

Indeed, the bond conditions prohibiting the sale or distribution of DMAA-containing products show, if anything, that the seizure and detention of Defendants' property is merely punitive. If not done to financially cripple Defendants, why does the Government need to detain those materials and products at all?

To this question, the Government offers no plausible response. Instead, the Government simply contends that Defendants have not shown that any prejudice will result from the Government's continued retention.[10] After all, the Government

---

[10] The Government misleadingly cites *Church of St. Matthew v. United States*, 845 F.2d 418 (2d Cir. 1988), Doc. 212 at 13, which concerned the ripeness of an appeal, for the circular proposition that Defendants are not prejudiced by the detention because, were the Court to deny the motion now, Defendants could simply move again later for return of the property.

says, "if Defendants' concern is their speedy reentry into the DMAA marketplace," then they could simply use the "$3 million of DMAA seized in place in their facilities." Doc. 14 n.6. That is nonsense. The DMAA seized by the Government in the *in rem* action has languished now for over five years and long ago lost its potency. *See* EXHIBIT A at ¶¶ 7-9. The Government's proposed "solution" of hanging onto the products at all costs is no solution at all.

Meanwhile, the Government would suffer no prejudice were the property returned to Defendants and retained – just as with the other DMAA-containing products subject to the *in rem* action. *See* EXHIBIT A at ¶ 4; Doc. 52-3 at 3. Nor would Defendants' "receiving" of returned property violate the bond conditions, as the Government bizarrely suggests. Doc. 212 at 15 (discussing prohibition on "receiving" DMAA ingredients and citing Doc. 37 at 21 and Doc. 19). This Court can obviously order the Government to return property to Defendants subject to the existing bond order and specifically exempt the "receipt" of DMAA from the prohibitions in Defendants' bond Order.

In sum, were the Eleventh Circuit to affirm Judge Hunt's Order, concluding that certain other products containing DMAA are adulterated, the Government could take further action concerning DMAA-containing products, and its position would not have been prejudiced by the return. Were the Eleventh Circuit to reverse Judge Hunt's Order, Defendants would be poised to re-enter the DMAA market

immediately, but for the Government's detention of its DMAA-containing products. Defendants have reserved the right to move to modify the bond conditions for that purpose. Doc. 34 at 18-19. And were the Eleventh Circuit to vacate Judge Hunt's order and remand, Defendants could also seek the amendment of their bond conditions relating to DMAA. But none of those potential outcomes supports the continuing seizure of the DMAA pending the Eleventh Circuit's ruling.

## CONCLUSION

To give its seizure a veneer of legitimacy, the Government has used criminal search warrants to manufacture its supposed "plain view" discovery of DMAA. *See* Doc. 72-2 at 14. But in seizing five truckloads of Defendants' property that way, without seeking forfeiture, what does the Government really hope to accomplish? The goal could only be to undermine Defendants' disfavored business operations and their ability to defend this criminal case. Beneath the surface of the Government's conduct, then, there is "manifest bad faith on the part of government agents," *See Robinson*, 734 F.2d at 738. "Allowing the government to avoid its responsibility under the Rules merely by" creating an ad hoc substitute for a valid forfeiture action, as here, "would contribute nothing to the respect due the judicial process." *See id*.

WHEREFORE, Defendants respectfully pray that this Court order the Government: (1) to return the seized DMAA and DMAA-containing products to Defendants; or (2) to file a forfeiture proceeding against the seized property within 30 days. Defendants also request such other relief the Court deems just and proper.

This 21st day of December 2018.

Respectfully submitted,

| | |
|---|---|
| /s/ *Bruce H. Morris* | /s/ *Arthur W. Leach* |
| Bruce H. Morris | Arthur W. Leach |
| Georgia Bar No. 523575 | Georgia Bar No. 442025 |
| Finestone Morris & White | The Law Office of Arthur W. Leach |
| 3340 Peachtree Road NW | 5780 Windward Parkway, Suite 225 |
| Atlanta, Georgia 30326 | Alpharetta, Georgia 30005 |
| 404-262-2500 | 404-786-6443 |
| BMorris@FMattorneys.com | Art@ArthurWLeach.com |
| *Counsel for Defendant* | *Counsel for Defendant* |
| *Jared Wheat* | *Hi-Tech Pharmaceuticals, Inc.* |
| | |
| /s/ *James K. Jenkins* | /s/ *Jack Wenik* |
| James K. Jenkins | Jack Wenik |
| Georgia Bar No. 390650 | Epstein Becker & Green, P.C. |
| Maloy Jenkins Parker | One Gateway Center, 13th Floor |
| 1506 Brandt Court | Newark, New Jersey 07102 |
| Boulder, Colorado 80303 | 973-639-5221 |
| 303-443-9048 | jwenik@ebglaw.com |
| jenkins@mjplawyers.com | Admitted Pro Hac Vice |
| *Counsel for Defendant* | *Counsel for Defendant* |
| *Jared Wheat* | *Hi-Tech Pharmaceuticals, Inc.* |

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed the foregoing "Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc.'s Reply in Support of their Motion for Return of Seized Property (DMAA)" through this District's ECF system, which will automatically serve all counsel of record.

This 21st day of December 2018.

                                            */s/ Arthur W. Leach*
                                            Arthur W. Leach
                                              *Counsel for Defendant*
                                              *Hi-Tech Pharmaceuticals, Inc.*