## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:17-CR-0229-AT-CMS |
| | ) | |
| JARED WHEAT, | ) | |
| JOHN BRANDON SCHOPP, and | ) | |
| HI-TECH PHARMACEUTICALS, INC. | ) | |
| | ) | |

## JARED WHEAT AND HI-TECH PHARMACEUTICALS, INC.'S
## REPLY IN SUPPORT OF MOTION TO COMPEL

COME NOW Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc., by and through their undersigned counsel, and file this Reply to the Government's Response, Doc. 210, to Defendants' Motion to Compel, Doc. 190.

### INTRODUCTION

The Court should reject the Government's cramped description of its obligations under Fed. R. Crim. P. 16. As Defendants explained in their Motion, district courts in circumstances similar to those present here – a criminal white-collar matter in which the Government collected and then dumped tens of millions of pages of documents on the defense – have required that the Government identify the

documents and other electronically stored information ("ESI") it intends to use in its case-in-chief, as well as any written or recorded statements made or adopted by Defendants or Defendants' agents. The cases cited by the Government are either general statements of the law under Rule 16 or did not feature the large-scale document production present here. The Court should also reject the Government's reading of Rule 16 because, if it were to adopt it, the Court would only further encourage the Government to collect and dump essentially unreviewable mountains of data on defendants, knowing it will provide the Government with an unfair advantage at trial. Rule 16 is not intended to prejudice defendants through a rote, context-less application of prior, dissimilar case law.

Precedent is also clear that the Government may not hide exculpatory evidence (*e.g.*, *Brady* evidence) within a huge production of documents that are not only non-exculpatory, but are unconnected to the charges against Defendants. The Government's position here is attempting to seek the Court's blessing for doing exactly that. As explained more fully below, the Court should reject the Government's approach and order it to reasonably narrow the potential *Brady* and *Giglio* materials that it asserts it has already produced amongst the mountains of other documents it has provided to Defendants.

## ARGUMENT AND CITATION OF AUTHORITIES

### I.  The Court Should Order the Government to Identify the Documents and Materials It Will Rely Upon During its Case-in-Chief.

Defendants' Motion sought an order requiring the Government to identify the documents and materials it plans to rely on during its case-in-chief because it is fundamentally unfair and prejudicial to require Defendants to ferret relevant documents out from the massive amount of documents and ESI, much of it irrelevant to the charges in the indictment, produced[1] by the Government. Doc. 190 at 4-9. The Government opposes this by arguing that Rule 16 does not require identification as requested and that there are no compelling reasons for the Court to enter such an order. Doc. 210 at 6-10. The Court should reject the Government's position because it limits the Court's inherent powers to control discovery in the cases before it and is inconsistent with Rule 16 and its spirit.

---

[1] The situation present here, where the Government collected massive amounts of information as part of executing various search warrants and then provided the data *en masse* to Defendants, could have been avoided if the Government had been more targeted in its initial collection related to this investigation and the warrants issued, especially as to ESI. But having collected that massive amount of information/documents, the Government was required to produce it to Defendants. However, in fulfilling that obligation, the Government has made it virtually impossible for Defendants to review the materials seized in a meaningful or efficient manner. Stated differently, by collecting terabytes of irrelevant information, the Government has turned its obligation to produce that information to Defendants into a weapon of obfuscation.

The quantity of documents and ESI produced by the Government in this matter has been immense and was set forth in detail in Defendants' Motion and other submissions to the Court. As summarized in Defendants' Reply Brief in Support of Motion for Bill of Particulars, as of March 2018, the Government had produced the following to Defendants:

