IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JARED WHEAT, JOHN BRANDON SCHOPP, and HI-TECH PHARMACEUTICALS, INC.,<br><br>    Defendants. | No. 1:17-CR-0229-AT-CMS |

**DEFENDANTS JARED WHEAT AND HI-TECH PHARMACEUTICALS, INC.'S *FRANKS* PRE-HEARING BRIEF**

COME NOW Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc., by and through their undersigned counsel, and file this brief regarding the evidence established at the recent *Daubert* hearing as it bears on the issues to be decided at the *Franks* hearing.

## Introduction

This Court heard testimony on Defendants' Motion to Exclude the Testimony, Declarations/Reports, and Opinions of FDA-FCC Chemists Caroline Kelley, Merrie P. Jackson, and Enrique Yanes Santos on December 15-16 and December 18, 2020. Doc. 318. At the conclusion of that hearing, this Court asked the parties to submit a

brief before the *Franks* hearing to summarize what the *Daubert* hearing testimony established and how it relates to the issues at the *Franks* hearing. The Court also requested a timeline of all relevant events. Defendants' version of this timeline is attached to this brief as EXHIBIT B.

## I.    Statement of Facts

In their motion for a *Franks* hearing, Defendants made a substantial preliminary showing that Agent Brian Kriplean misrepresented and omitted information about several facts that were material to Magistrate Judge Vineyard's probable cause determination, either deliberately or with reckless disregard for the truth. Doc. 191 at 8-11.

The Government did not dispute that Agent Kriplean made these misrepresentations and omissions deliberately or recklessly; the Government claimed only that Agent Kriplean's misleading statements in the affidavit were not material to the probable cause determination. Doc. 218 at 6-11. In a November 6, 2020 Order, Judge Totenberg rejected the Government's argument and ordered a hearing on Defendants' *Franks* challenge because an honest affidavit would have communicated the following to the reviewing magistrate:

> We tested the products we received from Hi-Tech through two methods and those tests did not reveal the presence of anabolic steroids. We asked the lab to test the products again using a more sensitive test, and those tests did not

> reveal the presence of anabolic steroids. We asked the lab to test the products a third time using an even more sensitive test, and those tests revealed the presence of only trace amounts of steroids at levels not sufficient to be biologically active. These results are consistent with the manufacturing process for making DHEA, a legal substance. We did not take the opportunity to quantitate those trace levels, so we do not know exactly how low the levels of anabolic steroids in the Hi-Tech products are.

Doc. 363 at 7-8.

While further testimony is needed to develop some of the misrepresentations and omissions identified in Defendants' motion for a *Franks* hearing, the testimony at the *Daubert* hearing addressed the following:

- That, even after multiple rounds of testing, the FCC did not initially discover any Schedule III anabolic steroids in the Hi-Tech products Agent Kriplean submitted in 2016, and promptly informed him of that fact;
- That the FCC's initial finding of Schedule III anabolic steroids in one of the Hi-Tech products Agent Kriplean submitted in 2017 was contradicted by later testing that Agent Kriplean did not agree to until long after the search warrants had issued;
- When FCC analysts were finally able to identify Schedule III anabolic steroids in some of the Hi-Tech products, they only found minute levels, and immediately made that clear to Agent Kriplean;
- That when a third round of testing using a highly sensitive method of analysis (LC-MS$^3$) identified Schedule III anabolic steroids in some of the products that had originally tested negative for Schedule III anabolic steroids, it was clear that these anabolic steroids were only present at minute levels;
- That Agent Kriplean directed the FCC not to quantitate these anabolic steroids before submitting his search warrant affidavit.

3

## II.    The Evidence at the *Daubert* Hearing[1]

**A. Even after multiple rounds of testing, the FCC did not initially discover any Schedule III anabolic steroids in any of the Hi-Tech products Agent Kriplean submitted for analysis in 2016, and promptly informed him of that fact.**

Agent Kriplean first asked the FCC to analyze two separate batches of Hi-Tech products on October 19, 2016.  The first batch was assigned FACTS No. 984260 and contained three products:

- Androdiol (item 1)
- 1-AD (item 2)
- 1-Testosterone (item 3)

The second batch was assigned FACTS No. 984276 and contained five products:

- Equibolin (item 1)
- Superdrol (item 2)
- Dianabol (item 3)
- Decabolin (item 4)
- Arimiplex (item 5)

Defense Ex. 2, 3.

