IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JARED WHEAT,<br>JOHN BRANDON SCHOPP, AND<br>HI-TECH PHARMACEUTICALS, INC. | Criminal Action No.<br><br>1:17-CR-0229-AT-CMS |

**United States' Prehearing Brief on Defendants' Motion to Suppress Pursuant to *Franks v. Delaware*** 

The United States of America, by Kurt R. Erskine, Acting United States Attorney, and Nathan P. Kitchens, Kelly K. Connors, and D'Juan B. Jones, Assistant United States Attorneys, for the Northern District of Georgia, files this prehearing brief on Defendants Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech") and Jared Wheat's (collectively, "Defendants'") motion to suppress the premises search warrants pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (Doc. 191).

To prevail on their *Franks* motion, Defendants face a high evidentiary burden to overcome the "presumption of validity with respect to the affidavit supporting the search warrant." *Id.*, 438 U.S. at 171, 98 S. Ct. at 2684. And rightly so. Defendants are attacking the integrity of a sworn law enforcement officer in an effort to suppress evidence of Defendants' criminal conduct. This extreme remedy is seldom granted: the United States has been unable to find any

Eleventh Circuit or Northern District of Georgia opinion granting a motion to suppress under *Franks*.

Defendants' *Franks* claim fails at every prong. Even if Defendants could establish the falsity of any statements in the affidavit and the materiality of the alleged falsehoods, despite evidence and law to the contrary, the hearing will underscore a further failing in Defendants' challenge: their inability to establish that Special Agent Brian Kriplean omitted information from the affidavit either deliberately or recklessly to mislead the magistrate. The focus of this hearing will be Agent Kriplean's knowledge and subjective intent, and the evidence will rebut any contention that he had an improper motive to mislead the Court.

## Discussion

### 1. Defendants' Allegations

Judge Totenberg's order distills Defendants' *Franks* claim into four alleged omissions:

> (1)  the analysis of Hi-Tech products demonstrated that the illegal anabolic steroids existed only in trace amounts not sufficient to render the product illegal,
> (2)  multiple rounds of increasingly precise testing were required to detect the steroids,
> (3)  the prohormone in the relevant supplements was legal DHEA, and
> (4)  trace amounts of anabolic steroids may remain in DHEA products as a result of the manufacturing process

(Doc. 363 at 6). Defendants' asserted "facts" are either false, unsupported, or misleading, which the United States will address in further briefing.

The accuracy and materiality of these allegations will not be a focus of the hearing, but Defendants' claim that Agent Kriplean knew these "facts" to be true and omitted them to mislead Magistrate Judge Russell Vineyard will be. In support of these allegations, Defendants cite to a prior declaration by Dr. Steve Bannister and a declaration by Hi-Tech counsel Art Leach. (Doc. 191 at 4–7). Dr. Bannister's declaration does not mention Agent Kriplean aside from citing an FDA telephone log memorializing that Agent Kriplean stated in a January 18, 2017 call that quantification was unnecessary if Schedule III steroids were detected at trace levels. (Doc. 169-1 at ¶¶ 31–32). Mr. Leach's declaration states that he is familiar with Agent Kriplean's experience based on four prior cases and opined that, "based upon his expertise and experience," Agent Kriplean "knew or should reasonably have known" (1) that DHEA is a legal prohormone, (2) details about the synthesis process for DHEA, and (3) that trace amounts of anabolic steroids are manufacturing byproducts of DHEA, (3) (Doc. 191-1 at ¶¶ 4, 6, 11). Mr. Leach also asserts that "[i]t is clear" from "references to emails between [Agent Kriplean] and lab technicians . . . that [he] was informed that the products contained only trace amounts of the subject anabolic steroids." (*Id.* ¶ 14). Finally, Mr. Leach claims that Agent Kriplean knew, based on his training and experience, that "the distinction between trace amounts as opposed to substantial and biologically active amounts" was legally significant in Controlled

3

Substances Act ("CSA") and Federal Food, Drug, and Cosmetic Act ("FDCA") prosecutions. (*Id.* ¶ 16).

Defendants further strained to develop evidence of Agent Kriplean's knowledge during questioning of FCC Chemists Caroline Kelley and Enrique Yanes-Santos in the *Daubert* hearing. Ms. Kelley and Dr. Yanes-Santos both confirmed that their sole contact with Agent Kriplean about the testing was the January 18, 2017 telephone call. (Doc. 369 at 52:21–23, 54:21–24; Doc. 370 at 411:4–8). Ms. Kelley, who memorialized the conversation in the log, stated that the entire substance of this conversation was recorded in the log and she did not recall any discussion of steroid amounts. (Doc. 369 at 76:6–17). Dr. Yanes-Santos recalled discussing the presence of "[t]race levels" of steroids, but clarified that "[n]obody has communicated with" Agent Kriplean about the quantity of steroids. (Doc. 370 at 368:7–10, 411:4–8). Both chemists stated that their use of the term "trace" meant that a compound was "less than predominant," but did not indicate a specific quantity. (Doc. 369 at 57:16–21; Doc. 370 at 413:15–22). It is undisputed that the FCC conducted no quantification tests of Hi-Tech products before the September 2017 search warrant application. (Doc. 85-2 ¶ 23).

