**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JARED WHEAT, JOHN BRANDON SCHOPP, and HI-TECH PHARMACEUTICALS, INC.,<br><br>      Defendants. | No. 1:17-CR-0229-AT-CMS |

**DEFENDANTS JARED WHEAT AND HI-TECH PHARMACEUTICALS, INC.'S BRIEF IN RESPONSE TO THE COURT'S APRIL 13, 2021 ORDER**

COME NOW Defendants Jared Wheat and Hi-Tech Pharmaceuticals, Inc., by and through their undersigned counsel, and file this brief pursuant to the Court's April 13, 2021 order.  Doc. 400.

### Introduction

The Court's April 13, 2021 Order directed the parties to address:

1. The information that the agents had *at the time they applied for the warrant*;

2. Whether Defendants' allegations detailed in Judge Totenberg's Order are supported by the evidence; and

3. Whether the information that the agents had ***at the time they applied for the warrant*** was sufficient to give them a reasonable basis to believe that they had probable cause to support the warrant.

Doc. 400 at 4 (emphases in original).

## I.   STATEMENT OF FACTS

The Court heard Agent Kriplean's testimony on March 10 and 12, 2021.  The court found that Defendants were entitled to the prior draft of the affidavit it had reviewed *in camera* just before the Court ended their cross-examination but refused Defendants' request for additional cross-examination. Doc. 394 at 321:20-23; 322:9-14; 356:24-357:2.  The document the Government provided is the redline edits FDA lawyer Shannon Singleton emailed to Agent Kriplean on September 18, 2017, converted from its original .doc format to .pdf format. Exhibit W, Doc. 402-2.

The parties' April 9, 2021 joint status report noted that 11 days after the *Franks* testimony concluded, the Government produced another draft affidavit written by Agent Kriplean.  Doc. 399 at 6.  The Government provided that document, titled "sw affidavit April 2017 4 sites," in .pdf format.  EXHIBIT X, Doc. 402-3.

The joint status report also explained that Defendants intended to file a motion and brief addressing why they are entitled to additional discovery and why the *Franks* hearing must be reconvened to permit Defendants to conclude Agent Kriplean's cross-examination.  Doc. 399 at 9; pleading filed as Doc. 401.

The Court's April 13, 2021 order noted that "[b]efore I consider *how* the affidavit was prepared, I want to examine the evidence currently before the Court regarding what the agents knew at the time that they applied for the warrant." Doc. 400 at 2 (emphasis in original).

## II.    ARGUMENT AND CITATION OF AUTHORITIES

### A. WITHOUT A FULL AND FAIR EVIDENTIARY HEARING ON DEFENDANTS' *FRANKS* MOTION, THE COURT'S QUESTIONS CANNOT BE RELIABLY ANSWERED.

The Court's three questions all relate to the two issues *Franks* examines:  the materiality of the information Agent Kriplean's affidavit omitted and/or misrepresented and his *mens rea* with respect to the affidavit's contents.   *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978).   Any finding that Defendants have not carried their burden of proof before they have been allowed to fully cross-examine Agent Kriplean would violate "the fundamental elements of fairness" that the Due Process Clause guarantees.   *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967); Doc. 401.

Because Judge Totenberg determined that Defendants had made a sufficient threshold showing, they have the right to a full and fair evidentiary hearing.   Doc. 363 at 4, 10; *Franks*, 438 U.S. at 173; U.S. Const. amends. IV, XIV.   At that hearing, Defendants must prove by a preponderance of the evidence that Agent Kriplean

omitted material information and that he did so either intentionally or with reckless disregard for the truth.   To satisfy this burden, Defendants "must offer direct evidence of the affiant's state of mind or circumstantial evidence that the affiant had a subjective intent to deceive based on the nature of the omissions."   *United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014).   While the Government can "provide a satisfactory explanation for the omission" of material facts, the defendant "is entitled to test its explanation."   *Id*. at 821.