> (1) approximately 74,000 emails and documents seized from AOL, Yahoo, or otherwise related to the grand jury proceedings herein (totaling more than 180,000 pages) and produced on or about October 30, 2017; (2) approximately 6,500 documents (totaling approximately 18,000 pages) of additional grand jury related materials produced on or about December 1, 2017; (3) 5 gigabytes of scanned hard-copy documents (totaling approximately 158,000 pages) seized from Hi-Tech's premises on October 4, 2017 (as well as an additional 7,000 pages of grand jury related materials) produced on or about February 8, 2018; (4) *12 terabytes*[2] *of digital information seized from Hi-Tech's computers on October 4, 2017*, and produced on or about February 27, 2018; (5) 17,332 emails and documents reviewed by case agent Kriplean (totaling more than 47,000 pages) produced on March 8, 2018; and (6) approximately 400 pages of lab reports produced on or about March 9, 2018.

---

[2] As Defendants explained in their Reply in further support of their Motion for a Bill of Particulars, Doc. 134 at 4, a terabyte is 1,000 gigabytes. A single gigabyte contains the equivalent of approximately 777,384,000 pages of Microsoft Word documents. *See* "How Many Pages in a Gigabyte," available at: https://www.lexisnexis.com/applieddiscovery/lawlibrary/whitePapers/ADI_FS_PagesInAGigabyte.pdf. Multiply that amount by 12,000 (the number of gigabytes in 12 terabytes) and one arrives at roughly 9.3 billion pages of information. Now, of course, the Government did not produce 12 terabytes of solely word processing documents (the information produced was a mix of the documents you would expect to find on computers used in a business setting), but the point remains the same – the Government collected and dumped a veritable mountain of information on Defendants.

Doc. 134 at 3-4 (emphasis added).

During the succeeding period of August through October 2018, the Government produced thousands of additional pages of materials related to lab testing done by the FDA, as well as multiple productions of Jencks Act materials. Without question, the discovery produced in the case is copious and far eclipses the discovery in a typical criminal matter. While Defendants acknowledge that the Government initially fulfills its obligation under Rule 16 by producing all the documentation seized in conjunction with its investigation, its obligations do not end there. When such vast amounts of materials are produced with no guidance as to relevance to the charges brought by the Government, it makes identification of the Government's case and evidence virtually impossible. In Defendants' view, this is precisely the Government's design. Nonetheless, the Government will demand reciprocal discovery from the defense and will expect it to provide such material with some precision. Assuming that the Government is permitted to conceal their true intentions regarding the evidence to be used at trial, would it not be equally acceptable if the defense placed its discovery in 12 terabytes of data in order to conceal its case? Such a result is simply absurd, but if the Government is permitted to proceed in this fashion, Defendants should be permitted to do so as well.

Moreover, even the Government agrees that the discovery produced has been "voluminous," Doc. 210 at 6, which purportedly explains why it took the

Government over five years to search through and determine what documents it was going to seize from a single email account it impounded in 2013 (Mr. Wheat's AOL email account). *See* Doc. 203 (October 31, 2018 Order that the Government produce material it would seize from Wheat AOL email account by December 4, 2018). Considering the protracted amount of time the Government claims it took to search the AOL email account and determine what items it concluded were relevant to the instant charges, the Government's dismissive comments regarding how Defendants could easily review and identify the relevant documents within the substantially larger set of documents and ESI involved is, at best, inconsistent and illogical.

The cases cited by the Government to support this position are simply inapt to the circumstances present here and fail to take into account that Rule 16 only sets forth "the minimum amount of discovery to which the parties are entitled," and thus "is not intended to limit the judge's discretion to order broader discovery in appropriate cases." *United States v. Salyer*, No. S-10-0061, 2010 WL 3036444, at *2 (E.D. Cal. Aug. 2, 2010) (citing Fed. R. Crim. P. 16 advisory committee's note to 1974 amendment). By focusing merely on what is required in factually simple cases that bear no similarity to this case from either a proof or evidentiary perspective, the Government blindly disregards the protections Rule 16 is designed to offer criminal defendants.