---

[1] The *Daubert* hearing transcripts are filed in the record as Doc. 369 (December 15, 2020); Doc. 370 (December 16, 2020) and Doc. 371 (December 18, 2020).  In this brief, Defendants cite these transcripts as "Tr." Followed by the page and line numbers.

Enrique Santos did the first round of testing on 984260 using LC-MS on November 16, 2016 and found no Schedule III anabolic steroids in any of the products. Tr. at 363:23-364:17; Defense Ex. 20, ¶ 5. His supervisor, Thomas Brueggemeyer, called Agent Kriplean on November 28, 2016 and reported that fact to him. Tr. at 369:17-370:6; Defense Ex. 12. After that call, Dr. Brueggemeyer ordered Dr. Santos to test 984260 and 984276 again, with another form of LC-MS. Tr. at 365:14-366:13; Defense Ex. 12. This time, Dr. Santos identified trace amounts of Schedule III anabolic steroids in all three products in 984260 and two of the products (Equibolin and Superdrol) in 984276 on January 19, 2017. Defense Ex. 20, ¶ 8.

After consulting with Agent Kriplean on November 28, 2016, Brueggemeyer also decided to use a different testing method on 984260 and 984276: GC-MS. Defense Ex. 12. Dr. Santos testified that it is "[n]ot really" part of FCC's standard operating procedure to use both LC-MS and GC-MS to test samples because "[e]ach technique we have a criteria for the full identification of components. So in most of the cases we don't have to." Tr. at 329:2-8. Caroline Kelley confirmed that Dr. Brueggemeyer told her to conduct GC-MS testing only after he spoke with Agent Kriplean. Tr. at 19:8-11; Tr. at 44:24-45:1.

Caroline Kelley performed both derivatized and underivatized GC-MS analysis on both 984260 and 984276 on December 1, 2016. Tr. at 12:20-13:2; Defense Ex. 11, ¶¶ 21-24. With respect to 984260, she found no Schedule III anabolic steroids in Androdiol with either type of GC-MS testing and only a tentative trace amount of a Schedule III anabolic steroid in 1-AD and a questioned match for 1-Testosterone. Tr. at 27:22-28:4; Defense Ex. 2. She used one method of GC-MS testing and found a possible Schedule III anabolic steroid in 1-Testosterone, but when she used the second type of GC-MS testing on that same product, no anabolic steroids were identified. Defense Ex. 11, ¶ 22. She admitted that interconversion in her own equipment could be behind the purported presence of trace amounts of Schedule III anabolic steroids, or that cross-contamination may have caused those results. Tr. at 20:12-21. With respect to 984276, Ms. Kelley found no Schedule III anabolic steroids in any of the products, other than a "questioned match" for Schedule III anabolic steroids in Equibolin using derivatized GC-MS that could not be confirmed using underivatized GC-MS. Tr. at 33:1-9; Defense Ex. 3.

After Ms. Kelley's multiple tests of the products in 984260 and 984276, Dr. Santos analyzed them all yet again. Dr. Steve Bannister testified that, as Ms. Kelley and Dr. Santos tested these products again and again, they "used a variety of chromatographic mass spectrometric combinations, some of which were -- were

6

very significantly higher in selectivity than others." Tr. at 578:14-16. This time, Dr. Santos found a trace level of Schedule III anabolic steroids in all three products in 984260 and a trace level of Schedule III anabolic steroids in two products (Equibolin and Superdrol) in 984276. Defense Ex. 2, 3.

The FCC sent Agent Kriplean written reports on 984260 and 984276 on January 30, 2017 that described the GC-MS and LC-MS analyses. Defense Ex. 2, 3.