### 2. Defendants bear a high burden to prove Agent Kriplean's intent.

Binding circuit authority recognizes that defendants bear the burden "to prove that an omission was made intentionally or with reckless disregard" to

4

prevail on a *Franks* challenge, which is a "difficult" burden to meet absent "independent evidence that the affiant had acted from bad motive or recklessly in conducting his investigation and making the affidavit." *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980).[1] In order to establish that the affiant was untruthful, defendants must prove that the allegations were not "believed or appropriately accepted by the affiant as true." *Franks v. Delaware*, 438 U.S. 154, 165, 98 S. Ct. 2674, 2681 (1978).

Courts have recognized two ways that a defendant can prove an affiant's "reckless disregard" for the truth. First, evidence may prove "that the affiant in fact entertained serious doubts as to the truth of the allegations." *United States v. Gonzalez*, No. 1:09-CR-00371-TWT-AJB, 2010 WL 2721882, at *13 (N.D. Ga. May 25, 2010) (quotation marks omitted); *see also United States v. Rauda-Constantino*, No. 1:18-CR-00203-AT-JSA, 2019 WL 7838968, at *10 (N.D. Ga. Aug. 6, 2019) (recognizing "high" standard to prove reckless disregard and denying motion absent proof that affiant "persisted despite serious reasons to harbor doubts as to their accuracy"); *United States v. Pineda*, No. 1:11-CR-00006-CAP, 2012 WL 2906758, at *23 (N.D. Ga. June 4, 2012) (same); *United States v. Williams*, 718 F.3d 644, 650 (7th Cir. 2013) (same). Alternatively, "[r]ecklessness may be inferred

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as precedent all decisions of the former Fifth Circuit issued before October 1, 1981).

5

from circumstances evincing obvious reasons to doubt the veracity of the allegations." *Gonzalez*, 2010 WL 2721882, at *13 (quotation marks omitted).

And Defendants face an even more difficult path to prove that the affiant had "serious doubts" about the truth in the context of omissions. *Franks* claims are granted only in "rare" circumstances for alleged omissions because "[a]llowing omissions to be challenged would create a situation where almost every affidavit of an officer would be questioned." *United States v. Gamory*, No. CRIM 108-CR-153-TWT, 2009 WL 855948, at *18 (N.D. Ga. Mar. 30, 2009) (quoting *Mays v. City of Dayton,* 134 F.3d 809, 815 (6th Cir.1998)); *see also United States v. Stinson*, 805 F. App'x 180, 182 (4th Cir. 2020) (recognizing defendant's "high" burden because agents cannot include every fact gathered in an investigation); *Williams*, 718 F.3d at 650 (same). Accordingly, Defendants must prove not only that information material to probable cause was omitted from the affidavit, but also that the agent "omitted deliberately or recklessly *to mislead* the issuing magistrate." *Williams*, 718 F.3d at 650; *see also Stinson*, 805 F. App'x 180, 182; *United States v. Rajaratnam*, 719 F.3d 139, 154–55 (2d Cir. 2013); *United States v. Green*, No. 8:19-CR-314-T-36TGW, 2020 WL 3978448, at *6 (M.D. Fla. Feb. 13, 2020).

### 3. Defendants cannot meet their burden to prove that Agent Kriplean intended to mislead the magistrate.

Although defendants bear a "difficult" burden to establish an affiant's intent to mislead in any *Franks* challenge, Defendants face multiple insurmountable

6

obstacles here. The government anticipates that Agent Kriplean will flatly deny having any intent to mislead Judge Vineyard or harboring serious doubts as to the truth of his affidavit. The record supports the absence of any improper intent, and a determination that his testimony is reliable is sufficient to deny Defendants' motion. *See Pineda*, 2012 WL 2906758, at *29.

Aside from Agent Kriplean's denial of any improper intent, Defendants cannot sustain their burden based on their flawed efforts to prove intent circumstantially. First, an affiant's alleged failure to investigate fully to rule out innocent explanations for incriminating evidence "does not establish a *Franks*' violation, even if that further investigation might have negated probable cause." *United States v. Lebowitz*, 647 F. Supp. 2d 1336, 1348 (N.D. Ga. 2009), *aff'd*, 676 F.3d 1000 (11th Cir. 2012); *see also United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002) ("[F]ailure to investigate fully is not evidence of an affiant's reckless disregard for the truth." (quoting *United States v. Dale,* 991 F.2d 819, 844 (D.C.Cir.1993)). To the extent Defendants contend that Agent Kriplean failed to investigate fully by not quantifying the Schedule III steroids or exploring the possibility that the steroids were manufacturing byproducts, these allegations are not "evidence of [Agent Kriplean's] reckless disregard for the truth." *Dale*, 991 F.2d at 844.