That testing, of course, happens by submitting the witnesses offering the Government's explanation to cross-examination, "the greatest legal engine ever invented for the discovery of the truth."   *California v. Green*, 399 U.S. 149, 158 (1970); *see also Chambers v Mississippi*, 410 U.S. 284, 295 (1973) (cross-examination "helps assure the accuracy of the truth-finding process.").

Defendants have filed an *ex parte* sealed offer of proof describing the cross-examination relevant and necessary to complete the *Franks* hearing.   Exhibit V to Motion for Discovery and to Complete *Franks* Hearing. Doc. 401.   "[F]ull cross-examination addressed to a relevant area of inquiry is a right, and the discretion of the court to limit cross-examination does not become operative until a party has had an opportunity to exercise" that right.   *United States v. Greenberg*, 423 F.2d 1106, 1108 (5th Cir. 1970) (trial court's refusal to permit defense counsel to inquire on

cross-examination into witness's pretrial discussions with the prosecution was reversible error).

Agent Kriplean's testimony is central to Defendants' *Franks* challenge. That fact curtails this Court's discretion to limit the scope of cross-examination. When the witness to be cross-examined "is the government's 'star' witness, providing an essential link in the prosecution's case, the importance of full cross-examination to disclose possible bias is necessarily increased." *United States v. Lankford*, 955 F.2d 1545, 1548 (11th Cir. 1992) (trial court's limitation on defendant's cross-examination of the government's chief witness against him deprived the factfinder of information critical to assessing the witness's credibility; convictions reversed). This is especially true because Defendants must be afforded the right to meet their burden of proof on their *Franks* claims. *See United States v. Janati*, 374 F.3d 263, 274 (4th Cir. 2004) (party charged with the "difficult task of proving implied intent … must also be given some extra latitude to distinguish purposeful conduct from mistake."); *see generally Old Chief v. United States*, 519 U.S. 172, 186 (1997).

The Government has no right to give this Court all the facts which "tend in its favor without laying [its witnesses] open to a cross-examination on those facts." *Kansas v. Cheever*, 571 U.S. 87, 94 (2013). Denying or significantly diminishing Defendants' right to cross-examine "calls into question the ultimate integrity of the

fact-finding process and requires that the competing interest be closely examined."

*Chambers*, 410 U.S. at 295.

### B. THE EVIDENCE BEFORE THE COURT DOES NOT REVEAL ALL OF "THE INFORMATION THAT THE AGENTS HAD AT THE TIME THEY APPLIED FOR THE WARRANT," AND SO THE COURT'S FIRST QUESTION CANNOT BE ANSWERED RELIABLY.

Because Defendants have not yet been permitted to receive and present all relevant evidence to carry their burden of proof by a preponderance of the evidence, the evidentiary record is not sufficiently developed to fully answer the Court's first question. Doc. 400 at 4. But even the incomplete record currently before this Court vindicates Defendants' *Franks* allegations.

A preponderance of the evidence developed to date shows that Agent Kriplean omitted several material facts from the affidavit he submitted to Magistrate Judge Vineyard that were known to him at the time, either intentionally or with reckless disregard for the truth. Evidence establishes that an omission is made with reckless disregard if "'[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Wilson v. Russo*, 212 F.3d 781, 788 (3rd Cir. 2000) (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (officer who told magistrate that a drug-sniffing dog showed "interest" in a bag without disclosing that the dog had not gone into "alert" on the bag acted with reckless disregard, rendering search warrant invalid under *Franks*.)).

The preponderance of the evidence shows that Agent Kriplean was told many times that the alleged anabolic steroids identified by the FCC lab were present in very small amounts, regardless of the terminology used on any particular occasion. Doc. 394 at 427:13-428:15; 429:23-430:1; 435:2-430:13; 438:1-7. *See also* 436:14-22 (FCC uses the terms "minor steroid peaks," "minor Schedule III steroids," "low level components," "trace levels," "not the most predominant in the sample" interchangeably). But Kriplean hid this from the judge by intentionally omitting this information from his affidavit because "[i]t wasn't necessary to establish probable cause in my opinion." Doc. 393 at 111:10-11.