For example, the Government cites *United States v. Carranza*, No. 1:05-CR-00197-4, 2007 WL 2422033, at *3 (N.D. Ga. Aug. 21, 2007), for the seemingly dispositive proposition that "Rule 16 is a rule of production, not identification." Doc. 210 at 7. *Carranza*, however, contains no analysis and merely adopted the recommended ruling of a magistrate judge. *Id.* at *3 (citing Doc. 274 in 1:05-CR-00197-4 (N.D. Ga. July 16, 2007)). A review of the magistrate judge's recommendation shows that: (1) there was no discussion of the scope of the discovery produced by the Government and whether it was onerous; (2) the defendant's motion was withdrawn prior to its adjudication, therefore leaving the record regarding discovery undeveloped; and (3) the magistrate judge did not think any of the "fairness" concerns raised in the cases cited by the defendant's motion were required under Rule 16 based on the facts present in *Carranza*. Plainly, *Carranza* is distinguishable on its facts and hardly provides an unassailable basis for a conclusion that identification of the documents the Government intends to use in its case-in-chief is inappropriate under Rule 16. Importantly, none of the cases cited by the Government hold that an order that the Government must identify the materials, statement or evidence it will rely on in its case-in-chief is *prohibited* under the rules.

The Government's other citations in support of its cramped interpretation of Rule 16 are similarly inapposite and seem to be a rote adoption of the cases cited by

the magistrate judge in *Carranza* with no consideration of their factual contexts'
applicability to the instant case.  For example, in *United States v. Carrington*, No.
02-CR-897, 2002 WL 31496199, at *2 (S.D.N.Y. Nov. 7, 2002), the defendant was
charged with "stealing postage stamps, valued at approximately $2,720," along with
other postal-related offenses. The opinion does not contain any description of the
extent of the discovery produced or whether the identification of the documents to
be used in the Government's case-in-chief would be appropriate in light of the scope
of that production. *Id. Carrington* plainly does not provide guidance in the
circumstances here.

The Federal Rules of Criminal Procedure are intended to be "interpreted to
provide for the just determination of every criminal proceeding, to secure simplicity
in procedure and fairness in administration, and to eliminate unjustifiable expense
and delay." Fed. R. Crim. P. 2. This guiding principle, when combined with the
large-scale "data dump" of ESI that occurred here, support a conclusion that the
Government should be ordered to identify the documents, corporate statements, and
ESI it will use in its case-in-chief. *See United States v. Anderson*, 416 F. Supp. 2d
110, 114 (D.D.C. 2006) (Government ordered to identify those items it intended to
offer in its case-in-chief at trial "[g]iven the enormous volume of material produced
in th[e] case and defendant's limited resources … "); *United States v. Poindexter*,
727 F. Supp. 1470, 1484 (D.D.C. 1989) (granting similar relief where the

Government had produced hundreds of thousands of documents to defendant because "there [were] many reasons, grounded in fairness to the defendant, the protection of his rights, and not least Rule 16(a)(1)(C), why" the relief should be granted); *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged.").

As the foregoing cases make clear – as well as those other cases collected in Defendants' Motion, Doc. 190 at 4-9 – the need to impose on the Government an obligation to specifically identify the documents and ESI it will rely on in its case-in-chief has been demonstrated. Accordingly, the Government should be ordered to identify the items it intends to offer in evidence in its case-in-chief at trial, or that will be relied upon or referred to by any witness called by the Government to testify in its case-in-chief. Fundamental fairness requires nothing less.

## II.  The Government Should be Ordered to Identify Any Statements Made or Adopted by Defendants.

In addition to requesting that the Government identify those documents it would rely on during it case-in-chief, Defendants' Motion also sought an order compelling the Government to identify any written or recorded statements made or

adopted by Defendants or Defendants' agents, including any statement made by a person if the Government contends that the person making the statement: (1) was legally able to bind Hi-Tech regarding the subject of the statement because of that person's position as Hi-Tech's director, officer, employee, or agent; or (2) was personally involved in the alleged conduct constituting the offense and was legally able to bind Hi-Tech regarding that conduct because of that person's position as Hi-Tech's director, officer, employee, or agent. Doc. 190 at 9-10. The Government's opposition to this request is folded into its opposition to Defendants' request related to the documents the Government will use during it case-in-chief and relies on the same contention: "Rule 16 does not mandate identification" of such statements. Doc. 210 at 8.