**B. The FCC's initial finding of Schedule III anabolic steroids in one of the Hi-Tech products Agent Kriplean submitted in 2017 was contradicted by later testing that Agent Kriplean did not authorize until long after the search warrants had issued in reliance on his affidavit.**

Agent Kriplean sent FCC a third batch of Hi-Tech products on August 23, 2017, almost a year after the lab had received and tested 984260 and 984276. Tr. at at 347:19-22. It was assigned FACTS No. 1022792 and contained four products:

- Equibolin (item 1)
- Superdrol (item 2)
- Androdiol (item 3)
- 1-AD (item 4)

These products were included and had already been tested in 984260 and 98476 but were taken from a different manufacturing lot number than those Agent Kriplean previously submitted. Tr. at 348:7-9. Unlike its approach to testing 984260

7

and 984276, when it used multiple rounds of increasingly selective versions of LC-MS and GC-MS, the FCC tested these products on August 24, 2017, using only LC-MS.  Tr. at 348:19-25.   Although LC-MS did not detect any Schedule III anabolic steroids in the 1-AD Agent Kriplean sent the lab on October 9, 2016, a trace amount of Schedule III anabolic steroids was found with LC-MS in the 1-AD Agent Kriplean sent the lab on August 23, 2017.  Defense Ex. 4.  The FCC sent Agent Kriplean a written report on 1022792 on September 14, 2017 that described the LC-MS analysis.  *Id*.

Only months after Magistrate Judge Vineyard issued the premises search warrants on September 28, 2017 in reliance on Agent Kriplean's affidavit did Agent Kriplean direct the FCC to quantitate the Schedule III anabolic steroids it had identified in 1022792.  The FCC's report of its qualitative testing of 1022792 on July 17, 2018 revealed that Ms. Kelley's GC-MS analysis of 1-AD failed to confirm the presence of the Schedule III anabolic steroid Dr. Santos told Agent Kriplean he found on September 14, 2017.  Tr. at 81:3-14, Defense Ex. 6.

> **C. When FCC analysts were finally able to identify Schedule III anabolic steroids in some of the Hi-Tech products, they only found minute levels of them, and immediately made that clear to Agent Kriplean.**

On December 8, 2016, Dr. Brueggemeyer spoke with Agent Kriplean about this case.  Defense Ex. 13.  Ms. Kelley testified that during that telephone call, Dr.

8

Brueggemeyer told Agent Kriplean that all of the FCC testing had revealed only trace amounts of Schedule III anabolic steroids in some of the products. Tr. at 47:11-48:1; Tr. at 377:11-14. Dr. Brueggemeyer also told Agent Kriplean that these results could be the result of sample cross-contamination, or interconversion within the FCC's GC-MS equipment. Tr. at 20:12-21, 47:22, 52:5-8. Ms. Kelley also testified that the contradictory results her various methods of GC-MS yielded with respect to the 1-Testosterone sample could be due to the extremely low level of the Schedule III anabolic steroid relative to the other components in the product. Tr. at 82:18-20.

### D. Agent Kriplean directed the FCC not to perform the testing that would have made it impossible for him to deny that what Schedule III anabolic steroids were found in the Hi-Tech products were only infinitesimally small traces in them.

Because what evidence of Schedule III anabolic steroids Dr. Santos and Ms. Kelley were eventually able to eke out of the products in 984260 and 984276 was so minute, they called Agent Kriplean on January 18, 2017 to ask him if he wanted them to quantitate these trace levels. Agent Kriplean told them not to provide him with that information, without explaining why. Tr. at 53:8-25; Tr. at. 368:7-14; Defense Ex. 15. Ms. Kelley testified that the major components she found in each of the products were different versions of the legal substance DHEA. Tr. at 155:20-156:1-3; Defense Ex. 2, 3. Ms. Kelley testified that the lack of quantitative testing made it impossible to know whether the trace amounts of Schedule III anabolic