Nor is any suggestion that Agent Kriplean held a mistaken understanding of the law. The *Franks* inquiry addresses "material factual misrepresentations, not

7

legal conclusions," and courts recognize that "affiants to search warrants . . . are non-lawyers, untrained in the law, and not expected to be versed . . . in the criminal statutes that might be violated." *United States v. Tabares*, No. 115CR00277SCJJFK, 2016 WL 11258758, at *19 (N.D. Ga. June 3, 2016). The facts here will establish that Agent Kriplean is not an attorney, and any misapprehension of the "nuances" of the FDCA or the CSA does not establish improper intent when his "sole responsibility is to attest to *facts* within his . . . personal knowledge." *Id.* (quotation marks omitted, alterations in original). Even if the Court concludes that the fact that DHEA was the predominant compound or that the Schedule III substances were present in only small amounts in the products is relevant to probable cause, Agent Kriplean's decision to omit this information based on a "considered and reasonable judgment that the information was not necessary" to probable cause rebuts any suggestion of reckless disregard of the truth. *Rajaratnam*, 719 F.3d at 154–55 (holding that affiant's omission of discussion of parallel SEC investigation based on mistaken belief that this fact was irrelevant to necessity element of wiretap application "in no way suggested that omitting [that] information . . . was 'designed to mislead.'"); *see also Williams*, 718 F.3d 644, 652–53 (7th Cir. 2013) (denying reckless disregard for truth when agent's omission of inconsistent dates was based on mistaken belief that the date did not matter for probable cause).

8

Agent Kriplean's lack of firsthand knowledge of testing results, and reliance on FCC chemists to convey and interpret those results, also undermines any suggestion that he "harbored serious doubts about the truth" of the warrant allegations. *Gonzalez*, 2010 WL 2721882, at *13. In *Gonzalez*, the affiant was "not privy to any first hand information" about the residence to be searched but instead "relied on information from others" to support probable cause, and the affiant "misinterpreted" the information he received in drafting the affidavit. *Id.* The Court concluded that although the affiant's "interpretation was clearly wrong, it was not in reckless disregard for the truth because the circumstances did not provide [the affiant] with any reason to question this information." *Id.* Here, evidence at the hearing will confirm that Agent Kriplean neither conducted any testing of the samples nor has any scientific training, and any mistaken interpretation of results received from FCC chemists cannot support a finding of "reckless disregard of the truth."

Finally, even if there were evidence that Agent Kriplean knowingly omitted facts that would have weakened probable cause, his omission of additional facts that would have supported probable cause rebuts any contention that he intended to mislead Judge Vineyard. *See Williams*, 718 F.3d at 652 (holding that omission of "both significantly favorable and unfavorable evidence from the warrant application supports the inference that the police acted negligently

9

rather than recklessly or deceptively"); *Green*, 2020 WL 3978448, at *6 (finding that affiant's omission of additional witness statements that supported probable cause "underscores that [the affiant] included in the affidavit what he viewed as the essential facts, whether or not they supported probable cause"); *see also United States v. Umansky*, 291 F. App'x 227, 228 (11th Cir. 2008) (rejecting *Franks* challenge when "the hearing revealed the affiant had reasonable justifications for his inclusion or exclusion of certain facts"). In *Pineda*, the court determined that false statements in the affidavit did not prove any improper intent because "[t]here was no reason to intentionally present false information to the judge" when accurate facts presented to the court would have supported probable cause. *Pineda*, 2012 WL 2906758, at *29. Similarly, the hearing will establish that Agent Kriplean could have included additional inculpatory facts that would have bolstered probable cause, underscoring that the omission of the "facts" suggested by Defendants was not an effort to mislead Judge Vineyard.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Defendants' motion to suppress pursuant to *Franks v. Delaware*.

Respectfully submitted,

KURT R. ERSKINE

*Acting United States Attorney*

/s/Nathan P. Kitchens
  *Assistant United States Attorney*
Georgia Bar No. 263930
Nathan.Kitchens@usdoj.gov


/s/Kelly K. Connors
  *Assistant United States Attorney*
Georgia Bar No. 504787
Kelly.Connors@usdoj.gov


/s/D'Juan B. Jones
  *Assistant United States Attorney*
Provisionally Admitted to GA Bar
D'Juan.Jones@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

March 5, 2021

/s/ NATHAN P. KITCHENS
NATHAN P. KITCHENS
*Assistant United States Attorney*