Agent Kriplean's affidavit stated only that the FCC lab "reported" that several Hi-Tech products "contained Schedule III anabolic steroids." Defendants *Franks* Exhibit 24 at ¶¶ 22, 26. By omitting the details underlying this "report," Agent Kriplean kept Judge Vineyard in the dark about the facts necessary to evaluate what weight to give to it. Testimony established that Agent Kriplean knew that the FCC lab conducted six rounds of testing before it identified trace amounts of Schedule III anabolic steroids in some of the products. Defendants' *Franks* Exhibits 2, 3, 4 (lab reports addressed to Agent Kriplean); Doc. 394 at 420: 4-16 (two phone calls and seven emails between FCC and Agent Kriplean); Doc. 394 at 434:12-15. Agent Kriplean's affidavit omitted his knowledge that the FCC's first round of testing

found no alleged illegal steroids at all. Doc. 394 at 425:19-426:2. [1]  Agent Kriplean's affidavit did not inform Judge Vineyard that thereafter multiple rounds of testing were employed, using different analytical techniques (GC-MS and LC-MS) and that some were run more than once. Docs. 370 at 335:19 - 336:19; 365:5-8; 369 at 46: 1-11; Defendants *Franks* Exhibit 11, ¶¶ 14-15, 20-24.  And his affidavit did not reveal that this protocol was necessary because  the anabolic steroids were present in such minute amounts. Docs. 369 at 82:18-20; 394 at 390:15-19.   All these omissions aimed to hide information that Judge Vineyard would have wanted to know regarding the testing of Hi-Tech's products before he determined whether there was probable cause for the warrant.

As demonstrated by Ms. Singleton's edits removing the felony misbranding allegation from the draft warrant, Agent Kriplean knew that his affidavit only established probable cause for the misdemeanor offense of misbranding and that it did not establish probable cause for misdemeanor or felony adulteration.  *See*  Doc. 402-2 at ¶¶ 3, 17(a), 14-15, 19 (Singleton redline edits).  Agent Kriplean hid these

---

[1] Agent Kriplean  testified that the FCC did not tell him that Dr. Santos's first round of testing found no Schedule III anabolic steroids. Doc. 394 at 291:19-292:2. However, Dr. Brueggemeyer testified he told Kriplean in a phone call about those findings. Doc. 394 at 421:15-422:5-11. This raises questions as to Agent Kriplean's credibility as a witness.

facts from Judge Vineyard by removing all of Ms. Singleton's language about the difference between misdemeanor and felony misbranding and changing all the affidavit's statutory citations from misdemeanor misbranding to felony misbranding. Defendants' *Franks* Exhibit 24 at ¶¶ 3, 46.

Only after this Court overruled the Government's work product objection did Agent Kriplean admit that his warrant omitted any of the "language that's generally present in most affidavits" he submits to explain the difference between a felony and a misdemeanor misbranding violation. Doc. 393 at 166:5-11.[2] Because Defendants did not yet have Ms. Singleton's redline edits, they were not able to develop the necessary facts, including those related to Agent Kriplean's *mens rea*, regarding this omission. The Government was able to exploit this uneven playing field at the hearing by eliciting testimony from Agent Kriplean on redirect that he believed his affidavit did inform Judge Vineyard that he had probable cause to believe a misdemeanor misbranding offense had occurred. Doc. 394 at 342-44. This testimony was clearly meant to reframe this omission as something other than an

---

[2] The Government avoided this fact entirely in its direct examination and objected to Defendants' question after Agent Kriplean revealed it on cross-examination. This strongly suggests that the Government was banking on its gamble that this Court would not order it to produce any prior drafts of the affidavit to avoid revealing this truth.

intentional or reckless decision.  The Court immediately rejected that contention, noting that, because the evidence showed the Government scrubbed the misdemeanor references in the draft affidavit before presenting it for the magistrate judge's review, "I just don't think that's going to fly."  Doc 394 at 344:3-6.  But this Court has not yet been able to determine what other aspects of Agent Kriplean's testimony are similarly dubious because Defendants have not yet been afforded the opportunity to cross-examine him with the benefit of the draft affidavits.