The two cases cited by the Government, however, acknowledge that such statements must be provided to Defendants when they are offered to bind the corporation. Doc. 210 at 8-9 (citing *United States v. West*, No. 08-CR-669, 2010 WL 2293392, at *4-5 (N.D. Ill. June 2, 2010) and *United States v. Maury*, 695 F.3d 227, 254 (3d Cir. 2012)). While neither the *West* nor *Maury* courts, based on the record before them, ordered the Government to specifically identify all statements of corporate employees in the material already produced, both courts acknowledged that, when a statement is being used to bind the corporation, Rule 16 affords an

organizational defendant the opportunity to access that statement. *West*, 2010 WL 2293392 at *5;  *Maury*, 695 F.3d at 254.

As explained above, the scope of the documents and ESI produced by the Government in this matter is staggering. However, requiring the Government to identify the statements it will offer to bind the corporation imposes no real burden on it. The Government will need to segregate (or has already segregated) these statements from the documents and ESI as part of its trial preparation anyway and could, therefore, identify them with relative ease. In contrast, if the Government is not required to identify these statements, Defendants would be left to locate and guess which statements – among what amounts to tens of millions of pages of documents – the Government will use in its case-in-chief. Placing this burden Defendants would be fundamentally unfair, not only because it is insurmountable and easily avoidable, but also in light of the *five years* the Government took to review the information in a single email account, a substantially smaller and less complex task. *See*, *e.g.*, *Anderson*, 416 F. Supp. 2d at 114 (review of "enormous volume of material produced" by Government would "materially impede defendant's counsel's ability to prepare an adequate defense," and was duplicative of the "review presumably already done by the government").

## III. The Government Should be Ordered to Produce Certain Categories of *Brady* and *Giglio* Materials.

Defendants' Motion sought an order compelling the Government to produce various categories of *Brady* and *Giglio* related materials that have yet to be produced, or to identify them amongst the prior productions. Doc. 190 at 11-16. The Government's glib response is to claim that, "[Defendants] want the Government to do their work for them" and "spoon feed" them *Brady* or *Giglio* materials. Doc. 210 at 14. The Court should reject the Government's approach and order the Government to separately produce the categories of documents set forth in Defendants' motion or, at a minimum, indicate that these materials are to be found within the grouping of materials that are relevant to the charges at hand.

As the Fifth Circuit noted in *United States v. Skilling*, "the government may not hide *Brady* material of which it is actually aware in a huge open file in the hope that the defendant will never find it." 554 F.3d 529, 577 (5th Cir. 2009), *vacated on other grounds*, 561 U.S. 358 (2010). This is exactly what the Government is attempting do here, and it runs directly counter to an "important purpose of the prosecutor's obligations under *Brady*," which "is to allow[ ] defense counsel an opportunity to investigate the facts of the case and, with the help of the defendant, craft an appropriate defense." *Miller v. United States*, 14 A.3d 1094, 1108 (D.C.