9

steroids in the samples were simply impurities. Tr. at 59:8-16. She explained that the best way to determine what components are in a sample and how much of each component is present is to perform both qualitative and quantitative testing of the sample. Tr. at 51:22-52:4. The importance of quantitating Ms. Kelley's and Dr. Santos's qualitative testing in order to understand the truth of what it did or did not signify was made abundantly clear when Agent Kriplean finally agreed to permit the FCC to quantitate these samples in mid-2018, long after his affidavit had convinced Magistrate Judge Vineyard to issue the premises search warrants. That quantitative testing documented the vanishingly small amounts of Schedule III steroids in any of the products. And, for the first time, the FCC also conducted GC-MS qualitative testing on 984260, 984276 and 1022792. That qualitative testing contradicted Dr. Santos's claim in his September 14, 2017 report that any Schedule III anabolic steroid was present in the 1-AD sample submitted in 1022792. The FCC documented both the quantitative and additional qualitative testing in a July 17, 2018 written report to Agent Kriplean. Tr. at 81:3-14; Defense Ex. 6.

> **E. The FCC testing gave Agent Kriplean no evidence at all to suspect that any Schedule III anabolic steroids were added by Hi-Tech knowingly or that the products were labeled with an intent to defraud.**

When the FCC offered to quantitate its results in order to further address that issue prior to the date Agent Kriplean submitted his search warrant affidavit, Agent

Kriplean directed Ms. Kelley and Dr. Santos not to do so, in a telephone call on January 18, 2017. Tr. at 53:11-25; Defense Ex. 15.

Even prior to that conversation, Dr. Brueggemeyer warned Agent Kriplean on December 8, 2016 that the minute levels of Schedule III anabolic steroids his analysts had finally detected in 984260 and 984276 made it impossible to determine if they were added intentionally or inadvertently. Tr. at 378:14-379:5; Defense Ex. 13. But Agent Kriplean told him that fact didn't matter. Tr. at 49:17-20; Defense Ex. 13.

The prosecution disavowed Agent Kriplean's position on that point at the *Daubert* hearing: in response to this Court's questions, the prosecution admitted that whether Schedule III anabolic steroids were intentionally added to these Hi-Tech products is relevant in light of the charges its office has brought against the Defendants, because they are not strict liability crimes. Tr. at 493:16-22.

Respectfully submitted this 29th day of January 2021.

/s/ *Bruce H. Morris*  
Bruce H. Morris  
Georgia Bar No. 523575  
Finestone Morris & White

/s/ *Arthur W. Leach*  
Arthur W. Leach  
Georgia Bar No. 442025  
The Law Office of Arthur W. Leach

11

| | |
|---|---|
| 3340 Peachtree Road NW<br>Atlanta, Georgia 30326<br>404-262-2500<br>BMorris@FMattorneys.com<br>  *Counsel for Defendant*<br>  *Jared Wheat* | 5780 Windward Parkway, Suite 225<br>Alpharetta, Georgia 30005<br>404-786-6443<br>Art@ArthurWLeach.com<br>  *Counsel for Defendant*<br>  *Hi-Tech Pharmaceuticals, Inc.* |

/s/ *James K. Jenkins*       /s/ *Jack Wenik*

| | |
|---|---|
| James K. Jenkins<br>Georgia Bar No. 390650<br>Maloy Jenkins Parker<br>1506 Brandt Court<br>Boulder, Colorado 80303<br>303-443-9048<br>jenkins@mjplawyers.com<br>  *Counsel for Defendant*<br>  *Jared Wheat* | Jack Wenik<br>Epstein Becker & Green, P.C.<br>One Gateway Center, 13th Floor<br>Newark, New Jersey 07102<br>973-639-5221<br>jwenik@ ebglaw.com<br>Admitted Pro Hac Vice<br>  *Counsel for Defendant*<br>  *Hi-Tech Pharmaceuticals, Inc.* |

MICHAEL PRICE
Sr. Litigation Counsel, Fourth Amendment Center
National Association of Criminal Defense Lawyers
1660 L St. NW, 12th Floor
Washington, D.C. 20036
(202) 465-7615
*Of Counsel\**

\* The NACDL Fourth Amendment Center provides training and direct litigation assistance to defense lawyers in cases involving new technologies and challenges to privacy rights in the digital age. In recognition of the significant search and seizure issues raised by this case, and at the request of defense counsel, the NACDL Fourth Amendment Center has provided pro bono assistance for the limited purpose of preparing of this motion.