Agent Kriplean repeatedly testified that he only needed to "establish[] probable cause based on the misbranding violation[ ]" to seize a variety of things listed in Attachment B that were evidence of suspected crimes unrelated to misbranding.  *See, e.g.*, Doc. 393 at 200:15-17; Doc. 308:21-22; *id.* at 326:11-13; *id*. 326:23-24; *id*. at 327:19-24; *id.* at 330:10-13.  He insisted that, because his affidavit stated that it did not include "each and every fact," Magistrate Judge Vineyard was on notice that he wanted to seize items unconnected with a misbranding violation. Doc. 394 at 308:20-23; 326:11-13, 23-24; 327:19-24; Defendants *Franks* Exhibit 24, ¶ 4.  Agent Kriplean told this Court that he does not think his affidavit needed to establish probable cause of each crime for which he intended to seize evidence.  Doc. 394 at 330:10-13.

A preponderance of the evidence shows that Agent Kriplean knew that he included many items in Attachment B that his affidavit did not establish probable cause to seize, and that he concealed and misrepresented this in his affidavit.  At the hearing, Agent Kriplean claimed he had evidence of adulteration but that he omitted that information from his affidavit.   Doc. 393 at 202:13-18.   Nonetheless, Attachment B listed items related to adulteration, including certificates of free sale, GMP certificates and GMP audits. Defendants *Franks* Exhibit 24 at ¶ 7.   At the hearing, Agent Kriplean admitted that his affidavit did not establish probable cause for "wire or mail fraud or other things." Doc. 393 at 200:10-16.   Nonetheless, Attachment B listed items related to those offenses. Defendants *Franks* Exhibit 24 at ¶ 7.   A preponderance of the evidence also shows that Agent Kriplean affirmatively misrepresented to Magistrate Judge Vineyard that Attachment B described only evidence of misbranding violations and violations of the Controlled Substances Act.  *Franks* Exhibit 24 at ¶ 46.

A preponderance of the evidence shows that, although Agent Kriplean reproduced the table of identified steroids in the FCC January 30, 2017 lab report in his affidavit, he deliberately omitted the footnotes that the FCC thought were important to give the reader a clear understanding of what its testing revealed. Defendants' *Franks* exhibits 2, 24; Doc. 394 at 443:3-8.

**C. THE EVIDENCE CURRENTLY BEFORE THE COURT PROVES DEFENDANTS' ALLEGATIONS DESCRIBED IN JUDGE TOTENBERG'S ORDER BY A PREPONDERANCE OF THE EVIDENCE.**

The Court's second question asks  whether Defendants' four allegations cited by Judge Totenberg are supported by the evidence. Doc. 400 at 4.

Judge Totenberg described Defendants' first *Franks* allegation as "the analysis of Hi-Tech Products demonstrated that the illegal anabolic steroid existed only in trace amount not sufficient to render the products illegal. " Doc. 363 at 6.  A preponderance of the evidence to date shows that FCC testing revealed only trace amounts of Schedule III anabolic steroids in some Hi-Tech products and that FCC chemists told  Agent Kriplean this more than once. Doc. 394 at 427:13-428:15; 429:23-430:1; 435:23-430:13; 438:1-7. Even without being permitted to fully cross-examine Agent Kriplean, Defendants have proved the first part of this allegation by a preponderance of the evidence.

The Government's position is that everyone knows that "trace" and "minor" in this context means any amount from a millionth of a gram to 49.999% of a mixture; at the hearing, it worked hard to establish that the words "trace" and "minor" mean nothing more than "not the most predominant ingredient."  Doc. 393 at 61:23 - 62:9.  But after hearing that testimony, this Court noted that "I feel like trace is a pretty common word that I understand and I don't work for the FDA.  So I

would assume that Agent Kriplean understands what trace means, which is a teeny, teeny, tiny amount."[3]   Doc 394 at 350:8-11.   And Dr. Thomas Brueggemeyer testified that "we use them [the terms "minor steroid peaks," "minor schedule III steroids," "low-level components," "trace levels," and "not the most predominant steroid in the sample"]  meaning pretty much the same thing, yes."  Doc. 394 at 436:14-18.  Agent Kriplean both intentionally omitted all information about these facts and removed the footnote that revealed them in his reproduction of the FCC table in his affidavit.  Defendants *Franks* Exhibits 2, 24.