2011) (quoting *Perez v. United States*, 968 A.2d 39, 66 (D.C. 2009) (internal quotations omitted)).[3]

The crux of the Government's argument here is that, because it produced documents to Defendants in an "electronic and searchable" format, nothing more is required. Doc. 210 at 15-16. This position ignores the practical realities of review of the tens of millions of pages of documents that the Government has produced to Defendants. Unlike the defendants in *United States v. Grace*, 401 F. Supp. 2d 1069, 1081 (D. Mont. 2005), relied on by the Government, Doc. 210 at 15, who were faced with the review of far less documents (2.6 million pages, half of which had been part of a prior civil litigation), the task for Defendants here is far closer to searching for a needle in the proverbial haystack. The mere fact that a production is searchable does not make locating exculpatory documents in a "huge open file" any less onerous or prejudicial. *See Salyer*, 2010 WL 3036444 at *6 (ordering the Government to

---

[3] Defendants want to be entirely clear regarding what they believe would constitute sufficient production of *Brady/Giglio* materials in this case. As explained above, Defendants have requested that the Government be compelled to identify the materials and statements it intends to use in its case-in-chief. Among those materials, the Government should also be ordered to produce all *Brady/Giglio* materials. But to be clear, Defendants do not expect the Government to segregate or mark materials or portions of materials that constitute *Brady/Giglio* materials. By providing the *Brady/Giglio* materials within the larger subset of materials that the Government will rely on during its case-in-chief, Defendants are confident that their analysis of what constitutes *Brady/Giglio* therein will be manageable.

identify *Brady* and *Giglio* materials intermingled in a larger production). The folly of such an exercise is even clearer when, as is the case here, the Government can easily supply these documents to Defendants as it encounters them during its review of the documents it has collected during its investigation.[4]

Allowing the Government to meet its obligations under *Brady* by simply directing Defendants to review the already produced documents does not enable defense counsel to investigate the facts and craft an appropriate defense, which is the raison d'être of *Brady*. The Court should reject the Government's reading of its obligations under *Brady* and *Giglio* and order the Government to include the *Brady* and *Giglio* materials already within the subset of documents produced which are to be offered in its case-in-chief.

## CONCLUSION

For the foregoing reasons and pursuant to its broad discretion to regulate discovery, Defendants respectfully pray that this Court grant their Motion to Compel and enter an Order requiring the Government to produce the requested documents

---

[4] Based upon the prosecutorial experience of Mr. Leach and Mr. Wenik, it is believed that the Government has a file of *Brady/Giglio* materials that have been discovered thus far. The reason this file exists is to prove in post-trial proceedings that certain materials were turned over to the defense. Thus, assuming the current prosecutors have such a file, it will not be burdensome to once again disclose those materials as part of a more manageable production.

and information, and for such other and further relief as this Court may deem just and proper.

This 21st day of December, 2018.

Respectfully submitted,

*/s/ Bruce H. Morris*

Bruce H. Morris
Georgia Bar No. 523575
Finestone Morris & White
3340 Peachtree Road NW
Atlanta, Georgia 30326
404-262-2500
BMorris@FMattorneys.com
 *Counsel for Defendant*
 *Jared Wheat*

*/s/ Arthur W. Leach*

Arthur W. Leach
Georgia Bar No. 442025
The Law Office of Arthur W. Leach
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
404-786-6443
Art@ArthurWLeach.com
 *Counsel for Defendant*
 *Hi-Tech Pharmaceuticals, In*

*/s/ James K. Jenkins*

James K. Jenkins
Georgia Bar No. 390650
Maloy Jenkins Parker
1506 Brandt Court
Boulder, Colorado 80303
303-443-9048
jenkins@mjplawyers.com
 *Counsel for Defendant*
 *Jared Wheat*

*/s/ Jack Wenik*

Jack Wenik
Epstein Becker & Green, P.C.
One Gateway Center, 13th Floor
Newark, New Jersey 07102
973-639-5221
jwenik@ebglaw.com
Admitted Pro Hac Vice
 *Counsel for Defendant*
 *Hi-Tech Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing "Defendant Jared Wheat and Hi-Tech Pharmaceuticals, Inc.'s Reply in Support of Motion to Compel" through this District's ECF system, which will automatically serve all counsel of record.

This 21st day of December 2018.


*/s/ Arthur W. Leach*
Arthur W. Leach
*Counsel for Defendant*
   *Hi-Tech Pharmaceuticals, Inc*