A preponderance of the evidence shows that Agent Kriplean rejected the FCC's offer to quantitate the trace amounts of Schedule III anabolic steroids, in a transparent attempt to keep himself willfully ignorant of just how small these trace amounts were until the warrants had been executed.  "[A]cts conducted under the guise of deliberate ignorance and acts committed with positive knowledge are equally culpable."  *United States v. Rivera*, 944 F.2d 1563, 1570 (11th Cir. 1991).  Agent Kriplean testified that he had "no idea" if it would have been important for the reviewing magistrate to know if the illegal substances were accidentally in the products and/or present in only infinitesimal amounts.  Doc. 393 at 119:8-11.  His

---

[3] The Government emphasized that Agent Kriplean has no understanding of chemistry beyond a class he took in high school.  Doc. 393 at 26:20-27:3.

failure to objectively assess whether the reviewing magistrate would want to know these facts demonstrates his recklessness in omitting them. *Wilson*, 212 F.3d at 788. Agent Kriplean testified that intent is irrelevant to  a misbranding violation.  Doc. 393 at 148:10-150:12.   This Court asked him, "You're thinking they're doing something against the law intentionally, you think that would be an amount that has an effect on the body or why would you bother to do it; right?"  *Id*. at 150:13-16. Despite the distinction this question made between the strict liability misdemeanor branding offense and its felony counterpart, Agent Kriplean insisted that "I'm not familiar with that being an element of the crimes I investigate."  *Id.* at 150:17-18.[4] Although Agent Kriplean insisted that whether the illegal substance was put in the product intentionally or accidentally did not matter, Docs. 393 at 51:18-25; 150:4-18; 394 at 350:20-351:18, the Court recognized that "the key issue" is "why would someone intentionally put in amounts that are so small that it wouldn't have an effect on the body?" Doc. 393 at 10:2-4.  Agent Kriplean made his own determination that this fact was not relevant to whether a crime was being committed and intentionally

---

[4] Given that Agent Kriplean read and was trained on a manual prepared by the FDA Office of Chief Counsel in 2008 (that he still has in his possession), which makes this distinction at least four separate times, this testimony raises questions about his credibility as a witness.  Doc. 393 at 29:6-13; Government's *Franks* Exhibit 1 at 5, 22, 25 n.2, 34.

hid this fact from Judge Vineyard by omitting it from his affidavit.  This hijacked Judge Vineyard's ability to make a neutral, detached determination as to the existence of probable cause.  *United States v. Leon*, 468 U.S. 897, 914 (1984) ("[T]he courts must … insist that the magistrate … not serve merely as a rubber stamp for the police.").

 Agent Kriplean's affidavit omitted that he told the FCC chemists not to quantitate the substances.  Doc. 393 at 119:12-14.  Although he strove to avoid answering whether he told Ms. Singleton he had refused the FCC's offer to quantitate, his extremely evasive testimony on that point supports the conclusion that he hid that fact from her, as well.  Doc. 393 at 119:15-120:10.

Agent Kriplean testified that "At the end of the day, we're a public health agency.  We're trying to protect the consumer."  Doc. 393 at 150:25-151:1.  But the evidence shows that Agent Kriplean testified that, in all his years as an employee of the FDA, he has avoided learning at what level a Schedule III anabolic steroid in a dietary supplement has any effect on the consumer. Doc. 393 at 149:6-23. The Government offered nothing to explain why, in light of that claim, Agent Kriplean specifically asked the FCC to test the products for the presence of active pharmaceutical ingredients (APIs), which the FDCA defines  as substances "intended to affect the structure or any function of the human body," but then refused

the lab's offer to do the further testing necessary to determine whether APIs were present in the products in sufficient amounts to meet that statutory definition prior to presenting his affidavit.  Doc. 394 at 408:11-15; 21 U.S.C. § 379(j)-41(2)(a).

The second part of the first allegation identified by Judge Totenberg (the illegality of the detected steroids) was a legal decision for Judge Vineyard to make. But he could not do so because Agent Kriplean omitted the facts that decision required, including that it took six rounds of testing to identify steroids and then only trace amounts were found.  In combination with his decision to change Ms. Singleton's misdemeanor misbranding references to felony misbranding, there is no possibility this was a negligent oversight.  These were facts that any "judge would wish to know"  before signing a search warrant for felony misbranding and violations of the Controlled Substances Act.  *Wilson*, 212 F.3d at 788.  The magistrate judge, not the affiant,  is responsible for determining whether an affidavit establishes probable cause, and for what crime, and this can only be done when the affiant presents sufficient, truthful information. *Illinois v. Gates*, 462 U.S. 213, 239 (1983)

Judge Totenberg described Defendants' second *Franks* allegation as "multiple rounds of increasingly precise testing were required to detect the steroids."  Doc. 363 at 6.  As set out in detail, *supra* at pages 8-9, a preponderance of the evidence

proves this allegation: the FCC conducted multiples rounds of different tests before it finally identified trace amounts of Schedule III anabolic steroids. Agent Kriplean did not reveal this fact in his affidavit.

Judge Totenberg described Defendant's third *Franks* allegation as "the prohormone in the relevant supplements was legal DHEA." Doc. 363 at 6. The evidence shows that Agent Kriplean knew that DHEA is a legal steroid under the Designer Anabolic Steroid Control Act of 2014 ("DASCA") and that DHEA was the most predominant substance in the samples he asked the FCC to analyze. Doc. 393 at 55:2-11; 76:4-10; 136:21-24. But Agent Kriplean removed all the language Ms. Singleton added to his draft affidavit that clearly stated these facts before presenting it for judicial review. Doc. 402-2 at ¶¶ 20-24. A preponderance of the evidence shows that he did so because he "personally didn't think it was relevant" to Magistrate Judge Vineyard's independent probable cause assessment. Doc. 393 at 76:11-17 Defendants *Franks* Exhibit 24. This is precisely the type of "lawless or reckless misconduct" that *Franks* was meant to shut down. 438 U.S. at 169.

Judge Totenberg described Defendants' fourth allegation as "trace amounts of anabolic steroids may remain in DHEA products as a result of the manufacturing process." Doc. 363 at 6. Defendants submitted evidence of this fact in the testimony of Gregory L. Hillyer at the *Daubert* hearing on December 15, 2020, Doc. 369 at

182:6 - 199:15, which was adopted for purposes of this hearing. Doc. 393 at 18:10-14. *See also* Docs. 415-1 at 4-5 (Declaration of Arthur W. Leach), amended, Doc. 415, & 192-2 (scientific journal article). The Government did not counter this fact with any declaration or testimony of its own.

Dr. Brueggemeyer testified that he explained to Agent Kriplean that the low levels of anabolic steroids could have been due to either interconversion[5] at the FCC lab or the result of "impurities such as cross-contamination," "[m]eaning at the manufacturing site or distribution, or whatever[.]" Doc. 394 at 429:8-13. *See also* Defendants *Franks* Exhibit 13; Doc. 370 at 379:10-14.  Dr. Brueggemeyer testified that he did so to clarify the FCC's level of confidence in its test results. Doc. 394 at 429:23-430:1-2. Dr. Brueggemeyer testified that "there was no indication that [an interconversion] was happening," Doc. 394 at 428:14-18; *see also* 385:1-8. The evidence shows that Agent Kriplean, even after Dr. Brueggemeyer's specific warning, did nothing to follow up on the possibility of cross-contamination from the manufacturing process, despite knowing that the steroids were present only in tiny amounts. Nor did Agent Kriplean alert Magistrate Judge Vineyard to it.   Any

---

[5] Dr. Brueggemeyer explained that "interconversion" refers to a non-controlled substance being turned into a Schedule III anabolic steroid simply by being put through an FCC GC-MS machine.  Doc. 394 at 429:16-22.

reasonable person would understand that Magistrate Judge Vineyard would surely have wanted to know that the evidence of the presence of steroids could have been a product of the impurities introduced in the manufacturing process in determining whether the affidavit established probable cause for felony misbranding and a violation of the CSA. *Wilson*, 212 F.3d at 788.

### D. THE MATERIAL MISREPRESENTATIONS AND OMISSIONS IN THE AFFIDAVIT, MADE INTENTIONALLY OR WITH RECKLESS DISREGARD FOR THE TRUTH, ESTABLISH THAT AGENT KRIPLEAN DID NOT HAVE A GOOD FAITH BELIEF THAT THE SEARCH WARRANT WAS SUPPORTED BY PROBABLE CAUSE AT THE TIME HE APPLIED FOR THE WARRANT.

This Court's third question is whether the agents had sufficient information at the time they applied for the warrant to give them a reasonable basis to believe they had probable cause. Doc. 400 at 4. What the record in its currently limited form shows on this question is detailed at 6-19, *supra*. But Defendants respectfully remind this Court that the *Leon* good faith exception does not indulge a *Franks* violation. *Leon*, 468 U.S. at 914 & n.2 (1984).

Reliance on a magistrate's probable cause determination "must be objectively reasonable[.]" *Id.* at 922. An officer who misleads the issuing court "by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth[]" cannot seek to excuse the resulting search by invoking *Leon*'s good-faith exception. *Id.* at 923.

Agent Kriplean admitted that he knew his affidavit did not establish probable cause to support seizing evidence related to adulteration, Doc. 394 at 303:5-15; 327:17-24; 328:11-24, or wire fraud, Doc. 393 at 200:10-16; 264:12-15. The Fourth Amendment requires "that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985). Agent Kriplean knew that Attachment B included items unrelated to the two crimes his affidavit claimed to establish probable cause for, so he had no objectively reasonable belief that seizing those items was authorized under the warrant. The answer to the Court's third question is no.

WHEREFORE, Defendants respectfully pray that this Court grant their previously filed motion for discovery and to complete the *Franks* hearing, Doc. 401, and for such other and further relief as this Court deems just and proper.

This 14th day of May, 2021.


/s/ Bruce H. Morris

Bruce H. Morris
Georgia Bar No. 523575
Finestone Morris & White
3340 Peachtree Road NW
Atlanta, Georgia 30326
404-262-2500
BMorris@FMattorneys.com
  *Counsel for Defendant*
  *Jared Wheat*


/s/ James K. Jenkins

James K. Jenkins
Georgia Bar No. 390650
Maloy Jenkins Parker
1506 Brandt Court
Boulder, Colorado 80303
303-443-9048
jenkins@mjplawyers.com
  *Counsel for Defendant*
  *Jared Wheat*


/s/ Ann M. Roan

Ann M. Roan
Law Offices of Ann M. Roan LLC
4450 Arapahoe Ave., Suite 100
Boulder, CO  80303
303-448-8818
ann@annroanlaw.com
Admitted Pro Hac Vice
    *Counsel for Defendant*
    *Jared Wheat*


/s/ Arthur W. Leach

Arthur W. Leach
Georgia Bar No. 442025
The Law Office of Arthur W. Leach
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
404-786-6443
Art@ArthurWLeach.com
  *Counsel for Defendant*
  *Hi-Tech Pharmaceuticals, Inc.*


/s/ Jack Wenik

Jack Wenik
Epstein Becker & Green, P.C.
One Gateway Center, 13th Floor
Newark, New Jersey 07102
973-639-5221
jwenik@ ebglaw.com
Admitted Pro Hac Vice
    *Counsel for Defendant*
    *Hi-Tech Pharmaceuticals, Inc.*